1   back. FEGER never did return the call. While talking with the receptionist, Plaintiff was told

2   that she thought the Director of Operations had provided a copy of the incident video to the

3   Airport Chief of Police, SKVARNA. She was also informed that STILL reported to Michael

4   Yaft, Operations Head.

5

6   **Plaintiff Attempts To Obtain Her Freedom Of Information Act (FOIA) Documents**

7   On June 15, 2010 Plaintiff wrote Mr. Kenneth Janet at the TSA Contact Center, FOIA .

8   She requested a copy of all documentation related to her case.

9   On November 16, 2010 Plaintiff wrote her congressman, Elton Gallegly, a letter asking

10  for help in expediting her FOIA document retrieval. Although promises were made, nothing

11  ever matured due to his efforts.

12  On January 17, 2011 Plaintiff left a voice message for Paul Setoudeh, legal counsel for

13  the TSA FOIA office. Plaintiff still had not received her FOIA documents.

14  On March 7, 2011 Plaintiff left another message for Paul Sotoudeh in the TSA FOIA

15  department. No return call was received.

16  On March 8, 2011 Plaintiff asked Derrick FORD if he could speak with Paul Sotoudeh

17  and obtain and estimate time of arrival for her FOIA documents.

18  On March 10, 2011 Plaintiff left a message for Paul Sotoudeh asking about her FOIA

19  documents. No return call was received.

20  On March 17, 2011 FOIA finally sent out Plaintiff's requested documents. When

21  Plaintiff received the documents she was amazed to see nothing except black toner covering all

22  of the crucial information she needed. Plaintiff had to ask herself: "…and they call this

23  transparency?"

24  On April 10, 2011 Plaintiff wrote Kimberly Walton, Special Counselor for the TSA. In

25  her letter she pointed out how FOIA had violated their own rules. Plaintiff's FOIA request

26

27  **SECOND AMENDED COMPLAINT ("SAC")**

28                  10/10/12

should have been processed within approximately 30 days. In Plaintiff's case it took almost 9 months.

When the documents finally did arrive, much of the critically necessary information had been blackened out. Plaintiff asked for the FOIA office to reissue the documents in their original form; the FOIA office refused to oblige.

**Plaintiff is Consistently Defamed with Remarks From Various Officials**

In Plaintiff's FOIA documents there was an e-mail sent by CAHILL. It was a forwarding of a KCBS story with a comment "enjoy!" CAHILL made the following personal comment: "Nadine Hays accepted the plea bargain." Plaintiff never accepted the plea bargain. Plaintiff did not plea guilty. Plaintiff was not put on probation. This was a false statement that obviously made it to CBS.

**Unprofessional Activities Occurred When Dealing With Mary Frances Prevost**

On December 7, 2010 Plaintiff was in San Diego on business. Plaintiff had still not received her file from PREVOST, so she decided to drop by PROVOST'S office and pick the file up personally. As Plaintiff waited by the receptionist's desk, PREVOST came out of her office and told Plaintiff to leave immediately, that security had been called and that she was trespassing and was not a welcomed guest.

The security guard arrived and Plaintiff left quietly on her own, with no further conversation with PREVOST.

Over the next several weeks PREVOST sent odds and ends regarding Plaintiff's file via e-mails. Items were haphazardly organized and it was very difficult for the Plaintiff to make sense of the documents received.

**SECOND AMENDED COMPLAINT ("SAC")**

52                                    10/10/12

1   PREVOST did eventually send a DVD, which allegedly was the complete file.  Plaintiff

2   believes, and thereby alleges that she still did not receive everything.  PREVOST had discussed

3   how she had set up the case for appeals if necessary, a strategy Plaintiff knew nothing about.

4   Correspondence and/or pleadings were filed, but nothing related to this issue was in the file

5   PREVOST sent to Plaintiff.

6   PREVOST later wrote Plaintiff a very demeaning e-mail, accusing Plaintiff of harassing

7   the paralegal at Judge McKenna's office, refusing to turn over Plaintiff's file, and threatening to

8   issue a restraining order against Plaintiff.  Plaintiff broke down in tears when she read said e-

9   mail at home.  How could anyone, especially someone who had been paid a substantial amount

10   of money to professionally represent her, treat her in this fashion?

11   On December 14, 2010 PREVOST issued a formal letter threatening Plaintiff with a

12   restraining order.  The letter was very demeaning and once again caused Plaintiff to break down

13   in tears with the lies it described.

14   PREVOST accused Plaintiff of showing up at her office unannounced and yet in the

15   same letter admits that her paralegal had received an e-mail from Plaintiff describing her plans

16   to come down to San Diego to pick up her file.

17   PREVOST accused Plaintiff of harassing behavior.  All what Plaintiff was asking for

18   was her file, which she was entitled to have weeks prior.  Plaintiff was never aggressive in her

19   requests for her file, but she certainly was very frustrated when PREVOST continually refused

20   to comply with the court order to produce said file.

21   PREVOST accused Plaintiff of refusing to leave.  Plaintiff had said she would be happy

22   to leave as soon as she was given the file which she was entitled to have.

23   PREVOST had called for security before making her appearance in the lobby.

24   PREVOST demonized Plaintiff as she continued with her false accusations.  She stated,"You

25

26

27   **SECOND AMENDED COMPLAINT ("SAC")**

28                      10/10/12

1 | continued to cause a scene as you were forced to leave." When security arrived, Plaintiff
2 | voluntarily and of her own free will, left.

3 | PREVOST stated that Plaintiff's file had been sent to her numerous times, twice through
4 | e-mails and once on a DVD. Plaintiff had received documents haphazardly through several e-
5 | mails. Many of the digital files had been done with Word Perfect and therefore could not even
6 | be clearly opened by Plaintiff. The most professional way to have handled this case would have
7 | been simply to print up a complete set of documents for Plaintiff. It is the Plaintiff's belief that
8 | PREVOST was intentionally aggravating Plaintiff in retaliation for Plaintiff's phone calls to her
9 | while she was on vacation.

10 | Plaintiff had spent a sizeable sum of money by retaining PREVOST as legal counsel and
11 | now, when she was simply trying to get her file, she was demonized and threatened with a
12 | restraining order. Plaintiff still believes that PREVOST has documents that she never turned
13 | over to Plaintiff.

14 | On December 16, 2010 Plaintiff wrote the California State Bar Association regarding
15 | the unprofessional conduct of PREVOST. PREVOST, in representing Plaintiff in her civil case,
16 | wanted Plaintiff to stop arguing the authenticity of the video. PREVOST told Plaintiff it was
17 | the best evidence in her civil lawsuit. Plaintiff refused to obey, as entering a piece of property
18 | into a court of law that one knows to not be true is perjury. Plaintiff would not perjure herself,
19 | even at the threat of legal counsel backing out of legal representation.

20 | On January 25, 2011 Plaintiff wrote the State Bar and withdrew her complaint against
21 | PREVOST. Plaintiff decided that although PREVOST's conduct had been very unprofessional,
22 | Plaintiff felt PREVOST had health issues that could have justified her conduct. Plaintiff felt she
23 | needed to focus her attention on the real criminals and not on everyone that had wronged her.

24 | On February 14, 2011 Plaintiff wrote PREVOST a kind letter where she was trying to
25 | convince PREVOST to take her case. Plaintiff was very weary. Plaintiff received no response.

26 |

27 | **SECOND AMENDED COMPLAINT ("SAC")**

28 | 54                                                    10/10/12

1        On February 22, 2011 Plaintiff received a letter from the State Bar Association

2   confirming the fact that Plaintiff's complaint against PREVOST had been closed.  In that letter

3   they stated "Should future circumstances require you to recontact the State Bar concerning this

4   attorney, please reference the Inquiry number listed on your correspondence."

5        Later Plaintiff did attempt to reopen the case, but the State Bar refused to do so.

6

7   **Counseling Became An Important Factor In Plaintiff's Ability To Survive**

8        On June 1, 2010 Plaintiff corresponded with one her counselors, Anna Garcia, and let

9   her know she was doing better after participating in a Kaiser Permanente  Women's Support

10  group.  Plaintiff discovered that by being involved with others that had experienced traumatic

11  circumstances in their lives as well, Plaintiff was made to feel that she was not the only one

12  with such horrific events happening to her.

13

14  **Plaintiff Is Made To Feel Like A Terrorist by Having To**

15  **Obtain A Redress Number, Check Her Criminal History Report, etc.**

16       On May 25, 2010 Fran Golden made an electronic post entitled "Get Angry and TSA

17  May Tag You".  As soon as Plaintiff read the article she became fearful that her name was

18  probably on such a list, even though Plaintiff was not the one making the threats.  Instead, the

19  TSA agents were threatening her. The spokeswoman for the article stated that repeat violators

20  could have their names passed on to law enforcement.  She also added that "TSA also keeps

21  track of employees who make threats."

22       Nonetheless, after reading said article, Plaintiff was moved to call the TSA Contact

23  Center on June 9, 2010.  Plaintiff asked the agent if her name was on said Federal Watch List.

24  The agent told Plaintiff that she, the agent, was not privy to that type of information.

25

26

27  **SECOND AMENDED COMPLAINT ("SAC")**

28    10/10/12

1  Nonetheless, Plaintiff was moved to file for a DHS Traveler Redress Number so that she could
2  make phone and internet airline reservations with no harassment.

3       Even the DHS advises that people who have been denied or delayed airline boarding
4  should make application for a Redress Control Number.

5       On June 10, 2010 Plaintiff sent in an Application To Obtain State Summary Criminal
6  History Record; the fee sent in with the application was $25.  Along with the application
7  Plaintiff had to send a complete set of fingerprints.

8

9       **Plaintiff Extends Compassion Even To The Individuals That Caused Her To Be**
10      **Incarcerated And Maliciously Prosecuted For 18 Months**

11      On January 17, 2011 Plaintiff sent a letter to AIKENS, the individual she thought had
12  been the supervisor that had her arrested; later she discovered that AIKENS was an imposter
13  and was not even involved in the airport incident.  The letter was filled with concern for what
14  the supervisor had done at the airport.  It was filled with words of advice.  At no time was it
15  vindictive or hateful, even though Plaintiff's life has been damaged due to AIKEN's actions.

16      On February 11, 2011 Plaintiff delivered a loving note and some cookies to the
17  Camarillo Police Department, the Burbank City Attorney's Office, the Burbank Airport Police
18  Department, and the Burbank Police Department pleading with them to all choose the right.
19  Despite her efforts, they have chosen to continue on their wayward paths.

20

21      **Consequences Of The Airport Incident Caused Significant Stress in Plaintiff's**
22      **Marital and Family Relationships**

23      On January 19, 2011 Plaintiff's husband insisted on taking Plaintiff to the Woodland
24  Hills Kaiser Permanente Hospital for a psychological evaluation.  It was bad enough that her
25  husband did not support her in her pursuit of justice, but for him to then accuse her of being

26

27                    **SECOND AMENDED COMPLAINT ("SAC")**

28                                   56                          10/10/12

1   mentally incompetent was almost too much for her to bear. Plaintiff wanted to put her

2   husband's mind at ease, however, and agreed to go.  When the evaluation was finally done, the

3   diagnosis was just as Plaintiff had always told her husband; Plaintiff had an extreme case of

4   Post Traumatic Stress Disorder which had resulted from the airport incident, arrest, and

5   prosecution.

6

7   **Plaintiff Feels Very Uneasy With Felons Roaming Freely On The Streets When She**

8   **Is The Key Witness In Their Criminal Prosecution**

9   On January 21, 2011 Plaintiff called the police as she was fearful of her life.  The local

10  Sheriff arrived at her door and told her there was nothing they could do until a crime was

11  committed.  Plaintiff has just had to live with the fear of someone possibly "taking her out", as

12  the real felons are roaming the streets and certainly do not want to be caught.

13  On January 28, 2011 Plaintiff had another panic attack and called the local law

14  enforcement.  Once again she was fearful of her life.

15  On January 28, 2011 Plaintiff expressed her concern for the preservation of her life to

16  Bob Mcinnes in the Ventura County District Attorney's office.  He was not willing to offer her

17  any comfort other than to tell her that he did not feel the Federal government was after her.

18  On February 2, 2011 Plaintiff talked with Mitch Kominsky, an attorney working with Rep.

19  Darrell Issa, Chairman of the House Committee on Oversight and Government Reform.  Rep.

20  Issa worked on a special committee which was trying to correct the many wrongs being done by

21  the TSA organization.

22  Plaintiff gave Mr. Kominsky crucial information regarding her case.  She informed him

23  that the FBI refused to do anything and that her representative Elton Gallegly refused to do

24  anything.  She stated that if the committee had subpoenaing power that she was desperately

25  trying to obtain the passenger manifest so she could find unbiased witnesses to testify in her

26

27  **SECOND AMENDED COMPLAINT ("SAC")**

28

1  behalf.  She told him life was not pleasant and that her family had left her; they did not agree

2  with her time spent in the pursuit of justice.  Finally, she informed him that she was fearful of

3  her life, as the felons were walking the streets and nobody felt responsible enough to go after

4  them.

5  　　　On February 14, 2011 Plaintiff left a message for SKVARNA asking if she had anything

6  to fear regarding this case and the felons that are still on the loose.  SKVARNA did not return

7  the call.

8

9  　　　**Plaintiff Discovers That Aikens Is Not The TSA Supervisor**

10  　　　**That Had Her Arrested on April 16, 2009**

11  　　　As Plaintiff continued doing her investigative work, certain issues did not make sense.

12  One day, as she was talking with George Sano, her process server, she asked for a description of

13  AIKENS.  As soon as Sano described her as being an attractive, medium stature, thin

14  individual, Plaintiff immediately knew there was a problem.  When Sano showed Plaintiff a

15  picture of AIKENS, who was the individual Plaintiff had allegedly hit at the airport, Plaintiff

16  told Sano that she had never seen AIKENS before in her life and that she was not involved in

17  the airport incident at all.

18  　　　Plaintiff corresponded with BUCK, the U.S. attorney representing all of the TSA agents

19  in this case.  She explained to BUCK that he was defending a felon.  BUCK refused to

20  investigate and continues to attempt to represent AIKENS even though she was not acting as a

21  TSA employee when she signed the Citizen's Arrest form.

22  　　　Plaintiff prepared a Crime Report and delivered it to the West Valley Police Station the

23  end of January, 2012.  The report gave the details regarding the felonious actions of AIKENS,

24  who lived approximately 1 mile from the station.  Plaintiff explained to the investigative

25  officers that two things needed to be done.  First they needed to verify AIKENS identity;

26

27  　　　　　　　**SECOND AMENDED COMPLAINT ("SAC")**

28  　　　　　　　　　　　　　58　　　　　　　　　　　　　10/10/12

1  Plaintiff was told that the officers did go out to AIKENS residence and confirmed her identity.

2  Plaintiff, at the same time, had confirmed AIKENS identity by talking with her previous

3  landlord.

4      The second action Plaintiff asked the officers to do was to bring AIKENS in for

5  questioning and at the same time to call Plaintiff to come into the office. Plaintiff would then

6  bring in the airport video and would show the officers that the woman was not involved in the

7  airport incident. Plaintiff then expected the detectives to arrest AIKENS for false personation.

8  This would be a felony crime, as Plaintiff was the individual harmed by the false personation

9  and was thereby the victim. If this deceitful act had continued to go by undetected, the stories

10  told by the TSA would have appeared to match up with the video and Plaintiff could have been

11  severely harmed by her case being dismissed.

12      Plaintiff now believes, and hereby alleges, that DAUM was trying to make TETTEH

13  the heavy-set person in the video and was trying to make AIKENS take the place of TETTEH

14  and have her be the one doing the tug-of war over the cooler of food. Such deceit is despicable.

15      Plaintiff did notice the following statement that was made in her FOIA documents; it did

16  come from someone in the Department of Homeland Security: "When you call tomorrow I have

17  a question on discipline --- one of my staff members. It is a serious thing." Plaintiff wonders if

18  perhaps a TSA agent, such as DAUM, was caught being involved with the tampering with

19  evidence in this case. It appears as though the comment could have possibly been made by

20  TOOLES, who was the Transportation Security Inspector – Aviation. Plaintiff believes

21  TOOLES to be DAUM's supervisor. Only discovery can clear this issue up, as so many crucial

22  pieces of information have been redacted and black bars of toner is what the Plaintiff sees on the

23  document.

24  ///

25  ///

26

27  **SECOND AMENDED COMPLAINT ("SAC")**

28                                     59                                 10/10/12

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**Negligence**

**(All Defendants)**

**Federal Tort Claims Act**

Plaintiff refers to all information of this complaint, inclusive of the Statement of Facts and Claims for Relief and by this reference incorporates them as though set forth in full herein.

Although state officials cannot be currently charged with Negligence under the State Tort Claims Act due to Plaintiff's failure to file a claim within the proper time restrictions, state officials and agencies may be charged under the Federal Tort Claims Act as conspiracy has been pled.

Below Plaintiff has done her best to describe the elements of a negligence claim as it relates to each Defendant named in this case , namely (1) the duty each of the named Defendants owed to the Plaintiff, (2) how they breached that duty, (3) the result of that breach of duty, (4) the damage caused by the breach of duty, and (5) the creation of serious emotional distress as a direct result of the Defendant's negligent act(s).

**DEFENDANT DEPARTMENT OF JUSTICE (DOJ)**
**FOR THE UNITED STATES OF AMERICA**

KAPPELHOFF owed Plaintiff the duty to have a proper investigation ordered, as individuals representing the U.S. government, namely BIROTTE and BUCK, are defending and protecting at least 1 government employee who is a felon (AIKENS) that has seriously harmed Plaintiff and her family.  KAPPELHOFF failed to order said investigation and was therefore negligent.

**SECOND AMENDED COMPLAINT ("SAC")**

1   BIROTTE and BUCK, as part of the U.S. Department of Justice, owed Plaintiff the duty

2   to order a proper investigation so that the real criminals in this case could be prosecuted.  They

3   failed to do so and were thereby negligent.  As things stand right now, both BIROTTE and

4   BUCK are defending AIKENS, a felon.

5

6   ## DEFENDANT DEPARTMENT O F HOMELAND SECURITY

7   NAPOLITANO, as secretary of the DHS, has a duty to the American people to make sure

8   the agency she is in charge of operates professionally and honestly.  NAPOLITANO owed

9   Plaintiff the duty to have the issues properly investigated that Plaintiff has been arguing since the

10   day of her arrest.  NAPOLITANO failed to do any sort of investigative work and was thereby

11   negligent.

12   MC KENNA owed Plaintiff the duty to make sure justice was properly handled in the

13   Administrative  Civil Lawsuit.  Plaintiff requested picture ID's of the TSA agents involved in her

14   airport incident.  MC KENNA refused to allow the picture ID's to be produced and thereby was

15   protecting the heavy-set supervisor that had filed a falsified police report.  He was also protecting

16   AIKENS, who is a felon who signed the Citizen's Arrest form stating that Plaintiff had hit her

17   when in reality AIKENS was not even involved in the airport incident at all.

18

19   ## DEFENDANT TRANSPORTATION SECURITY ADMNISTRATION

20   PISTOLE.  As Administrator for TSA, PISTOLE owed Plaintiff the duty to make sure

21   felonious acts were properly investigated and prosecuted.  PISTOLE failed to do so and was

22   thereby negligent.

23   TETTEH and DOE.  On Thursday afternoon, April 16, 2009, Plaintiff  was going through a

24   security screening with her 93 year old mother along with a designated care giver at the Burbank

25   Airport in Los Angeles County, California.

26

27   **SECOND AMENDED COMPLAINT ("SAC")**

28   61                                    10/10/12

Plaintiff HAYS had in her possession a 12-Quart Igloo Playmate Cooler full of food and beverages for her 93 year old mother.

As Plaintiff was passing through pre-boarding inspection, TSA TSO Defendant TETTEH, arbitrarily and capriciously stopped Plaintiff. TETTEH told Plaintiff that the items in the cooler could not go on the plane. Plaintiff explained to TETTEH that the cooler of food and liquid was for her 93-year old mother, who was sitting in her wheel chair in the pat-down area. Plaintiff explained to TETTEH that she had called the TSA Contact Center and they had informed her that people with special needs can take on more than the limited amounts of liquid. TETTEH owed Plaintiff the duty to at least consider what Plaintiff was saying as true. She failed to do so.

TETTEH also owed Plaintiff the duty to suggest to DOE 1 that they call the TSA Contact Center to verify what Plaintiff was saying; she failed to do so.

Plaintiff asked for TETTEH's supervisor. The heavy-set supervisor, DOE 1 appeared. She reiterated and supported what TETTEH had said, namely that none of the items in the cooler could go. TETTEH owed Plaintiff the duty to tell DOE 1 that food was allowed to go on the plane and that it was only the liquids and gels that were restricted; she failed to do so.

Both Defendants TETTEH and DOE 1 had a duty at all times relevant to inform Plaintiff that she had options concerning her personal property. The options that Defendants TETTEH and DOE 1 had a duty to disclose to Plaintiff included, but were not limited to the following:

    a. disposing of items that she was prohibited from taking onto the plane with her;

    b. leaving the prohibited items with someone;

    c. taking the prohibited items back to her vehicle; or

    d. abandoning the prohibited items.

**SECOND AMENDED COMPLAINT ("SAC")**

10/10/12

Neither TETTEH nor DOE 1 presented Plaintiff with these options. They merely told Plaintiff that the items in the cooler could not go on the plane.

DOE 1 and TETTEH had the duty to allow food for ALBRECHT to go on the plane, as it was established protocol that individuals with special needs could take aboard items that the general public could not. They failed to do this.

DOE 1 and TETTEH had the duty to inform Plaintiff what they intended to do with the cooler of food before they removed it from the screening area; they failed to do so.

DOE 1 then closed up the cooler and, with TETTEH by her side, started to walk away with it, without saying anything to the Plaintiff as to what their intentions were regarding Plaintiff's property. This was an unlawful act, not authorized by law or by said Defendant's authority. TETTEH had the duty to intervene or stop the unlawful conduct of DOE 1; she failed to do so.

At this time and place, TSO Defendants TETTEH owed a duty to Plaintiff to properly supervise the activities and conduct of DOE 1; she failed to do so.

Plaintiff then left the screening area and pursued the two agents. Plaintiff wanted to know what their intentions were regarding Plaintiff's cooler and food. Plaintiff successfully stopped both agents and asked if they could put the cooler in the cargo section of the plane, along with Plaintiff's mother's wheelchair. DOE 1 told her "NO, we're going to confiscate everything." Once again TETTEH owed Plaintiff the duty to tell the supervisor that confiscating Plaintiff's property was not a lawful act; she failed to do so.

As Plaintiff reached for the cooler DOE 1 passed it to TETTEH and the tug-of-war over the cooler began. TETTEH, now having possession of the cooler, owed Plaintiff the duty to return her property; she failed to do so.

**SECOND AMENDED COMPLAINT ("SAC")**

63                                              10/10/12

1   Plaintiff then used lawful force to resist the unlawful taking of her property.  When

2   Plaintiff finally regained possession of the cooler, she emptied the contents into the nearest

3   trashcan and left the screening area with the intent to board the plane.

4       When DOE 1 could not talk TETTEH into placing an arrest on Plaintiff, DOE 1 took

5   matters into her own hands and placed a Citizen's Arrest on Plaintiff, utilizing the services of

6   the Burbank Airport Police.  TETTEH owed a duty to Plaintiff to tell the police that she was the

7   agent that did the tug-of-war with the cooler, not DOE 1; she failed to do so.

8       TETTEH owed a duty to Plaintiff to tell the police that DOE 1 was filing a falsifed

9   police report; she failed to do so.

10      When TETTEH was interviewed by Olga Baker before the trial was to begin, TETTEH

11  owed Plaintiff the duty to tell Olga Baker the truth regarding what had happened at the

12  airport.  The truths included the following:

13      1.  People with special needs are allowed to carry on whatever they need, subject to

14          additional screening if so deemed necessary.

15      2.  She and AIKENS were just "having some fun" with Plaintiff.

16      3.  She was the one that did the tug-of-war over the cooler with Plaintiff.

17      4.  DOE 1 had placed a falsified police report

18      5.  She and DOE 1 had done wrong by not contacting the TSA Contact Center to verify

19          the statement made by the Plaintiff.

20      6.  She had done wrong by refusing to give Plaintiff back her property.

21      7.  She had done wrong by allowing DOE 1 to place a Citizen's Arrest on Plaintiff based

22          on a falsified police report.

23  TETTEH failed to do so.

24

25

26

27  **SECOND AMENDED COMPLAINT ("SAC")**

28  64                                              10/10/12

1   ALL TSA AGENTS THAT WERE AT THE AIRPORT ON THE DATE OF THE

2   INCIDENT, INCLUDING STEPHEN WALKER AND KELLY BERG.  All TSA agents that

3   were present in the screening area and that had witnessed what had happened, including but not

4   limited to BERG and WALKER, should have been knowledgeable of proper TSA protocol.

5   Each and every one of them owed Plaintiff the duty to intervene and let TETTEH and DOE 1

6   know that what they were doing to Plaintiff was wrong.  Instead they all chose to be bystanders

7   and watch Plaintiff be accosted by one of their own.  Things they should have done but did not,

8   include but are not limited to:

9       1. Listened to the Plaintiff as she talked about having contacted the TSA Center

10          before departing on the trip.

11       2. Suggested that they call the TSA Contact

12       3. Told the Plaintiff what her options were

13       4. Told DOE 1 that people with special needs can take food and liquids on the

14          plane without having to abide by the regulations for regular passengers.

15       5. Informed the Plaintiff as to why her cooler was being removed from the

16          screening area

17       6. Intervened in behalf of the Plaintiff and helped her get her property back.

18       7. Supervised the activities and conduct of DOE 1.

19       8. Told DOE 1 that it was illegal to confiscate Plaintiff's property

20       9. Helped to get property back for Plaintiff.

21       10. Told the Airport Police what really happened.

22       11. Told the Airport Police that DOE 1 was placing a falsified police report.

23   ///

24   ///

25   ///

26

27   **SECOND AMENDED COMPLAINT ("SAC")**

28     10/10/12

ALL TSA AGENTS THAT PLAYED A SUPERVISORY ROLE (TOOLES, DAUM, TURNER, LEDESMA, SHEARER, TRAN, JUNG, THANG, MANSARAY, GENTRY, WILLIAMS, CAHILL, SHEA, MILENDEZ, MAGIO, MILLS, STILL, BLANCA MORALES). Plaintiff believes that Blanca MORALES was the TSA supervisor that entered the scene after Plaintiff had left the screening area. The video clearly shows that MORALES was aware of inappropriate behavior. MORALES had a duty to report to her superiors that agents had violated multiple TSA protocols. These violations included:

1. ALBRECHT's shoes had been removed from her feet.

2. ALBRECHT's cooler of food was not allowed to go on the plane

3. DOE 1 had fabricated a story that resulted in Plaintiff being arrested for a crime she did not do.

4. TETTEH played along with said fabricated story and allowed Plaintiff to be arrested on a falsified police report.

All agents whose role is to supervise agents under them owed Plaintiff the duty to make sure that their agents were following the law of the land and the rules of the organization. TSA agents are required to follow the protocols set out by the agency. TSA agents are not allowed to lie. TSA agents are not allowed to conspire together to make an innocent person look guilty of committing a crime she did not do.

To what degree the named agents were involved is not known at this time, but should be discovered through the discovery process.

ALL TSA AGENTS THAT PLAYED A LEGAL ROLE (SCHRIVER, TREVINO, SOULE, FORD, MC KENNA, BUCK). he role of the justice system is to assure that the truth be made known and that criminals be prosecuted. Over time people have come to believe that the

**SECOND AMENDED COMPLAINT ("SAC")**

10/10/12

1   process should also be used to protect the guilty, which is a falsity,. The only way a guilty

2   person can be freed is if his legal counsel has deceived the court and the jury to the point that

3   they cannot decipher the truth from the lies. If the truth is made known, the guilty will obviously

4   be so proclaimed, and it is only then that justice can be invoked..

5         Individuals involved in the legal system owed Plaintiff the duty to make sure the truth

6   would be made known. From the very beginning Plaintiff asked for picture identification of the

7   two agents she was directly involved with at the airport. FORD, MC KENNA, and BUCK all

8   failed to honor Plaintiff's request.. If said request had been honored, it would have been obvious

9   that the police report was falsified. Plaintiff's credibility would have been greatly enhanced.

10         TONYA AIKENS. AIKENS owed Plaintiff the duty to tell her what had really

11   transpired, namely that she had been asked to play a role in the airport incident even though in

12   actuality she was not there. AIKENS failed to tell the truth to Plaintiff and so was thereby

13   negligent.

14

15   ## DEFENDANT BURBANK-GLENDALE-PASADENA AIRPORT AUTHORITY, ITS

16   ## AGENCIES AND AGENTS

17         THE BURBANK AIRPORT POLICE. The Burbank Airport Police had a fiduciary duty

18   to properly investigate the allegations made by the TSA supervisor before arresting Plaintiff.

19   They failed to do so.

20         The arresting officers, GREEN and ALBARO, as well as any supervisory officers, had

21   the duty to properly investigate the case before arresting Plaintiff. They breached this fiduciary

22   duty in the following ways:

23         As the arresting agency, the Burbank Airport Police owed Plaintiff the duty to obtain

24   unbiased witness statements by the many passengers that were passing through the screening

25

26

27                        **SECOND AMENDED COMPLAINT ("SAC")**

28                                    67                          10/10/12

1  area and that witnessed the altercation over the cooler of snacks. They failed to do so and were
2  thereby negligent.

3      The Burbank Airport Police owed Plaintiff the duty to immediately review the readily
4  available video footage before making the arrest (there were approximately 10 camera bubbles
5  on the ceiling of the area involved in this episode). If they had, they would have clearly seen that
6  the allegations made by DOE 1 where false. They failed to do so and were thereby negligent.

7      The Burbank Airport Police owed Plaintiff the duty to listen to the facts presented to
8  them by her and to consider her side of the story as being at least equal to that of the TSA
9  supervisor. They failed to do so and were thereby negligent..

10      After watching the video footage the day of the incident, both GREEN and ALBARO
11  owed Plaintiff the duty to accurately describe what they had seen, namely that Plaintiff never hit
12  anyone and that the tug-of-war over the cooler had been with TETTEH, not DOE 1. Both
13  GREEN and ALBARO had a duty to come forth with the truth; they failed to do so.

14      GREEN and ALBARO owed Plaintiff the duty to do a Citizen's Arrest on the supervisor
15  that had Plaintiff arrested, as Plaintiff so demanded. They failed to do so and were thereby
16  negligent, even though Plaintiff asked them twice to do so..

17      Officer DEPOT owed Plaintiff the duty for the truth to be told. He failed to do this and
18  was thereby negligent when he told Plaintiff's husband that two agents had been injured when in
19  fact no one had been harmed.

20      Officer KAKUMU owed Plaintiff the duty to tell the truth and was negligent when he
21  lied.. Plaintiff asked KAKUMU if she was going to be arrested, he lied to her and told her "no"
22  when in fact he knew the arresting officers were on their way.

23

24      THE BURBANK-GLENDALE-PASADENA AIRPORT AUTHORITY. The Burbank-
25  Glendale-Pasadena Airport Authority and its members owed Plaintiff the duty to make sure her

26

27                    **SECOND AMENDED COMPLAINT ("SAC")**

28                                  68                          10/10/12

1   travel out of their airport was safe. Allowing an agency that harasses the passengers on a daily
2   basis, including fabricating lies and having innocent passengers thrown in jail, violates this duty.
3   Allowing this to happen indeed is negligent.

4         When Plaintiff notified BGPAA of the abuses that had occurred at their airport, they
5   refused to investigate even though they had the means to do so. The BGPAA owed Plaintiff the
6   duty to properly investigate what had happened; their failure to do so constitutes negligence. In
7   fact, the BGPAA refused to even acknowledge Plaintiff's correspondence. As a professional
8   business being run in the City of Burbank, they owed Plaintiff, who was in essence their client,
9   the duty and respect of acknowledging her complaint and a description as to what they intended
10  to do to remedy the problem. The Authority failed to do any of the above and were, thereby,
11  negligent.

12        At this time and place, all members of the Burbank-Glendale-Pasadena Airport
13  Authority, and each of them, negligently maintained, controlled, managed, and operated the
14  airport operations. They entrusted, maintained and operated this Airport Screening Station and
15  surveillance system so as to directly cause the injuries and damages described herein.

16

17  **DEFENDANT CITY OF BURBANK, ITS AGENCIES AND AGENTS**

18        BURBANK POLICE DEPARTMENT (ROSS,  HAWVER, LA CHASSE, CREMINS).
19  The Police Department has the power to investigate crime. ROSS was the detective assigned to
20  Plaintiff's case. ROSS had the duty to contact Plaintiff and get her side of the story before the
21  malicious prosecution began. Ross failed to do so and was thereby negligent.

22        HAWVER was assigned to do an internal investigation at the Burbank Police
23  Department. Plaintiff had alleged that someone, and most likely ROSS, had been involved in
24  changing out the original DVD in the evidence locker with an altered version that was designed
25  to make Plaintiff look guilty of hitting DOE.

26

27  **SECOND AMENDED COMPLAINT ("SAC")**

28  69                                    10/10/12

1    HAWVER had a duty to do a thorough investigation and to furnish the results to the

2  Plaintiff; his failure to do so constitutes negligence. To date Plaintiff has never received a report

3  although she was entitled to one.

4    LA CHASSE was the Chief of Police for the Burbank Police Department. In his position

5  he owes all citizens within his jurisdiction the highest degree of integrity within his department.

6  LA CHASSE felt that everything had run fine in his department, even though the video and the

7  police report did not match. LA CHASSE, through his department, owed Plaintiff a thorough

8  investigation. He failed to make sure that was done and was thereby negligent.

9    CREMINS, as Commander of the Investigation Division of the Burbank Police

10 Department, owed Plaintiff the duty to do a proper investigation with her case. Plaintiff has

11 continually stated that the tug-of-war over the cooler was with TETTEH, the screener, and not

12 the supervisor. If CREMINS had asked TSA for picture identifications of the 2 main agents

13 involved in the airport incident, he would have immediately realized that Plaintiff was indeed

14 being prosecuted on a falsified police report. He failed to do so, and was therefore negligent.

15    If CREMINS had asked for a photo ID for AIKENS, he would have clearly seen that

16 AIKENS was not involved in the airport incident at all. He failed to do so, and therefore was

17 negligent.

18

19    **DEFENDANT CITY OF BURBANK, ITS AGENCIES AND AGENTS**

20    BURBANK CITY ATTORNEY'S OFFICE (WEI, BARLOW, BAKER). All

21 individual's working in a prosecutorial position need to understand that their duty is to prosecute

22 the guilty, but also to exonerate the innocent. WEI, BARLOW, and BAKER decided to

23 maliciously prosecute Plaintiff even though she consistently told them that they were prosecuting

24 on a falsified police report. They never had an investigation to identify the agents. They

25 accepted naming the individual that was allegedly harmed in the complaint as simply "T.A."

26

27    **SECOND AMENDED COMPLAINT ("SAC")**

28             10/10/12

1  When dealing with evidence, they should have immediately demanded a copy of the surveillance

2  footage or at least gone down to the airport to view it directly from the video room. Instead, they

3  allowed almost 2 months to pass by before getting a copy of the video to give to the Plaintiff.

4      WEI, BARLOW, and BAKER owed Plaintiff the duty to have the case properly

5  investigated by obtaining picture identifications of the TSA agents involved. If they had done

6  so, they would have seen right away that the Plaintiff was telling the truth and DOE 1 had lied.

7  Since they failed to have the case properly investigated, Plaintiff was prosecuted as a hard-core

8  criminal when she was actually completely innocent of the crimes charged.

9      BAKER interviewed 4 of the TSA agents: AIKENS, TETTEH, WALKER, and BERG.

10  Baker owed Plaintiff the duty to confirm each agent's identity in the surveillance video. If she

11  had done so, it would become very obvious that the surveillance video had been altered.

12  BAKER's negligence in not properly identifying AIKENS, TETTEH, and DOE 1 (the heavy-set

13  supervisor) resulted in Plaintiff's malicious prosecution.

14

15      ANJA REINKE, MAYOR OF THE CITY OF BURBANK. On December 11, 2010

16  Plaintiff sent an e-mail to Anja Reinke explaining what had happened to her at the Burbank

17  Airport. As a professional, representing the city of Burbank, REINKE owed Plaintiff the

18  courtesy of a response, and preferably an order for a thorough investigation. REINKE did not

19  even acknowledge Plaintiff's correspondence, let alone address the criminal issues; she was

20  therefore negligent.

21      On January 27, 2011 Plaintiff sent a final letter to BARLOW and sent a copy to

22  REINKE, detailing what had happened in her case. REINKE had enough information to order a

23  thorough investigation, yet failed to do so and was thereby negligent.

24

25

26

27          **SECOND AMENDED COMPLAINT ("SAC")**

28                          71                    10/10/12

1    JUDGE APPLEGATE.  APPLEGATE owed Plaintiff the duty to make sure she had a

2   fair trial.  When Plaintiff's attorney requested necessary Discovery in order to defend Plaintiff

3   properly, APPLEGATE was negligent and denied the necessary Discovery from being provided.

4

5                **DEFENDANT AMERICAN AIRLINES, ITS AGENCIES AND AGENTS**

6    DEFENDANT AIRPORT TERMINAL SERVICES (ATS).  ATS was the employer for

7   MASSINGALE, and MASSINGALE's job was to work at the American Airlines boarding gate

8   at the Bob Hope Airport.

9    Plaintiff, her mother, and her mother's caregiver had boarding passes to go on American

10  Airlines on April 16, 2009.  MASSINGALE, the American Airlines gate attendant, refused to

11  allow Plaintiff to board.  MASSINGALE had a duty to allow Plaintiff to board; she failed to do

12  so.

13   AMERICAN AIRLINES.  American Airlines owed Plaintiff the duty to allow her to fly

14  on her ticketed flight.  Their failure to do so was an act of negligence.  MASSINGALE made a

15  very subjective decision in not allowing Plaintiff to board the plane when, in fact, Plaintiff had

16  committed no crime and was not a danger to any of the passengers.

17   MASSINGALE could have called in a supervisor to properly evaluate the situation, but

18  she failed to do so and was thereby negligent.

19   AMERICAN AIRLINES had indicated to Plaintiff's daughter that they would be happy

20  to get Plaintiff, her mother, and the caregiver on board the first available flight as soon as

21  Plaintiff was released from jail.  American Airlines did not follow through with this promise and

22  was thereby negligent.

23                          **MISCELLAEOUS DEFENDANTS**

24   RENAUTO MEDINA.  MEDINA had been paid to represent Plaintiff during her

25  criminal prosecution.  MEDINA owed Plaintiff the duty to work in her defense.  Plaintiff

26

27                        **SECOND AMENDED COMPLAINT ("SAC")**

28                                 72                              10/10/12

1  notified MEDINA that she was being prosecuted on a falsified police report and that picture

2  identifications should be obtained.  MEDINA, having thus heard this from Plaintiff, owed

3  Plaintiff the duty to have it properly investigated.  MEDINA failed to have a proper investigation

4  done and requested a withdrawal from the case when Plaintiff would not accept the plea bargain.

5        MEDINA had told Plaintiff that he had done a Pitchess Motion on the TSA agents and

6  that everything looked fine.  When Plaintiff finally obtained a copy of her file from PREVOST

7  there were no Pitchess Motion results.  MEDINA had a duty to produce said results on the TSA

8  agents and he failed to do so.

9        MEDINA, being a professional attorney, should have informed Plaintiff about the

10  necessity to file a federal and a state tort claim form.  He failed to do so.

11        Also, by law, MEDINA had a duty to present Plaintiff with an itemized bill, showing her

12  how her retainer money had been spent.  MEDINA failed to do so.

13

14        MARY FRANCES PREVOST.  PREVOST was Plaintiff's second criminal attorney.

15  PREVOST was hired by Plaintiff to represent her.  It was PREVOST's duty to listen to

16  Plaintiff's allegations and to properly investigate them.  She failed to do so.

17        Plaintiff was led to believe that a speedy trial would occur, so she could move on with her

18  life.  PREVOST had a duty to make this happen.  She failed to do so.  Instead, PREVOST

19  constantly asked for unjustified continuances, prolonging the period of anguish for the Plaintiff.

20        PREVOST made 1 personal appearance in the first year before they went to trial.

21  Plaintiff was led to believe that PREVOST would be representing her throughout the court

22  proceedings.  PREVOST, as her attorney, had the duty to do so or at least to let Plaintiff know

23  that she would sometimes be represented by outside counsel.  PREVOST failed to do so and was

24  thereby negligent..

25

26

27                          **SECOND AMENDED COMPLAINT ("SAC")**

28                                        73                        10/10/12

1  PREVOST had the duty to notify Plaintiff when the Court had calendared an appearance.

2  PREVOST failed to do this most of the time.

3  PREVOST owed Plaintiff the duty to keep her informed of the progress of the case;

4  PREVOST hardly ever communicated with Plaintiff.  In fact, on March 15, 2010 Plaintiff was

5  sitting in the courtroom waiting for PREVOST to show up.  Plaintiff received a call from

6  PREVOST stating that she had car problems and that she would so notify the court.  She did not

7  say anything to Plaintiff about telling the Clerk that Plaintiff was in attendance.  According to the

8  docket a bench warrant was issued for Plaintiff, even though she had been present in the

9  courtroom.

10  PREVOST, as a professional attorney, should have immediately filed a state tort claim

11  for Plaintiff, knowing that damages should be collected after the criminal case was dismissed.

12  PREVOST failed to do so.

13  PREVOST was going to represent Plaintiff in her Civil Enforcement lawsuit where TSA

14  was going to fine Plaintiff for interfering in the screening process.  At this time PREVOST told

15  Plaintiff to stop arguing the authenticity of the video, as it was the best evidence in her civil case.

16  Plaintiff told PREVOST that she would not enter something into evidence that she knew to be

17  false.  PREVOST became very upset and withdrew from her case.  PREVOST was ordered by

18  the court to turn over Plaintiff's file so that she could properly prepare for trial.  PREVOST

19  refused to do so.

20  When she finally did send the file to Plaintiff, many of the documents were written in

21  Word Perfect, a program that Plaintiff could not run on her computer.  PREVOST owed Plaintiff

22  the duty to turn over a printed copy of all documents in her file.  She failed to do so and was

23  thereby negligent.

24  Plaintiff went down to San Diego to pick up her file.  Plaintiff notified PREVOST'S

25  office the night before that she was coming down.  When Plaintiff arrived in the lobby of

26

27  **SECOND AMENDED COMPLAINT ("SAC")**

28                     10/10/12

1  PREVOST's office, PREVOST threatened her and told her that security was on their way.

2  PREVOST owed Plaintiff the duty to give her the case file. She failed to do so and was thereby

3  negligent.

4

5                    **DEFENDANT LOS ANGELES DISTRICT ATTORNEY'S**

6                              **OFFICE AND ITS AGENTS**

7        MOULIN and GARRISON worked in the Bureau of Fraud and Corruption Prosecutions;

8  Justice System Integrity Division of the Los Angeles District Attorney's Office.

9        Plaintiff presented evidence to both individuals about the tampering with evidence in her

10 criminal prosecution. She insisted that she had been prosecuted on a falsified police report.

11 MOULIN and GARRISON owed Plaintiff a proper investigation. If they had at least obtained

12 picture identifications for the two agents, they would have been able to see that the one agent

13 was not even in the surveillance video. This would have set of an immediate alarm regarding the

14 corruption involved in this case.

15        MOULIN and GARRISON owed Plaintiff the duty to properly investigate and prosecute

16 the felons. They failed to do so.

17

18              **DEFENDANT LOS ANGELES POLICE DEPARTMENT AND ITS AGENTS**

19        When Plaintiff discovered that AIKENS was an imposter and was not actually involved

20 in the airport incident at all, she supplied all of the information she had to the West Valley

21 Station of the LAPD. Her intention was to have AIKENS arrested for false personation.

22        Officers LA DUFF, BROWNELL, TINKER, and GUTIERREZ had the duty to properly

23 investigate the case. They failed to do so.

24

25

26

27                    **SECOND AMENDED COMPLAINT ("SAC")**

28                                    75                          10/10/12

1    Said negligence, as described above, caused Plaintiff to be arrested and criminally

2  prosecuted for offenses that Plaintiff did not commit, and for which a prompt investigation

3  would have revealed that Plaintiff did not commit.  Therefore, the citizen's arrest and the formal

4  arrest by the other defendants in reliance on the citizen's arrest were both without probable cause.

5    As a direct and legal result of the negligence of defendants, and each of them, Plaintiff

6  was injured in her activity, sustaining injury to her nervous system and person, all of which

7  injuries have caused, and continue to cause, plaintiff great mental, physical, emotional, and

8  nervous pain and suffering.  Plaintiff is informed and believes and on this information and belief

9  alleges that these injuries will result in permanent disability to him/her.  As a result of these

10  injuries, plaintiff has suffered general damages.

11    As a further direct and legal result of the negligence of defendants, and each of them,

12  Plaintiff has incurred, and will continue to incur, medical and related expenses.  Plaintiff does

13  not know at this time the exact amount of expenses that have been incurred and that will be

14  incurred in the future.

15    As a further direct and legal result of the negligence of defendants, and each of them,

16  Plaintiff lost earnings and also her earning capacity has been and will be greatly impaired, both

17  in the past and present in an amount according to proof.

18    As a further direct and legal result of the negligence of defendants, and each of them,

19  Plaintiff's personal property was lost or destroyed, all to plaintiff's damage in a sum to be

20  determined according to proof.

21

22                    **SECOND CLAIM FOR RELIEF**

23                        **Trespass to Chattels**

24                        **(All TSA employees)**

25                      **Federal Tort Claims Act**

26  ────────────────────────────────────────────

27              **SECOND AMENDED COMPLAINT ("SAC")**

28                               76                    10/10/12

1   Plaintiff refers to all information of this complaint, inclusive of the Statement of Facts

2   and Claims for Relief and by this reference incorporates them as though set forth in full herein.

3   All elements for a trespass to chattels claim are present in this case.  These elements are

4   ( 1) the lack of the plaintiff's consent to the trespass,( 2) interference or intermeddling with

5   possessory interest, and (3) the intentionality of the defendant's actions. Actual damage is not

6   necessarily a required element of a trespass to chattels claim.

7   Plaintiff is, and at all times herein mentioned was, the owner and in possession of certain

8   personal property more particularly described as a 12-Quart Igloo Playmate Cooler full of food

9   and beverages for her 93 year old mother.

10   On Thursday afternoon, April 16, 2009, Defendants AIKENS and TETTEH, without

11   Plaintiff's consent, took possession of the 12-Quart Igloo Playmate Cooler full of food and

12   beverages for her 93-year old mother, thereby intermeddling with Plaintiff's use of the -Quart

13   Igloo Playmate Cooler, full of food and beverages for Plaintiff's 93 year old mother.

14   As a proximate result of the attempted theft of the 12-Quart Igloo Playmate Cooler full

15   of food and beverages for her 93 year old mother plaintiff's property was lost or damaged.

16   Plaintiff was emotionally hurt when agents, that had been hired by the government to

17   protect those that fly, were in actuality harassing and threatening her when they stole  her

18   property.

19   Plaintiff is still trying to recover from the trauma of this event.

20

21   **THIRD CLAIM FOR RELIEF**

22   **Abuse of Process**

23   **(All Defendants)**

24   **Federal Tort Claims Act**

25

26

27   **SECOND AMENDED COMPLAINT ("SAC")**

28   77                                    10/10/12

1    Plaintiff refers to all information of this complaint, inclusive of the Statement of Facts

2    and Claims for Relief and by this reference incorporates them as though set forth in full herein.

3    In order for a Defendant to be charged with Abuse of Process, it must be shown that

4    there was an ulterior motive and that there was a willful act in the use of process not proper in

5    the regular conduct of the proceedings. Principles of agency or vicarious liability may extend

6    liability to persons or entities who were not litigants in the underlying suit.

7    In this case government liability has been dismissed due to the Plaintiff's failure to file a

8    claim within the time limits set forth by the Statute of Limitations. However, since Abuse of

9    Process is being claimed, government entities can now be held responsible due to vicarious

10   liability.

11   Our legal process, including that of arresting a criminal, is an important element in our

12   society. It can be used to our benefit when a true criminal is taken into custody for committing a

13   severe crime. The fact that a Citizen's Arrest is possible when a crime is committed in the

14   absence of a law enforcement officer also empowers our society to capture criminals.

15   All Defendants had at least one ulterior motive and that was to make sure that Plaintiff

16   was found "Guilty" at trial, as there would be severe civil action against all agents involved if

17   Plaintiff was proven to be not guilty. Defendants acted with malice, willfully and of their own

18   accord. Said acts were wrong and yet they followed through with them under color of law.

19   In this case the legal process was abused. An arrest was made on an innocent person. All

20   Defendants had the capability of either

21   1. Speaking up and telling the truth when the arrest was attempted, which could have

22   cleared the Plaintiff from any wrong doing, or

23   2. Investigating what had happened and either prevented the arrest and incarceration of

24   the Plaintiff or ended the continual malicious prosecution much sooner.

25

26

27                   **SECOND AMENDED COMPLAINT ("SAC")**

28                                      78                          10/10/12

1  Neither of these acts occurred. Not one of the Defendants stood up for the Plaintiff in her
2  defense.

3  All individuals in the legal arena are supposed to work towards the common goal of
4  having justice served. This cannot be achieved when individuals lie and deceive the court. This
5  cannot be done when courts deny defendants discovery to prove their innocence.

6  It is the duty of all law enforcement individuals to investigate crimes and prepare the case
7  for prosecution. In this case, however, individuals purposefully did not investigate the crimes
8  because then individuals they were conspiring with, to make the Plaintiff look guilty of a crime
9  she never did, would be found guilty of criminal activity. In essence they were aiding and
10 abetting the criminal activity of tampering with evidence and/or falsifying testimonies that were
11 to be used in a court of law.

12 It is the duty of the prosecution to prosecute the guilty and to exonerate the innocent. In
13 this case the prosecution used its mantle to protect the criminals and to prosecute an innocent
14 person.

15 It should be noted that although Plaintiff's State Tort Claim was deemed late and
16 therefore agencies were sheltered due to the statute of limitations, when abuse of process is a
17 cause of action, vicarious liability can be applied in which case the agencies that employ
18 individuals involved in criminal acts can become liable. Indeed this type of checks and balance
19 is intended to motivate cities to only employ honest individuals.

20 Under no circumstances is it acceptable to arrest an individual for a crime they never did.
21 Nor is it acceptable to use one's authority, such as the powers invested in them due to the
22 position they hold at a place of employment, to accomplish a personal goal. Nor is it acceptable
23 for individuals to be entertained while one of their customers is being abused.

24

25

26

27 **SECOND AMENDED COMPLAINT ("SAC")**

28                              10/10/12

1    Perhaps Plaintiff is too old fashioned and would have expected someone within the

2  agencies that employed Defendants, or the Defendants themselves, to have shown a little

3  chivalry and come to the Plaintiff's rescue. Not a single one did when they could have.

4    Plaintiff has no issue with dismissing this cause of action if Defendant can prove that

5  they exhibited due diligence regarding their involvement with this case and were truly not aware

6  of the criminal activity that took place.

7    Each defendant is listed below. Although the actual motive for the abuse of process is

8  not currently known, Plaintiff can surmise. Discovery should bring forth the real motive, if the

9  defendant is willing to so admit.

10    **DEFENDANT TRANSPORTATION SECURITY ADMINISTRATION**

11  TETTEH and DOE 1:

12  Motives:

13  1.  It was fun to "play" with a white lady. Plaintiff did feel that she was being discriminated

14        against. She could not understand why these two black women, were laughing during the

15        tug-of-war over the cooler of snacks. She could not understand how anyone could be so

16        inhumane as to charge a person with a crime that she did not do. They truly seemed to be

17        entertained by seeing a white woman become upset over their illegal actions, for which

18        they were not reprimanded. They were entertained once again when the white woman

19        was traumatized when police officers cuffed her and humiliated her as she was escorted

20        to the patrol car outside.

21  2.  Plaintiff was wearing all of her good jewelry, as she never leaves it in her luggage when

22        she flies. Plaintiff believes, and thereby alleges, that there could be the possibility that

23        the agents felt that if Plaintiff were found "Guilty" that the allegedly "battered" agent

24        could then sue Plaintiff for damages. There was no question in the Plaintiff's mind that

25        the two agents were working as a "team"

26

27    **SECOND AMENDED COMPLAINT ("SAC")**

28                                80                    10/10/12

Abuse of Process for both agents:

    1. It was not proper for the agents to not allow the food for a special needs individual to board.

    2. It was not proper for the agents to remove ALBRECHT's shoes.

    3. It was not proper to laugh at individuals being harassed in the screening area.

    4. It was not proper to take Plaintiff's personal property.

    5. It was not proper to hang onto Plaintiff's property when she tried to regain possession

    6. It was not proper to call the Airport Police and accuse Plaintiff of causing turmoil when in actuality the turmoil had been intentionally caused by TETTEH and DOE 1.

MORALES

    Motive: TETTEH and DOE 1 had committed some major wrongdoings and MORALES could see that very clearly when she appeared. Plaintiff is not certain at this time if MORALES had viewed the video prior to appearing on the scene. MORALES was probably told to make it look good, because her job was on the line. Unfortunately this type of justification is frequently used by many people today. Individuals with families to support will do almost anything they are told, even if it is unethical.

    Abuse of Process: The public was led to believe that MORALES, acting as a supervisor, was acting in the benefit of the public. The proper action for MORALES should have been to apologize to Plaintiff for the agents' actions. When she failed to discipline the agents, it left a public image that Plaintiff was the criminal. This was wrong and never should have been done.

AIKENS

    Motive: There was a necessity to find an agent with a supervisory classification that could be misidentified as TETTEH, as the report written by DAUM had correctly stated that the

**SECOND AMENDED COMPLAINT ("SAC")**

1   supervisor had placed the Citizen's Arrest on Plaintiff. The video clearly shows, however, that

2   the tug-of-war over the cooler was with TETTEH, the screener, and not DOE 1, the supervisor.

3        Plaintiff believes that DAUM was involved in coordinating a set-up where AIKENS was

4   told what had happened and had been asked to pretend to be the supervisor at the airport. That

5   way the body type of the two figures, TETTEH and AIKENS, would be similar when the video

6   was viewed. The only problem with this fabrication, however, is that we still have DOE 1, the

7   heavy-set supervisor at the airport, that has not been identified. Plaintiff does remember who

8   the supervisor was and who the screener was. AIKENS was not involved in the airport incident.

9        At this time the only explanation Plaintiff has for AIKENS taking on such a role is that

10  there was some form of monetary compensation. It is obvious that AIKENS does not want to be

11  caught, as when Plaintiff was having her served with a separate lawsuit in Superior Court it was

12  discovered that she had completely vacated her apartment. No forwarding address was left.

13       Abuse of Process:  AIKENS used her position as a TSA supervisor in order to participate

14  in a fabricated story that was designed to make Plaintiff appear guilty of a crime she never did.

15  She signed a Citizen's Arrest form stating Plaintiff hit her when in actuality no such activity ever

16  happened. Such unlawful activity is indeed despicable.

17

18       **MISCELLANEOUS TSA DEFENDANTS, BURBANK AIRPORT POLICE**

19       **DEFENDANTS, CITY OF BURBANK DEFENDANTS, ATS DEFENDANT, LOS**

20       **ANGELES DISTRICT ATTORNEY DEFENDANTS, LOS ANGELES POLICE**

21       **DEPARMENT DEFENDANTS, AND JUDGE DEFENDANTS**

22  WALKER, BERG, TOOLES, DAUM, TURNER, LEDESMA, SHEARER, TRAN, JUNG,

23  THANG, MANSARAY, GENTRY, TREVINO, SOULE, WILLIAMS, CAHILL, SHEA,

24  MELENDEZ, MAGIO, MILLS, STILL, MARQUISE, KAKAKUMU, GREEN, ALBARO,

25

26

27       **SECOND AMENDED COMPLAINT ("SAC")**

28                          82                          10/10/12

DEPOT, ROSS, WEI, BARLOW, MASSINGALE, MC KENNA, BAKER, MOULIN,

GARRISON, APPLEGATE, LAPD, LA DUFF, BROWNELL, TINKER, GUTIERREZ

Motive:  The only motive Plaintiff can see that came into play was that of wanting to support the prosecutor and add to his percentage of successful prosecutions.  This is fine when one is prosecuting a criminal, but not when the defendant is innocent of the alleged crime. Laziness probably entered into the picture as well; it was far easier to just prosecute than it was to do a thorough investigation.  It was probably also less expensive for the city, as time is money and investigations do take time and energy.

Abuse of Process:  All of the above Defendants used the cloak of their office to hide the truth rather than to help bring the truth to the surface.  Plaintiff was severely damaged by such unethical practices.

### FOURTH CLAIM FOR RELIEF

#### False Arrest/Imprisonment

#### (All TSA Defendants, All Burbank Airport Defendants)

#### Federal Tort Claims Act

Plaintiff refers to all information of this complaint, inclusive of the Statement of Facts and Claims for Relief and by this reference incorporates them as though set forth in full herein.

The elements for false arrest/imprisonment were all present in this case; these elements are: (1) willful detention; (2) without consent; and (3) without authority of law.

On Thursday afternoon, April 16, 2009, at the aforementioned airport, Defendants, maliciously seized and took Plaintiff without a warrant of arrest or any process of any kind, and against her will and over her protest, caused Plaintiff to be taken into custody and compelled her

SECOND AMENDED COMPLAINT ("SAC")

83                          10/10/12

1   to enter a police car operated by an officer of the Burbank Airport Police Department and to be

2   taken to the Burbank Police Station, and there maliciously restrained and confined.  Defendants

3   and each of them then detained Plaintiff for a period of over seven (7) hours, strip searched

4   against her will, and over her protest, after which time Plaintiff was released with the making of

5   criminal charges that were filed and prosecuted against her and then after 18 months of

6   litigation, that were subsequently dismissed.

7        On April 16, 2009, LTSO Defendant DOE 1, personally swore to and caused to be filed

8   in the Superior Court of the County of Los Angeles, State of California, a criminal complaint,

9   against Plaintiff, charging Plaintiff with violations of law.  The complaint, as sworn to and filed

10  by the defendant DOE 1, was wholly false.  In fact, Plaintiff had committed no misdemeanor

11  OR CRIME and no misdemeanor OR CRIME had actually been committed at all.

12       Defendant DOE 1, in causing the arrest and imprisonment of Plaintiff as herein alleged,

13  acted with deliberate malice and oppression and without probable cause.

14       As a proximate result of the acts of defendant herein alleged, Plaintiff was compelled to

15  secure the services of an attorney at law to appear for arraignment and trial in the City of

16  Burbank, and by virtue thereof, Plaintiff is indebted and liable for attorney's fees in the sum of

17  in excess of $15,000.

18       The Defendant's acts alleged above were willful, wanton, malicious, and oppressive,

19  were undertaken with the intent to defraud, and justify the awarding of exemplary and punitive

20  damages.

21

22                    **FIFTH CLAIM FOR RELIEF**

23                       **Malicious Prosecution**

24                       **(Against all Defendants)**

25

26

27           **SECOND AMENDED COMPLAINT ("SAC")**

28                              84                          10/10/12

1    Plaintiff refers to all information of this complaint, inclusive of the Statement of Facts
2  and Claims for Relief and by this reference incorporates them as though set forth in full herein.

3    The elements of this action were all present and include: (1) The institution of an action,
4  (2) without probable cause and  (3) with malice, (4) termination of the action favorable to the
5  defendant, and (5) resulting damage by way of attorneys' fees incurred in defense, mental
6  distress, and/or injury to reputation or social standing.

7    On or about April 21, 2009, Deputy City Attorney Denny Wei filed a criminal complaint
8  (Case #: 9BR01474) against HAYS in the Burbank Court. The criminal complaint accused
9  Plaintiff of the crime of violating Section 242 of the Penal Code, a misdemeanor.

10    Plaintiff was arraigned, pleaded "not guilty" to the false charges, and was scheduled for
11  trial.

12    On the eve of trial, Defendants dismissed the criminal case, because defendants were
13  finally forced to face the reality that there was no probable cause to believe that Plaintiff had
14  committed any crime.  Nevertheless, Defendants and each of them were aware from at least
15  April 21, 2009 that Plaintiff had committed no crime, and Defendants had prosecuted the case
16  vindictively, in bad faith, at all times.

17    On October 18, 2010, the Deputy District Attorney WEI requested dismissal of the
18  charges against Plaintiff, claiming that it was in the interests of justice and because of the lack
19  of evidence against Plaintiff Nadine Hays.  However, the true reason for the dismissal was that
20  there had never been any reason to believe Plaintiff had committed any crime, and because the
21  case had been, from the outset maliciously filed and prosecution and because it was frivolous in
22  the extreme.  This was a termination on the merits.

23    Defendants acted without probable cause in initiating the criminal prosecution of
24  Plaintiff and in initiating and prosecuting the civil administrative prosecution of Plaintiff. They
25  did not honestly, reasonably, and in good faith believe Plaintiff was  guilty of any crime or

26
27              **SECOND AMENDED COMPLAINT ("SAC")**

28                           85                    10/10/12

1    offense, civil or criminal, or the crime and civil offenses charged because Defendants and each

2    of them knew, soon after the incident at the Burbank Airport, based upon the videotape that they

3    reviewed, that no crime had been committed.

4        Defendants acted maliciously in instigating the criminal prosecution in that, even though

5    they knew Plaintiff had committed no crime, they sought to pervert and use the criminal justice

6    for their own ends, in that they were trying to help Defendant Doe 1 save face, and to retaliate

7    against Plaintiff for simply asserting her rights and defending herself. Other motives of said

8    action included the gratification of the egos of Defendant DOE 1 and her supervisors, the

9    protection of Defendant Doe 1 against legitimate complaints of Plaintiff about Defendant DOE

10   1's misconduct, and the general protection of the reputation of TSA.

11       It is well known that TSA has been accused of excesses and abuses of air travelers over

12   the last several years, such that TSA has been characterized in the press as an agency run amok.

13   By prosecuting the criminal and civil cases mentioned above, TSA sought to mislead the public

14   into the thinking that this was not yet another case of an air traveler being abused by its agents

15   and employees.  So, Defendants and each of them sought to salvage the reputation of TSA by

16   making Plaintiff a scapegoat.

17

18                          **DEFENDANT CITY OF BURBANK**

19       WEI, BARLOW, AND BAKER.  WEI and BARLOW are indeed guilty of extortion, as

20   in the plea bargaining process Plaintiff was threatened with jail time if she was found guilty at

21   trial.  A plea bargain might be considered a good thing when offered to a real criminal, as both

22   sides end up with some benefits.  When a plea bargain is offered, however, to an innocent

23   individual and the individual is threatened with jail time if the plea bargain is not accepted and

24   the individual is found unjustly guilty at trial, then the bargaining has indeed become a means of

25   extortion.

26

27                     **SECOND AMENDED COMPLAINT ("SAC")**

28                                    86                          10/10/12

1

2

## DEFENDANT DEPARTMENT OF HOMELAND SECURITY

MC KENNA. Likewise, MC KENNA issued Plaintiff some sample cases of Civil Enforcement judgments, which were intended to scare HAYS, the Plaintiff in this suit but the Defendant in the Civil Enforcement case. HAYS realized that the intention was to make her simply pay the fine, thereby admitting guilt. HAYS once again did not go for the extortion tactics that were being played on her. FORD, the TSA attorney, did the professional move, however, and opted to have the case dismissed. For that action, HAYS was extremely grateful.

## ALL OTHER DEFENDANTS

ALL OTHER DEFENDANTS. Since conspiracy is being pled in this case, all other Defendants are co-conspirators with the malicious prosecution claim. All other agents could have come forth with the truth and started the ball rolling in the right direction, namely to prove the Plaintiff's innocence. Because no one stood up for the truth, they too are participants in the malicious prosecution and the damages it has caused for Plaintiff and her family members.

As a proximate result of the criminal prosecution initiated by defendants, Plaintiff has been damaged in the manner described above. The Defendant's acts alleged above were willful, wanton, malicious, and oppressive, were undertaken with the intent to defraud, and justify the awarding of exemplary and punitive damages.

## SIXTH CLAIM FOR RELIEF

### Violation of Civil Rights

### 42 U.S.C., Section 1983

Plaintiff refers to all information of this complaint, inclusive of the Statement of Facts and Claims for Relief and by this reference incorporates them as though set forth in full herein.

## SECOND AMENDED COMPLAINT ("SAC")

87                                    10/10/12

1        Defendants named with this cause of action include: KAPPELHOFF, BIROTTE,

2   BUCK, NAPOLITANO, MC KENNA, PISTOLE, TETTEH, DOE 1, WALKER, BERG,

3   TOOLES, DAUM, TURNER, LEDESMA, SHEARER, TRAN, JUNG, THANG,

4   MANSARAY, GENTRY, WILLIAMS, SHEA, MILENDEZ, MAGIO, MILLS, STILL,

5   MORALES, SCHRIVER, TREVINO, SOULE, FORD, BUCK, AIKENS, LOS ANGELES

6   FBI, THE BURBANK AIRPORT POLICE, KAKUMU, GREEN, ALBARO, DEPOT, NEAL,

7   FURGIVELE, SKVARNA, THE BURBANK-GLENDALE-PASADENA AIRPORT

8   AUTHORITY, CITY OF BURBANK, BURBANK POLICE DEPARTMENT, ROSS,

9   HAWVER, LA CHASSE, CREMINS, BURBANK CITY ATTORNEY'S OFFICE, WEI,

10  BARLOW, BAKER, HUMISTON, REINKE, APPLEGATE, LOS ANGELES DISTRICT

11  ATTORNEY'S OFFICE, MOULIN. GARRISON, LAPD, LA DUFF, BROWNELL, TINKER,

12  GUTIERREZ

13       From Thursday afternoon, April 16, 2009, through to this present date, Defendants, as

14  state actors, or as Federal actors conspiring with state actors, acting under color of authority,

15  violated Plaintiff's rights against unreasonable search and seizures under the Fourteenth

16  Amendment and violated Plaintiff's substantive due process rights under the Fifth and

17  Fourteenth Amendments, by knowingly and intentionally arresting, detaining, and prosecuting

18  Plaintiff for 18 months, when they knew that they had no probable cause to believe that Plaintiff

19  had committed a crime of any kind.

20       Defendant's acts alleged above were willful, wanton, malicious, and oppressive, were

21  undertaken with the intent to defraud, and justify the awarding of exemplary and punitive

22  damages.

23  ///

24  ///

25  ///

26

27  **SECOND AMENDED COMPLAINT ("SAC")**

28                              88               10/10/12

1

## SEVENTH CLAIM FOR RELIEF

2

### Violation of Civil Rights

3

4

**Bivens Action**

5       Plaintiff refers to all information of this complaint, inclusive of the Statement of Facts

6   and Claims for Relief and by this reference incorporates them as though set forth in full herein.

7       At all times relevant, Defendants TETTEH and DOE 1 acted as federal law enforcement

8   officers, even though they were not legally authorized to do so, and, under the guise of the TSA,

9   seized Plaintiff's property and caused Plaintiff to be detained, arrested and prosecuted, as if

10  Defendants TETTEH and AIKENS were federal law enforcement officers.

11      At all times relevant, Defendants TETTEH and WALKER acted as federal law

12  enforcement officers, even though they were not legally authorized to do so, and, under the

13  guise of the TSA, cooperated and coordinated with DOE 1 and participated as DOE 1 seized

14  Plaintiff's property and caused Plaintiff to be detained, arrested and prosecuted, as if Defendants

15  TETTEH and WALKER were federal law enforcement officers.

16      In performing all of the acts described above, Defendants DOE 1, TETTEH and

17  WALKER under color of federal law, violated Plaintiff's rights against unreasonable search and

18  seizures under the Fourteenth Amendment and violated Plaintiff's substantive due process rights

19  under the Fifth and Fourteenth Amendments, by knowingly and intentionally arresting,

20  detaining, and prosecuting Plaintiff for 18 months, when she knew that they had no probable

21  cause to believe that Plaintiff had committed a crime of any kind as described above.

22  All Defendants, that were employed by the U.S. government, or that were State actors working

23  with the U.S. government defendants, were co-conspirators and  thereby are to also be held

24  accountable according to a Bivens action for violations of Plaintiff's constitutional rights.  These

25

26

27

**SECOND AMENDED COMPLAINT ("SAC")**

28

89                                          10/10/12

1  individuals include: KAPPELHOFF, BIROTTE, BUCK, NAPOLITANO, MC KENNA,

2  PISTOLE, TETTEH, DOE 1, WALKER, BERG, TOOLES, DAUM, TURNER, LEDESMA,

3  SHEARER, TRAN, JUNG, THANG, MANSARAY, GENTRY, WILLIAMS, CAHILL, SHEA,

4  MILENDEZ, MAGIO, MILLS, STILL, MORALES, SCHRIVER, TREVINO, SOULE, FORD,

5  BUCK, AIKENS, LOS ANGELES FBI, THE BURBANK AIRPORT POLICE, KAKUMU,

6  GREEN, ALBARO, DEPOT, NEAL, FURGIVELE, SKVARNA, THE BURBANK-

7  GLENDALE-PASADENA AIRPORT AUTHORITY, CITY OF BURBANK, BURBANK

8  POLICE DEPARTMENT, ROSS, HAWVER, LA CHASSE, CREMINS, BURBANK CITY

9  ATTORNEY'S OFFICE, WEI, BARLOW, BAKER, HUMISTON, REINKE, APPLEGATE,

10  LOS ANGELES DISTRICT ATTORNEY'S OFFICE, MOULIN. GARRISON, LAPD, LA

11  DUFF, BROWNELL, TINKER, GUTIERREZ

12       As a proximate result of the criminal prosecution initiated by defendants, Plaintiff has

13  been damaged in the manner described above.

14       The Defendants' acts alleged above were willful, wanton, malicious, and oppressive,

15  were undertaken with the intent to defraud, and justify the awarding of exemplary and punitive

16  damages.

17

18                    **SEVENTH CLAIM FOR RELIEF**

19                              **Conspiracy**

20                       **42 U.S.C., Section 1985**

21                           **(All Defendants)**

22

23       Plaintiff refers to all information of this complaint, inclusive of the Statement of Facts

24  and Claims for Relief and by this reference incorporates them as though set forth in full herein.

25

26  ―――――――――――――――――――――――――――――――

27              **SECOND AMENDED COMPLAINT ("SAC")**

28                              90                    10/10/12

1    Liability for civil conspiracy generally requires the following elements and are all

2  present in this case. The elements are: (1) formation of the conspiracy,  (2) an agreement  to

3  commit wrongful acts,  (3) operation of the conspiracy (commission of the wrongful acts); and

4  (4) damage resulting from operation of the conspiracy.

5    There is no doubt in the Plaintiff's mind that Defendant's have conspired together to

6  prevent the truth from coming forward.  The named conspirators in this case knew that Plaintiff

7  had not harmed anyone, yet tried to make her appear to be guilty by altering evidence in her

8  criminal prosecution, by obtaining false testimonies, and by fabricating statements that simply

9  were not true.  All of this was done to damage the credibility of the Plaintiff so that she would

10  be found guilty at trial.

11    Tampering with evidence in a criminal prosecution is indeed culpable and worthy of

12  prosecution.

13    If they had not conspired, investigative agencies would have had no problem in doing a

14  proper investigation.  It is the Plaintiff's belief that the Defendants all knew that their agencies

15  had done wrong and the only way they could defend themselves was to not help Plaintiff

16  uncover the truth.  This is indeed an abuse of their duties as law enforcement officers and other

17  civil servant positions.

18    Those individuals that participated willingly with the conspiracy acts include:

19  KAPPELHOFF, BIROTTE, BUCK, NAPOLITANO,  MC KENNA, PISTOLE, TETTEH, DOE

20  1, WALKER, BERG, TOOLES, DAUM, TURNER, LEDESMA, SHEARER, TRAN, JUNG,

21  THANG, MANSARAY, GENTRY, WILLIAMS, CAHILL, SHEA, MILENDEZ, MAGIO,

22  MILLS, STILL, MORALES, SCHRIVER, TREVINO, SOULE, FORD, BUCK, AIKENS, LOS

23  ANGELES FBI, THE BURBANK AIRPORT POLICE, KAKUMU, GREEN, ALBARO,

24  DEPOT, NEAL, FURGIVELE, SKVARNA, THE BURBANK-GLENDALE-PASADENA

25  AIRPORT AUTHORITY, CITY OF BURBANK, BURBANK POLICE DEPARTMENT,

26

27    **SECOND AMENDED COMPLAINT ("SAC")**

28    91                    10/10/12

1  ROSS, HAWVER, LA CHASSE, CREMINS, BURBANK CITY ATTORNEY'S OFFICE,

2  WEI, BARLOW, BAKER, HUMISTON,  REINKE, APPLEGATE, LOS ANGELES DISTRICT

3  ATTORNEY'S OFFICE, MOULIN. GARRISON, LAPD, LA DUFF, BROWNELL, TINKER,

4  GUTIERREZ

5      The above named individuals had an opportunity and had the capability of obtaining

6  details regarding this case that would exonerate the Plaintiff and expose the real criminals; they,

7  however, refused to do anything.  It is for this reason that they have been named as co-

8  conspirators in this case.

9

10              **NINTH CLAIM FOR RELIEF**

11            **Unconstitutional Search and Seizure**

12     **(All TSA Defendants, All Burbank Airport Defendants)**

13          **4th Amendment to the U.S. Constitution**

14              **42 U.S.C., Section 1983**

15                  **Bivens**

16      Plaintiff refers to all information of this complaint, inclusive of the Statement of Facts

17  and Claims for Relief and by this reference incorporates them as though set forth in full herein.

18      Before Plaintiff left her home, she had called the TSA Contact number to make certain

19  she would not have problems taking on board the food for her 93-year old mother.  The TSA

20  agent she spoke with told her that the agents knew how to handle elderly people with special

21  needs  and that she would have no problems.  The agent also told her about their website which

22  reiterated the same information, so Plaintiff felt comfortable with their travel arrangements.

23      TETTEH and DOE 1 violated TSA protocol by not allowing  ALBRECHT's food to go

24  on board the plane.  TETTEH and DOE 1 wrongfully confiscated Plaintiff's property, after

25

26

27              **SECOND AMENDED COMPLAINT ("SAC")**

28                  92                    10/10/12

1 | which time they fabricated a story that ended with Plaintiff being unlawfully detained, seized,

2 | and incarcerated when she had not done anything wrong.

3 |     KAKUMU, GREEN, ALBARO, and DEPOT all should have viewed the video before

4 | detaining Plaintiff. If they had, they would have/should have seen that the Citizen's Arrest was

5 | a falsified report and that Plaintiff had done nothing worthy of an arrest. Even though Plaintiff

6 | constantly told GREEN and ALBARO that she had not hit anyone, they still decided to proceed

7 | with the unlawful arrest.

8 |     All Defendants in this case either knew what truly had happened and did not speak up

9 | or, had the capability of finding out what had really happened and via negligence of their own

10 | free will did nothing to investigate and expose the truth.

11 |     The following individuals were directly or indirectly involved in the unconstitutional

12 | search and seizure of Plaintiff:  NAPOLITANO, PISTOLE, TETTEH, DOE 1, WALKER,

13 | BERG, TOOLES, DAUM, TURNER, LEDESMA, SHEARER, TRAN, JUNG, THANG,

14 | MANSARAY, GENTRY, WILLIAMS, SHEA, MILENDEZ, MAGIO, MILLS, STILL,

15 | MORALES, SCHRIVER, TREVINO, SOULE, FORD, AIKENS, THE BURBANK AIRPORT

16 | POLICE, KAKUMU, GREEN, ALBARO, DEPOT, NEAL, FURGIVELE, SKVARNA, THE

17 | BURBANK-GLENDALE-PASADENA AIRPORT AUTHORITY

18 |

19 | **TENTH CLAIM FOR RELIEF**

20 | **Excessive Use of Force**

21 | **4th and 14th Amendments to the U.S. Constitution**

22 | **42 U.S.C., Section 1983**

23 | **Bivens**

24 | Plaintiff refers to all information of this complaint, inclusive of the Statement of Facts

25 | and Claims for Relief and by this reference incorporates them as though set forth in full herein.

26 |

27 | **SECOND AMENDED COMPLAINT ("SAC")**

28 | 93                                    10/10/12

1    The detention, arrest, unnecessary and extended restraint, and incarceration of Plaintiff

2  by KAKUMU, GREEN, and ALBARO constituted an excessive use of force in violation of the

3  Fourth and Fourteenth Amendments to the United States Constitution.

4    The extortion, malicious prosecution, and lies that occurred during Plaintiff's

5  prosecution caused Plaintiff to suffer extreme emotional anxiety.  To this day Plaintiff cannot

6  understand how anyone in a civil servant position can behave so fraudulently and to do so in

7  such a vicious manner.

8    The following individuals were directly or indirectly (as co-conspirators) participants in

9  the excessive use of force in this case: NAPOLITANO, PISTOLE, TETTEH, DOE 1,

10  WALKER, BERG, TOOLES, DAUM, TURNER, LEDESMA, SHEARER, TRAN, JUNG,

11  THANG, MANSARAY, GENTRY, WILLIAMS, SHEA, MILENDEZ, MAGIO, MILLS,

12  STILL, MORALES, SCHRIVER, TREVINO, SOULE, AIKENS, THE BURBANK AIRPORT

13  POLICE, KAKUMU, GREEN, ALBARO, DEPOT, NEAL, FURGIVELE, SKVARNA, THE

14  BURBANK-GLENDALE-PASADENA AIRPORT AUTHORITY, CITY OF BURBANK,

15  BURBANK POLICE DEPARTMENT, ROSS, BURBANK CITY ATTORNEY'S OFFICE,

16  WEI, BARLOW, BAKER, AMERICAN AIRLINES, AIRPORT TERMINAL SERVICES,

17  MASSINGALE.

18

19

20    **ELEVENTH CLAIM FOR RELIEF**

21  **Deprivation of Life, Liberty, and Property Without Due Process of Law**

22  **5th Amendment to the U.S. Constitution**

23  **1983**

24  **Bivens**

25

26  _____

27    **SECOND AMENDED COMPLAINT ("SAC")**

28                     10/10/12

1        Plaintiff refers to all information of this complaint, inclusive of the Statement of Facts

2 and Claims for Relief and by this reference incorporates them as though set forth in full herein.

3        DOE 1, the heavy-set supervisor, told Plaintiff that she was going to confiscate the

4 cooler with food and beverage.  This act is called stealing and is not even allowed by TSA.  It is

5 also unlawful and is a violation of the 5th Amendment to the U.S. Constitution.

6        DOE 1 then wrongfully accused Plaintiff of battery, which Plaintiff never did and which

7 resulted in her being arrested and put in jail for over 6 hours.

8        Individuals that participated, either directly or indirectly,  in this violation of Plaintiff's

9 constitutional right include: NAPOLITANO, PISTOLE, SETOUDEH, TETTEH, DOE 1,

10 WALKER, BERG, TOOLES, DAUM, TURNER, LEDESMA, SHEARER, TRAN, JUNG,

11 THANG, MANSARAY, GENTRY, WILLIAMS, SHEA, MILENDEZ, MAGIO, MILLS,

12 STILL, MORALES, SCHRIVER, TREVINO, SOULE, FORD, AIKENS, LOS ANGELES FBI,

13 THE BURBANK AIRPORT POLICE, KAKUMU, GREEN, ALBARO, DEPOT, NEAL,

14 FURGIVELE, SKVARNA, THE BURBANK-GLENDALE-PASADENA AIRPORT

15 AUTHORITY, CITY OF BURBANK, BURBANK POLICE DEPARTMENT, ROSS,

16 HAWVER, LA CHASSE, CREMINS, BURBANK CITY ATTORNEY'S OFFICE, WEI,

17 BARLOW, BAKER, HUMISTON,  REINKE, APPLEGATE, AMERICAN AIRLINES,

18 AIRPORT TERMINAL SERVICES,  MASSINGALE, LOS ANGELES DISTRICT

19 ATTORNEY'S OFFICE, MOULIN. GARRISON

20

21

22                 **TWELVTH CLAIM FOR RELIEF**

23                    **Deprivation of Rights**

24             **6th Amendment to the U.S. Constitution**

25               **California Penal Code Section 841**

26

27             **SECOND AMENDED COMPLAINT ("SAC")**

28                    95               10/10/12

1

2

**1983**

**Bivens**

3

4      Plaintiff refers to all information of this complaint, inclusive of the Statement of Facts

5   and Claims for Relief and by this reference incorporates them as though set forth in full herein.

6      **Plaintiff was entitled to a speedy trial during her criminal prosecution.**

7         . It took almost a year before her case went to trial.  The DHS knew the truth from the

8   very beginning regarding what really transpired at the airport and yet refused to tell the truth.

9   Acting as an instigator, the DHS managed to bring in many other individuals to help keep the

10   truth from coming forth, thus prolonging the criminal prosecution and the delay of the trial.

11   These individuals included NAPOLITANO, PISTOLE, TETTEH, DOE 1, WALKER, BERG,

12   TOOLES, DAUM, TURNER, LEDESMA, SHEARER, TRAN, JUNG, THANG,

13   MANSARAY, GENTRY, WILLIAMS, SHEA, MILENDEZ, MAGIO, MILLS, STILL,

14   MORALES, SCHRIVER, TREVINO, SOULE, FORD, TONYA AIKENS, KAKUMU,

15   GREEN, ALBARO, DEPOT, SKVARNA, THE BURBANK-GLENDALE-PASADENA

16   AIRPORT AUTHORITY, BURBANK POLICE DEPARTMENT, ROSS, BURBANK CITY

17   ATTORNEY'S OFFICE, WEI, BARLOW, BAKER, ANJA REINKE, JUDGE APPLEGATE,

18   AMERICAN AIRLINES, AIRPORT TERMINAL SERVICES, MASSINGALE, MEDINA,

19   PREVOST.

20

21      **Plaintiff had the right to be informed with the nature and cause of the accusation**

22                                    **when arrested**

23      It was a Citizen's Arrest that caused Plaintiff to be arrested by the Burbank Airport

24   Police.  With a Citizen's Arrest Plaintiff had the right to be confronted by her accuser, which

25

26

27                        **SECOND AMENDED COMPLAINT ("SAC")**

28                                          96                              10/10/12

1   never occurred. Instead, GREEN and ALBARO cuffed Plaintiff and escorted her to the police

2   car without even telling her why they were doing so.

3     No one that witnessed the event spoke to the Plaintiff. If the officers had gathered

4   together witnesses, the Plaintiff, and the accuser they may have been able to figure out on the

5   spot what really had happened. Instead, the officers involved in this case, KAKUMU, GREEN,

6   ALBARO, and DEPOT, deliberately destroyed Plaintiff's opportunity to prove her innocence by

7   cuffing her and taking her out to the police car. Now there was no way she could gather

8   witnesses for her defense. The officers did not interview a single passenger or non-bias witness;

9   they only interviewed the TSA agents.

10

11   **Plaintiff should be allowed the assistance of counsel for her defense**

12     Plaintiff has come to realize that legal counsel generally is not interested in the well-

13   being of the client, but rather how much money they can make off of someone's misfortune.

14   Our legal system no longer makes it possible for individuals with experience in the law to offer

15   legal advice, as that would take away business from the attorneys. Under no circumstances

16   should an American citizen's right to legal knowledge be restricted so they could not defend

17   themselves. Likewise, the ability to have the assistance of counsel for ones defense should not

18   be dependent on their ability to pay or not. That would indeed be discrimination. These,

19   unfortunately, are conditions that do exist today and need to be corrected, as they are a direct

20   violation of our rights granted in the 6th Amendment to the U.S. Constitution.

21     Plaintiff has found more evidence in investigating her case herself than was ever

22   discovered by her two former attorneys combined. In fact, Plaintiff believes much of the

23   corruption that has occurred in her case could have been prevented if issues had been

24   expediently addressed. One might ask why did it take 2 months for the airport surveillance

25

26

27   **SECOND AMENDED COMPLAINT ("SAC")**

28          10/10/12

1   video to be available when it could have been copied in less than a minute?  Why was Emily

2   Daum's investigative report written 3 months after the incident?

3       By not allowing immediate discovery requests and thereby extending the time until trial,

4   individuals were able to tamper with evidence and manipulate matters for their own personal

5   means and were obstructing justice in so doing.

6

7

8   ### THIRTEENTH CLAIM FOR RELIEF

9   **Defamation of Character**

10   **United States Defamation Law**

11

12       Plaintiff refers to all information of this complaint, inclusive of the Statement of Facts

13   and Claims for Relief and by this reference incorporates them as though set forth in full herein.

14       Defamation involved in this case included libel, slander, common law misappropriation

15   of likeness or invasion of privacy, and false light.

16       The following elements were present for each defamation offense.:

17       1.  False statement or failure to point out false statement when it is known to be

18           a lie.

19       2.  Unpriveleged.

20       3.  Published either in writing or orally

21       4.  Of or concerning the Plaintiff

22       5.  Plaintiff exposed to disgrace because of slanderous statement

23       6.  Malice was intentional

24       7.  The use of slanderous statements were intended to degrade and demoralize

25           Plaintiff, which would severely weaken her case.

26

27   **SECOND AMENDED COMPLAINT ("SAC")**

28   98                                                     10/10/12

8.  Plaintiff has asked for defamatory remarks to be rescinded and Defendant has either not responded or refuses to do so.

The false statement that directly damaged Plaintiff was that she hit AIKENS with a closed fist. This statement was made in DAUM's report. Plaintiff never hit anyone. Yet, because of the altered video and the way her criminal case was prosecuted, Plaintiff was described as being a very mean-spirited sort of individual. Plaintiff's family and friends have been led to believe that her behavior was as depicted in the video, which is totally erroneous.

Plaintiff will eventually prove that there has been tampering with evidence used in her criminal prosecution, including the fabrication of an e-mail and the alteration of several videos. Even Plaintiff's family members have said that Plaintiff acted inappropriately and "got what she deserved" even though Plaintiff tried to explain to them that that part of the video was fabricated and does not depict the actual chain of events in the airport. Unfortunately, Plaintiff's family believes the video and not what Plaintiff is alleging happened. This has severely damaged Plaintiff's relationship with her loved ones and has created an environment of tolerance rather than love. Plaintiff's heart is indeed broken and prays that one day the truth will come forth so that she may have the love and respect she once had.

Since conspiracy has been pled, many of the Defendants are being held liable for defamation of character because they indirectly supported those initiating the conspiracies and/or lies by not telling the truth which would have cleared Plaintiff's name

Violations for each named individual are given below:


**DEFENDANT UNITED STATES OF AMERICA, ITS AGENCIES AND AGENTS**

KAPPELHOFF. KAPPELHOFF has the capability of properly investigating this case and clearing Plaintiff's name that she never hit anyone. KAPPELHOFF's refusal to investigate makes him a co-conspirator in this case and he is a direct participant in the defamation of

**SECOND AMENDED COMPLAINT ("SAC")**

99

10/10/12

1  Plaintiff.  Currently BUCK, the U.S. Attorney, is defending AIKENS, a felon, who signed the

2  Citizens Arrest form alleging that Plaintiff hit her, when AIKENS was not even involved in the

3  airport incident at all. KAPPELHOFF, if he performed a proper investigation and talked with

4  the Burbank Airport Chief of Police, he would soon find out that it was the heavy-set supervisor,

5  DOE 1, that had Plaintiff arrested. Although AIKENS is the one who signed the Citizen's Arrest

6  form that was part of the evidence stored at the Burbank Police Department, she was not

7  involved in the airport incident. The acknowledgement of this fact would then open the case to

8  the evidence tampering that has been done. KAPPEKHOFF refuses to help Plaintiff clear her

9  name.

10      BIROTTE. BIROTTE has the capability of properly investigating this case and clearing

11  Plaintiff's name that she never hit anyone. BIROTTE refuses to help Plaintiff clear her name.

12  BIROTTE will be held accountable for the acts of his employees, as abuse of process has been

13  pled in this case.

14      BUCK. BUCK has the capability of properly investigating this case and clearing

15  Plaintiff's name that she never hit anyone. BUCK refuses to help Plaintiff clear her name. .

16      NAPOLITANO. NAPOLITANO has the capability of properly investigating this case

17  and clearing Plaintiff's name that she never hit anyone. NAPOLITANO refuses to help Plaintiff

18  clear her name. . NAPOLITANO will be held accountable for the acts of her employees, as

19  abuse of process has been pled in this case.

20      MC KENNA.  MC KENNA had the opportunity to allow Plaintiff to prove that AIKENS

21  was not hit by the Plaintiff when Plaintiff asked for the photo identifications. MC KENNA

22  refused to allow the photo identifications to be produced and therefore aided the actions of a

23  felon while at the same time prevented Plaintiff from proving her innocence. Plaintiff's

24  reputation was therefore not allowed to be cleared and the defamation was allowed to continue.

25

26

27          **SECOND AMENDED COMPLAINT ("SAC")**

28                   100                                    10/10/12