1  PISTOLE . PISTOLE has the capability of properly investigating this case and clearing

2  Plaintiff's name that she never hit anyone. PISTOLE refuses to help Plaintiff clear her name. .

3  PISTOLE is in charge of the TSA and has access to all records.  He is aware of the corruption

4  that has occurred and is allowing the U.S. attorney to defend the heinous acts of his people.

5  PISTOLE will be held responsible for the acts of his employees, as abuse of process has been

6  pled in this case.

7  TETTEH.  TETTEH defamed Plaintiff when she acted as though the tug-of-war with the

8  cooler was between Plaintiff and the heavy-set supervisor, when in actuality it was with her.

9  TETTEH made the following statements to BAKER, the prosecuting attorney, when she was

10  interviewed:

11  1.  "Because this is the most aggressive passenger"

12  2.  "She looked really sweet and then became hard core"

13  3.  HAYS grabbed and pulled TETTEH's badge towards her to read it.

14  4.  That's when HAYS exploded.

15  5.  HAYS tried to pry AIKEN's fingers off the cooler.

16  6.  When HAYS could not pry the fingers open, she went for the strike.

17  7.  HAYS went hysterical.  HAYS was hysterical all the time of the incident.

18  8.  HAYS started getting irate when she was asked to take off her shoes.

19  9.  The lady was screaming so loud Tonya (AIKENS) just came over.

20  10. After AIKENS was hit TETTEH just told AIKENS to let go of the cooler

21  All of the above statements were very demeaning and inaccurate.

22  AIKENS.  AIKENS  defamed Plaintiff when she acted as though the tug-of-war with the

23  cooler was between Plaintiff and herself, when in actuality it was with TETTEH.  AIKENS was

24  not even involved in the airport incident yet she made the following derogatory remarks about

25  the Plaintiff to BAKER, the prosecuting attorney, when she was interviewed:

26

27  **SECOND AMENDED COMPLAINT ("SAC")**

28  101                                    10/10/12

1.  HAYS is crazy.

2.  HAYS was holding my right hand which held on to the cooler's handle prying it
    open.

3.  When HAYS could not pry my hand open, HAYS slammed on my hand.

4.  HAYS was tugging onto the cooler, then she hit me and continued tugging onto the
    cooler.

5.  HAYS said, "This is my soda. This is *my* soda, I *will* drink it."

6.  HAYS would do everything I said not to do. I said "Do not reach in". HAYS would
    reach in. I said "Do not drink soda."  HAYS opened the soda and started to drink it.

7.  Around that time HAYS started getting physical.

8.  HAYS grabbed TESSA's ID card and pulled it towards her.

9.  When HAYS hit, it threw my arm back.

10. HAYS was yelling as she hit me.

11. My hand was throbbing.

12. And I just thought she'd hit me again.

13. BAKER's notes stated "inconsistency, but explained:" Police report says HAYS hit
    me on the left hand. But this is because I used my right hand to show the female
    police officer how I was hit, as the video shows. So what the officer saw was my left
    hand being hit by my right hand. But in fact, because I was holding the cooler with
    my right hand, this was the hand that HAYS struck.

14. AIKENS remembers HAYS because HAYS was louder, HAYS was taller, HAYS
    made AIKENS feel annoyed by doing things to spite AIKENS. HAYS acted
    crazy…"uncalled for" crazy. HAYS stood out from the rest of the passengers.

15. With the lady striking me, next time I would not have left the counter and would have
    called for help sooner.

---

**SECOND AMENDED COMPLAINT ("SAC")**

10/10/12

1   DOE 1. DOE 1 started the defamation of Plaintiff when she filed a falsified Citizen's

2   Arrest form stating that Plaintiff had hit her when Plaintiff in reality had not done so. To date

3   Plaintiff has still not been able to locate DOE 1, nor has the U.S. Attorney Mr. Tom Buck.

4   WALKER. WALKER was a very active participant in the airport incident and knows

5   exactly what happened. WALKER, even though he knows the truth, has refused to tell the truth.

6   He has chosen to defame Plaintiff with many derogatory remarks that were made when he was

7   interviewed by Olga BAKER, the prosecuting attorney. Such remarks were documented and are

8   listed below::

9   1.  Steve (WALKER) remembers the incident well. Steve also remembers because there

10       are just not too many like this incident..

11  2.  "It was extreme." "It sticks with you."

12  3.  "In the past I have seen belligerent passengers, passengers with attitude – but not like

13      this!"

14  4.  During all the time of the "lady's rant" her mother was calm.

15  5.  "Her tone was nasty."

16  6.  I think the lady would have aimed at my co-worker not the cooler. Because by hitting

17      the cooler, the lady would have injured herself.

18  7.  We are trying to protect them and they are turning against us."

19  BERG. BERG also had a good view of everything that happened. She knows that

20  Plaintiff did not hit anyone, yet she participates in the conspiracy. When interviewed by

21  BAKER she made the following defamatory remarks:

22  1.  This was the most violent I have seen a passenger.

23  2.  The lady was loud, erratic, scary. She just threw a fit. Scary fit.

24  DAUM. Emily Daum was the TSA Inspector for the Burbank Airport when Plaintiff was

25  arrested. As an employee of the Federal government, she owed the citizens of America, who pay

26

27  **SECOND AMENDED COMPLAINT ("SAC")**

28  103                                      10/10/12

her salary, a duty to accurately report the airport incident and for criminals to be so noted so they could be prosecuted for their crimes. Instead of telling the truth, DAUM used her position to demonize the Plaintiff in an attempt to have a jury find her guilty at her criminal trial. In her report, she said the following lies about Plaintiff:

1. During the screening process Hays created a disruption so severe that TSA officers had to halt screening operations at the checkpoint.

2. Hays intimidated TSA Officers by invading their personal space and yelling directly in their faces,.

3. Hays deliberately struck a TSA Lead Transportation Security Officer (LTSO) in the arm with a closed fist.

4. Hays deliberately struck a TSA Officer with a closed fist and ignored instructions from TSA Officers. The violation appears to be deliberate.

5. TSO Tetteh informed Hays that the liquids could not continue into the sterile ar w

6. Hays ignored TSO Tetteh's instructions not to touch her items and grabbed the liquids off the table and put them in the cooler.

7. LTSO Aikens instructed Hays to not touch the liquids.

8. Hays .responded by grabbing a can of soda off the table and holding it up to her shoulder to prevent LTSO Aikens from reaching it.

9. Hays opened and drank from the soda in open defiance of LTSO Aiken's instructions.

10. Hays seized containers of liquids out of TSO Tetteh's hands and insisted that she was going to take the prohibited items with her.

11. Hays approached LTSO Aikens and grabbed the handle of the cooler and began pulling on it trying to wrestle it from LTSO Aikens' possession.

12. TSO Stephen Walker approached Hays because he feared for LTSO Aikens' safety.

---

**SECOND AMENDED COMPLAINT ("SAC")**

104                                                          10/10/12

13. Hays struck LTSO Aikens in the forearm by raising her right fist over her head and bringing it down.

14. Additionally Hays created a disruption so severe that all passenger screening operations at the checkpoint were stopped at this time.

15. She proceeded to the gate where she was denied boarding by American Airlines.

16. Officer Green placed Hays under arrest for 242 PC, Battery on a Person, and transported her to the Burbank City Jail.

17. The investigation has concluded that Hays violated 49 CFR 1540.109 which states that no person may interfere with, assault, threaten, or intimidate screening personnel in the performance of their screening duties under this subchapter.

18. Hays interfered with the screening process for approximately six minutes by taking prohibited items from TSA Officers in defiance of instructions and creating a situation so disruptive that all passenger screening was halted.

19. Hays intimidated TSA Officers by invading their personal space and yelling directly in their faces.

20. Hays deliberately assaulted a TSA Officer by striking her with a closed fist.

21. A civil penalty of $7500 is recommended.

22. I was notified by the TSA BUR Coordination Center that at approximately 12:54 hours a passenger identified as Nadine Kay Hays assaulted LTSO Tonya Aikens at Checkpoint B at the Bob Hope Airport in Burbank, CA.

23. Hays was charged with 242 PC, Battery on a person.

24. During this time it appears she is behaving in distracting or attention gaining manner, as two TSO's and several passengers at the checkpoint pause and look aat her location.

25. Hays picked up an item from the table and forcefully placed it in the cooler.

**SECOND AMENDED COMPLAINT ("SAC")**

10/10/12

26. Hays gestered emphatically and took an item (identified from Officers statements as a can of soda) off the table and held it to her shoulder in an apparent attempt to keep it from the TSA Officers.

27. Hays approached LTSO Aikens, blocking her path, and reached around her grabbing hold of the cooler handle and attempted to pull the cooler away from LTSO Aikens.

28. Hays pulled on the cooler for approximately 30 seconds while LTSO Aikens held on.

29. Hays created a situation so disruptive that at approximately 12:59:19 hours all screening operations at Checkpoint B were halted.

30. At approximately 12:59:33 hours, Hays raised her right hand in a fist over her head and struck LTSO Aiken's right forearm.

31. Hays then grabbed LTSO Aiken's right wrist and attempted to pull her hand off the cooler.

32. At this time Hays was leaning down (Hays is taller than LTSO Aikens) and yelling with her face inches from LTSO Aikens.

33. Hays struggled for a while longer, attempting to wrest the cooler away from LTSO Aikens.

34. LTSO Aikens released the handle of the cooler.

35. Hays threw the items in the cooler into a trashcan and went to her boarding gate where she was denied boarding by American Airlines.

36. In her LOR, Hays acknowledged that she "struggled" in a "tug-of-war" over the cooler with a TSA Officer.

37. However, she denied striking LTSO Aikens and asserted that she was tring to get both hands on the cooler handle to grab it.

---

**SECOND AMENDED COMPLAINT ("SAC")**

10/10/12

38. A review of the CCTV footage does not support Hays' claim that she was trying to grab the handle as she did not reach her hand toward the cooler, but instead raised her hand above her head and brought it down in a striking motion.

39. Also, Hays's hand was closed in a fist, which is not conducive to grabbing.

40. At no time in her LOR, or any other communication, does Hays address the issue of her interference with the screening process or the impact on the other passengers.

41. Hays was so disruptive that David Vogl, a retired pilot for United Airlines who witnessed the incident, contacted this office to express his support for the TSA Officers.

42. Mr. Vogl also provided video of Hays he captured using a cell phone camera taken immediately after the incident.

43. Hays expressed several misconceptions about the screening process and the incident.

44. She insists that TSO TEsia Tetteh is "Supervisor Atkins" and refers to LTSO Tonya Aikens as "Screener Tetteh" demonstrating that she cannot distinguish between the two officers.

45. Hays also accused TSA Officers of falsifying a police report that was written by APD Officer Green.

46. On April 19, 2009,  three days after the incident, Hays sent an e-mail to the TSA Contact Center seeking guidance for traveling with milk and food items for her mother.  Hays states that she "does not want to have complications at the airport" and does not mention the incident which occurred nor that she was carrying liquids not related to her mother's health  (i.e. soda).

TRAN.  According to DAUM's report, TSO Philip TRAN was the X-Ray operator when Plaintiff's cooler was being screened.  TRAN therefore had a bird's eye view of the entire incident.  He knows what really happened and yet has refused to speak the truth so Plaintiff's

**SECOND AMENDED COMPLAINT ("SAC")**

1  name might be cleared from all of the defamation of others. He is therefore a co-conspirator in

2  the defamation of Plaintiff that was done by others.

3      MILLS. In his communication to BURNS, MILLS made the following statement in an e-

4  mail dated July 20, 2009 at 9:20 am.

5      1. "Understood. I am checking with our AFSDI Arwen "Emily" Daum right now for

6          the documents and video that we have. She is working on that or was doing so

7          recently as there was action by Regulatory in regards to the incident. I will forward

8          more info and get all the locals involved if anyone needs to discuss."

9  MILLS was aware of the incident. He knew the Plaintiff was denying the allegations, as he

10  made the following statement on July 20, 2009 at 12 noon:

11      2. "Thanks Bob. We are aware of it and as you may suspect, the passenger is painting

12          herself in a more positive light than our video footage showed. Thanks for the heads

13          up and we will try and locate our reports, notes, etc. and forward them to you so you

14          can respond as necessary."

15  MILLS could have looked deeper into the case to see if fraudulent activity had occurred on the

16  TSA end. He failed to do so and thereby allowed Plaintiff to be maliciously prosecuted,

17  threatened, and defamed.

18

19  **DEFENDANT BURBANK-GLENDALE-PASADENA AIRPORT AUTHORITY,**

20  **ITS AGENCIES AND AGENTS**

21      KAKUMU. . KAKUMU had the capability of properly investigating this case and

22  clearing Plaintiff's name that she never hit anyone. KAKUMU refused to help Plaintiff clear her

23  name.   KAKUMU made the following derogatory remarks about the Plaintiff to BAKER, the

24  prosecuting attorney, when she was interviewed:

25      1. I remember the incident, especially because it was battery on a TSA employee.

26

27                      **SECOND AMENDED COMPLAINT ("SAC")**

28                            108                 10/10/12

2. Thing like this does not happen a lot here. TSA, they get yelled at, but not beaten up.

3. The suspect (HAYS) was at the checkpoint exit gate.

4. I led the suspect to the gate area to separate her from TSA agents.

5. The suspect (HAYS) was agitated, upset.

6. The suspect (HAYS) was a middle aged upset lady.

7. KAKUMU was the first one there. He does not remember the lady saying anything specific.

8. The lady was mad, really upset at TSA.

9. KAKUMU seated her on the seat and she sat there

10. KAKUMU stood next to her.

11. When I deal with upset people, I have them sit down and have them stay seated. And here, she was also a suspect, so I also did this to exercise control of the situation."

12. KAKUMU had nothing to do with the citizen's arrest. "My part was the investigative detention. That is why I did not Mirandize her."

13. KAKUMU did not get that involved in this case, because he had another police call pending.

ALBARO.  ALBARO had the capability of properly investigating this case and clearing Plaintiff's name that she never hit anyone.  ALBARO refused to help Plaintiff clear her name. ALBARO made the following derogatory remarks about the Plaintiff to BAKER, the prosecuting attorney, when she was interviewed:

1. The subject (HAYS) was billigerent in the car one moment and the next moment she was calm.

2. Officer KAKUMU had the subject (HAYS) by Gate 3, talking to her.  He had separated the victim and the subject and calmed the subject down.

**SECOND AMENDED COMPLAINT ("SAC")**

10/10/12

3. ALBARO said that HAYS said numerous times: "I'd never touch anybody. I am a Mormon. I would kill for my religion." (HAYS never said any such thing and found this very offensive.)

4. In this case Officer GREEN advised the victim about the citizen's arrest and asked her if she wanted to press charges. The victim said, "Yes, I want to press charges. She hit me." (HAYS never hit anyone.)

## DEFENDANT CITY OF BURBANK

HUMISTON. In a teleconference held on December 20, 2011 HUMISTON made the following defamatory remarks to the judge:

*HUMISTON: For me, it would be easier to just have her make a motion if she's going to make a motion and I oppose it because my limited experience with her is that there is no resolving short of a motion…What I don't' want is the responsibility to do the process for her…The problem we have with e-mail is she has said some inappropriate things referring to the religion of our city attorney and made some pretty..uh..what we consider inappropriate, so she has been blocked from the city's e-mail. So I would prefer a letter, faxed. JUDGE WALSH: So why can't she say offensive things in a letter that's fact. I mean how is this…what you're saying is she writes things that are offensive so we've blocked her e-mail so she has to write a letter. How is that going to fix it? HUMISTON: Your Honor, words get blocked and if words get blocked then I don't know if I am getting it or not. We don't know we're not getting things because words get blocked by our spam system. It's blocking her things. So rather than to lead her to believe we were getting her her things, because she would say she was sending things and I wouldn't get it. I had her blocked completely and would request she would send something faxed, in writing. That way I know we've all got proof that I've received it; that would be my*

1   *preference. If the Court insists that we unblock her, I will do that, but I can't guarantee that all*

2   *of her communications will get through.*

3         Plaintiff never said anything defamatory about the city attorney's religion.  In fact,

4   Plaintiff is of the same faith as BARLOW and actually sent some very complementary comments

5   to him.  HUMISTON's lack of professionalism in handling this case has been despicable and

6   Plaintiff is extremely offended by anyone who tries to defame her name or reputation.

7

8                   **MISCELLACEOUS DEFENDANTS**

9         The balance of the defendants that could have easily cleared Plaintiff's name but chose

10   not to are as follows: TOOLES, TURNER, LEDESMA, SHEARER, JUNG, THANG,

11   MANSARAY, GENTRY, WILLIAMS, CAHILL, SHEA, MILENDEZ, MAGIO, STILL,

12   MORALES, SCHRIVER, TREVINO, SOULE, FORD, BUCK,  LOS ANGELES FBI, THE

13   BURBANK AIRPORT POLICE, GREEN , DEPOT, NEAL, FURGIVELE, SKVARNA, THE

14   BURBANK-GLENDALE-PASADENA AIRPORT AUTHORITY, CITY OF BURBANK,

15   BURBANK POLICE DEPARTMENT, ROSS, HAWVER, LA CHASSE, CREMINS,

16   BURBANK CITY ATTORNEY'S OFFICE, WEI, BARLOW, BAKER, REINKE,

17   APPLEGATE, AMERICAN AIRLINES, AIRPORT TERMINAL SERVICES,  MASSINGALE,

18   MEDINA, PREVOST, LOS ANGELES DISTRICT ATTORNEY'S OFFICE, MOULIN.

19   GARRISON.

20

21                   **FOURTEENTH CLAIM FOR RELIEF**

22                   **Withholding of Exculpatory Evidence**

23                   **Brady v. Maryland**

24         Plaintiff refers to all information of this complaint, inclusive of the Statement of Facts

25   and Claims for Relief and by this reference incorporates them as though set forth in full herein.

26

27                   **SECOND AMENDED COMPLAINT ("SAC")**

28                   111            10/10/12

*Exculpatory evidence* is the *evidence favorable to the *defendant* in a *criminal trial*, which clears or tends to clear the defendant of *guilt*.[1] It is the opposite of *inculpatory evidence*, which tends to prove guilt.

In many countries such as the *United States*, *police* or *prosecutor* are not required to disclose to the defendant any exculpatory evidence they possess before the *defendant* makes a plea (guilty or not guilty). [2] Per the *Brady v. Maryland* decision, prosecutors have a duty to disclose exculpatory evidence even if not requested. Though it is true that the prosecution is not required to search for exculpatory evidence and must only disclose the evidence it has in its possession, custody or control, the prosecution's duty to disclose includes all information known to any member of its team, e.g., police, investigators, crime lab, etc.

In Brady v. Maryland, the *U.S. Supreme Court* held that such a requirement follows from constitutional *due process* and is consistent with the prosecutor's duty to seek justice.[3]

The above quote was taken from Wikipedia, which very concisely points out that although the prosecutor is not required to search for exculpatory evidence, it has a duty to disclose all information known to any member of its team.  When Plaintiff denied the alleged criminal charge of battery, WEI had a duty to immediately gather information from the Burbank Airport Police, including the surveillance video and photo identifications of the individuals involved.  If he had done so, he would have immediately seen that the Plaintiff was correct when she claimed that she was being prosecuted on a falsified Police Report.

Plaintiff has shown due diligence in an attempt to obtain information directly related to her case in order to clear her reputation of not only the falsely alleged crime of battery, but also many of the defamatory issues that have turned away many of her loved ones and friends.

Much of the crucial information related to Plaintiff's case did not emerge until days before her scheduled trial or even after her criminal prosecution was dismissed.  Plaintiff is still seeking closure so she can move on with her life and those individuals that have the means of providing answers have refused to cooperate, as the truth will expose the criminal acts of many of the individuals named in this case.

---

**SECOND AMENDED COMPLAINT ("SAC")**

10/10/12

1        It is the Plaintiff's belief, and she hereby alleges, that the following individuals are guilty

2   of either directly or indirectly withholding exculpatory evidence for Plaintiff's criminal

3   prosecution: NAPOLITANO, PISTOLE, TETTEH,  DOE 1, WALKER, BERG, TOOLES,

4   DAUM, TURNER, LEDESMA, SHEARER, TRAN, JUNG, THANG, MANSARAY,

5   GENTRY, WILLIAMS, SHEA, MILENDEZ, MAGIO, MILLS, STILL, MORALES,

6   SCHRIVER, TREVINO, SOULE, FORD, BUCK, AIKENS, LOS ANGELES FBI, THE

7   BURBANK AIRPORT POLICE, KAKUMU, GREEN, ALBARO, DEPOT, NEAL,

8   FURGIVELE, SKVARNA, THE BURBANK-GLENDALE-PASADENA AIRPORT

9   AUTHORITY, CITY OF BURBANK, BURBANK POLICE DEPARTMENT, ROSS,

10   HAWVER, LA CHASSE, CREMINS, BURBANK CITY ATTORNEY'S OFFICE, WEI,

11   BARLOW, BAKER, HUMISTON, REINKE, AMERICAN AIRLINES, AIRPORT TERMINAL

12   SERVICES,  MASSINGALE

13

14   ### FIFTEENTH CLAIM FOR RELIEF

15   **Aiding and Abetting Malicious Prosecutions**

16   **Aiding and Abetting A Criminal**

17   **42 U.S.C. Sections 1983, 1985, 1988**

18        Plaintiff refers to all information of this complaint, inclusive of the Statement of Facts

19   and Claims for Relief and by this reference incorporates them as though set forth in full herein.

20        Plaintiff repeatedly told the prosecution that she was being prosecuted on a falsified

21   police report.  The prosecution refused to listen and moved forward with a very malicious

22   prosecution, including extortion. It is the Plaintiff's belief that the prosecution was aware of the

23   corruptive and criminal acts that had occurred and rather than to prosecute the guilty, the

24   prosecution decided to move forward with the prosecution of an innocent individual.

25

26

27   **SECOND AMENDED COMPLAINT ("SAC")**

28                           10/10/12

1    The following defendants and their agencies are named in this claim:  NAPOLITANO,

2  MC KENNA, PISTOLE, TETTEH, DOE 1, WALKER, BERG, TOOLES, DAUM, TURNER,

3  LEDESMA, SHEARER, TRAN, JUNG, THANG, MANSARAY, GENTRY, WILLIAMS,

4  CAHILL, SHEA, MILENDEZ, MAGIO, MILLS, STILL, MORALES, SCHRIVER, TREVINO,

5  SOULE, FORD, AIKENS, LOS ANGELES FBI, THE BURBANK AIRPORT POLICE,

6  KAKUMU, GREEN, ALBARO, DEPOT, NEAL, FURGIVELE, SKVARNA, THE

7  BURBANK-GLENDALE-PASADENA AIRPORT AUTHORITY, CITY OF BURBANK,

8  BURBANK POLICE DEPARTMENT, ROSS, BURBANK CITY ATTORNEY'S OFFICE,

9  WEI, BARLOW, BAKER, APPLEGATE, AMERICAN AIRLINES, AIRPORT TERMINAL

10  SERVICES,  MASSINGALE, LAPD, LA DUFF, BROWNELL, TINKER, GUTIERREZ

11    It is indeed a crime to prosecute on a knowingly falsified police report.  This is indeed

12  what WEI, the prosecutor in Plaintiff's case, did.  The above individuals, and their agencies,

13  allowed said corruption to proceed.  After Discovery is allowed Plaintiff will have sufficient

14  proof to show that each and every one of the above named defendants did the following:

15    1.  Had a specific intent to facilitate hiding the truth and endorsing the illegal acts of

16        a.  WEI in prosecuting off of a falsified police report

17        b.  DAUM in writing a falsified Investigative Report and suggesting an outrageous

18            fine for actions never committed by Plaintiff

19        c.  AIKENS, in pretending to have been the supervisor at the airport on the day of the

20            offense when in actuality she was not there at all

21        d.  DOE 1, for filing a falsified police report as well as the Citizen Arrest form,

22            claiming that the Plaintiff had done the tug-of-war over the cooler with her and

23            that Plaintiff had, in the process, hit her when in actuality the Plaintiff had had the

24            tug-of-war over the cooler with TETTEH and had never hit anyone.

25    2.  Had the requisite intent of the underlying substantive offense.

26

27    **SECOND AMENDED COMPLAINT ("SAC")**

28                        114                        10/10/12

3. Assisted or participated in the commission of the underlying substantive offense. and

4. That WEI, DAUM, AIKENS, and DOE 1 had indeed committed the underlying offenses.

## SIXTEENTH CLAIM FOR RELIEF

### Battery

### (All Burbank Airport Defendants)

### Federal Tort Claims Act

Plaintiff refers to all information of this complaint, inclusive of the Statement of Facts and Claims for Relief and by this reference incorporates them as though set forth in full herein.

All elements for battery were present in this case. These elements were (1) the Defendant either touched the Plaintiff or caused the Plaintiff to be touched with the intent to harm or offend the Plaintiff, (2) the Plaintiff did not consent to the touching (3) The Plaintiff was harmed or offended by the defendant's conduct; and (4) that a reasonable person in the Plaintiff's situation would have been offended by the touching.

Plaintiff was arrested, against her will, with no probable cause, by Officers GREEN and ALBARO of the Burbank Airport Police Department; said action would have been considered extremely offensive to a reasonable person. The officers intentionally placed handcuffs on Plaintiff, behind her back, with the intention of bringing about offensive contact or an apprehension thereof even though KAKUMU had told Plaintiff she was not going to be arrested. The officers then walked her outside to an awaiting police car  Plaintiff constantly told GREEN and ALBARO that she had not hit anyone. Said battery caused Plaintiff to suffer an emotional breakdown, the symptoms of which she is still struggling with to this date.

## SEVENTEETH CLAIM FOR RELIEF

### Assault

## SECOND AMENDED COMPLAINT ("SAC")

115                                          10/10/12

1

**(All Burbank Airport Defendants)**

2

**Federal Tort Claims Act**

3      Plaintiff refers to all information of this complaint, inclusive of the Statement of Facts

4  and Claims for Relief and by this reference incorporates them as though set forth in full herein.

5      All elements for an assault claim were present in this case.  These elements were (1) the

6  Defendant acted, intending to cause harmful or offensive contact, (2) the Plaintiff reasonably

7  believed she was about to be touched in a harmful or offensive manner; (3) the Plaintiff did not

8  consent to the Defendant's conduct; (4) the Plaintiff was harmed; and (5) the Defendant's

9  conduct was a substantial factor in causing the Plaintiff's harm.

10     A person commits tortuous assault when he engages in "any act of such a nature as to

11  excite an apprehension of battery or bodily injury.  Plaintiff was fearful regarding what was

12  going to happen to her when GREEN and ALBARO put cuffs on her hands and took her out to

13  the police car.  Plaintiff was fearful as she entered the Burbank Police Jail, as the officers put

14  her in direct contact with criminals, the crimes of which they had committed she was not aware

15  of.  Although her treatment might have appeared "normal" to another law enforcement officer,

16  to Plaintiff, who had never experienced such abuse by individuals she had grown to believe

17  were around to protect and defend her, the experience was devasting.

18

19

## EIGHTEENTH CLAIM FOR RELIEF

20

**False Light**

21

**(All Defendants)**

22

**Federal Tort Claims Act**

23     Plaintiff refers to all information of this complaint, inclusive of the Statement of Facts

24  and Claims for Relief and by this reference incorporates them as though set forth in full herein.

25

26

27

**SECOND AMENDED COMPLAINT ("SAC")**

28                          116                                    10/10/12

1   False light differs from defamation primarily in being intended to protect the plaintiff's

2   mental or emotional well-being rather than to protect a plaintiff's reputation as is the case with

3   the tort of defamation and in being about the impression created rather than being about true or

4   false. False light cases are about damage to a person's personal feelings or dignity, whereas

5   defamation is about damage to a person's reputation.

6   The elements of false light are all present in this case; they include (1) a publication or

7   action of the Defendant about the Plaintiff; (2) said publication or action was done with malice;

8   (3) said publication or action places the Plaintiff in a false light or hurts Plaintiff's personal

9   feelings or dignity; and (4) said publication or action would be highly offensive or embarrassing

10  to reasonable persons.

11  In this case, the false light charge arises from when Officers GREEN and ALBARO

12  paraded Plaintiff out of the airport, handcuffed like a criminal, in full public display when in

13  actuality Plaintiff had done no crime whatsoever. Such action was despicable, demoralizing to

14  the Plaintiff, and would be highly offensive or embarrassing to any reasonable person.

15  Several other charges of false light occurred when evidence tampering occurred. The

16  surveillance video was altered to make Plaintiff look like a beligerant individual. An e-mail

17  from Dave Vogl was fabricated and portrayed Plaintiff as a hostile individual. At the current

18  time Plaintiff's family and friends do not believe that alteration of evidence has occurred and

19  consequently have the attitude that Plaintiff's actions were inappropriate. This has become very

20  frustrating and demoralizing for Plaintiff and it is her hope that after proper investigations have

21  been completed she will prevail in her claim that alterations have occurred with the video and

22  written evidence in her criminal prosecution.

23  ///

24  ///

25  ///

26

27  **SECOND AMENDED COMPLAINT ("SAC")**

28  117                                          10/10/12

## NINETEENTH CLAIM FOR RELIEF

### Extortion

### WEI, BARLOW, BAKER, MC KENNA

### California Penal Code 518-527

Plaintiff refers to all information of this complaint, inclusive of the Statement of Facts and Claims for Relief and by this reference incorporates them as though set forth in full herein.

Section 518 of the CPC states the following: "Extortion is the obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right."

Section 519 of the CPC states the following; "Fear, such as will constitute extortion, may be induced by a threat, either (1) to do an unlawful injury to the person or property of the individual threatened or of a third person; or, (2) to accuse the individual threatened, or any relative of his, or member of his family, of any crime; or, (3) to expose, or to impute to him or them any deformity, disgrace or crime; or, (4) to expose any secret affecting him or them.

Plaintiff was an innocent person that was accused of a crime she did not do. Plaintiff showed due diligence in communicating that fact to WEI, BARLOW, and McKENNA. Rather than to order a thorough investigation, WEI and BARLOW threatened Plaintiff with jail time if she did not accept the plea bargain and she was found guilty at trial. McKENNA sent Plaintiff sample cases that he had presided over and where the penalties for the offenses were severe.

Plaintiff believes the reason why WEI, BARLOW and BAKER wanted Plaintiff to accept a plea bargain was to prevent her from going after all those that offended her, including WEI, BARLOW, and BAKER.

Plaintiff believes the intention of MC KENNA in sending Plaintiff these cases was to scare her into simply paying the Administrative Civil Action fine, which would, in essence, have her admit guilt for a crime she did not do.

---

**SECOND AMENDED COMPLAINT ("SAC")**

118                                          10/10/12

## TWENTIETH CLAIM FOR RELIEF

### Violation of Freedom of Speech

### 1st Amendment to the U.S. Constitution

### Americans With Disabilities Act

Plaintiff refers to all information of this complaint, inclusive of the Statement of Facts and Claims for Relief and by this reference incorporates them as though set forth in full herein.

While Plaintiff was tossing out the foods in the cooler, she made a public announcement to the public: "I want everyone here to witness the fact that if anything happens to my mother because these agents are refusing to allow it to go on the plane, I am going to hold them 100% responsible."

It is Plaintiff's belief, and she hereby alleges, that TSA was embarrassed to have a passenger publicly shame their organization. Consequently they chose to endorse the falsified Citizen's Arrest of Doe 1, which was their way of retaliating on the Plaintiff for her words and actions.

Plaintiff was representing her mother as she tried to get her food on board the plane. The retaliatory behavior of the Defendants was a direct violation of the Americans with Disabilities Act.

Plaintiff was also denied her right to speak when she was  in the Los Angeles FBI to report the felonies that had been committed against her. Plaintiff had met a very interesting gentleman, Ted Gunderson, who she enjoyed conversing with. As she was speaking with Mr. Gunderson, who she later discovered had been a former chief of the Los Angeles FBI, she was approached by two armed security guards that informed her that she needed to leave. She told them that she was simply having a conversation with a gentleman and she still had plenty of time in the parking lot. The guards insisted that she leave immediately; she agreed to do so but was

---

### SECOND AMENDED COMPLAINT ("SAC")

119                                                 10/10/12

1  still escorted out by the two guards.  Plaintiff believes that someone in the FBI office did not

2  want Plaintiff to communicate with Gunderson.  Later on, as she found out more about the man,

3  she could see why they did not want Plaintiff and Gunderson to collaborate with their

4  experiences.

5

6                    **TWENTY-FIRST CLAIM FOR RELIEF**

7                    **Intentional Infliction Of Emotional Distress**

8                           **(All Defendants)**

9                        **Federal Tort Claims Act**

10        Plaintiff refers to all information of this complaint, inclusive of the Statement of Facts

11  and Claims for Relief and by this reference incorporates them as though set forth in full herein.

12        Defendants intended to cause Plaintiff emotion distress because they directed their

13  conduct at Plaintiff.  Defendants' conduct was extremely outrageous because Defendants had the

14  absolute power to harm Plaintiff and intentionally did so.  Defendants knew that Plaintiff was in

15  a position of being particularly vulnerable and Defendants either knew that their conduct would

16  likely result in harm due to mental distress, or gave little or no thought to the probable effects of

17  their conduct.  Defendants acted recklessly and as a result Plaintiff, as well as her family

18  members, were, and continue to be, severely damaged.

19        As a result of Defendant's conduct, Plaintiff suffered severe emotional distress over a

20  prolonged period of time in the form of anguish, suffering, fright, nervousness, grief, anxiety,

21  worry, shock, humiliation and shame.

22

23                    **TWENTY-SECOND CLAIM FOR RELIEF**

24                    **Negligence – Failure to Investigate**

25                           **(All Defendants)**

26

27                 **SECOND AMENDED COMPLAINT ("SAC")**

28                              120                        10/10/12

1

**Federal Tort Claims Act**

2   Plaintiff claims that the Defendants in this case breached the obligation of faith and fair

3   dealing by failing to properly investigate her case. Plaintiff notified Defendants that she was

4   being prosecuted off a falsified Police Report and that she was not guilty of the alleged crime of

5   battery. All Defendants unreasonably failed to properly investigate the false arrest and thereby

6   allowed criminal activity, including tampering with the evidence used in her criminal

7   prosecution, to occur. Plaintiff was harmed, and is still suffering from Defendants' failure to

8   investigate. Defendants unreasonable failure to properly investigate the criminal activity was a

9   substantial factor in causing Plaintiff's harm.

10   After Plaintiff's criminal case was dismissed and after the Civil Enforcement lawsuit

11   against Plaintiff was dismissed, Plaintiff began doing her own investigative work. To date she

12   has discovered the following:

13   1. The airport surveillance video is not accurate and has had several sections inserted

14   with fabricated video.

15   2. Dave Vogl, an alleged American Airlines passenger that shot a cell phone video of

16   Plaintiff at the American Airlines boarding gate, was not an American Airlines

17   passenger. He stated that he flew on a flight to San Francisco and American Airlines

18   has told Plaintiff that they do not fly to San Francisco out of Burbank. Yet Vogl can

19   be seen in the video and he has passed the security checkpoint. Only individuals

20   with boarding passes are allowed to get to where Vogl was when he shot the video.

21   How is it that he was able to be in this secured area, stating that he was booked on

22   American Airlines, and yet American Airlines shows no record of him flying on that

23   day?

24   3. The cell phone video turned in by Vogl was a continuous video according to Mr.

25   Vogl, yet there is a definite break in the footage. Something has definitely been

26

27   **SECOND AMENDED COMPLAINT ("SAC")**

28   121                                          10/10/12

edited out of the footage. This is an illegal act, as this was evidence that was used in Plaintiff's criminal prosecution. Under no circumstances should it have been edited.

4. The video clearly show that the tug-of-war was with the screener, not the supervisor.

5. The Citizen's Arrest form claims that the supervisor did the tug-of-war over the cooler.

6. In January 2012 Plaintiff discovered that an unknown person (AIKENS) had been accepting legal documents and pretending to have been the "supervisor" at the airport. She is the one that signed the Citizen's Arrest form, claiming that Plaintiff had hit her. Plaintiff has made it known to the Court that this individual was not involved in the airport incident at all; she is indeed an imposter, pretending to have been the supervisor yet having a physical appearance closer to that of TETTEH, who is the one Plaintiff did the tug-of-war with.

## TWENTY-THIRD CLAIM FOR RELIEF

### Negligence – Failure to Train

### (All Defendants, Named and Unnamed, In A Supervisory Position)

### Federal Tort Claims Act

Plaintiff claims that the Defendants in this case breached the obligation of faith and fair dealing by failing to properly train their subordinates that were involved in this case.. Plaintiff notified Defendants that she was being prosecuted off a falsified Police Report and that she was not guilty of the alleged crime of battery. Many of the Defendants clearly showed by their verbal comments and actions that they were not familiar with the proper protocol, or law, as it related to their job. Plaintiff was harmed, and is still suffering from Defendants' failure to properly train their employees.. Defendants unreasonable failure to properly train was a

**SECOND AMENDED COMPLAINT ("SAC")**

10/10/12

1 | substantial factor in causing Plaintiff's harm. Defendants unreasonable failure to properly train
2 | could also have been a factor that led to some of the corruption that developed in this case.

3

4 | ### TWENTY-FOURTH CLAIM FOR RELIEF

5 | **Breach of Contract**

6 | **(Medina, Prevost, American Airlines)**

7 | **Federal Tort Claims Act**

8 | The elements for breach of contract were present in this case. These elements are as
9 | follows:

10 | 1. That the Plaintiff did all, or substantially all of the significant things that the contract
11 | required him or her to do

12 | 2. That all conditions required for defendants' performance had occurred;

13 | 3. That defendants failed to do something that the contract required them to do; and

14 | 4. That the plaintiff was harmed by that failure.

15 | MEDINA. Plaintiff had hired MEDINA to represent her and to prove her innocence.
16 | From what the Plaintiff has observed, MEDINA did nothing for Plaintiff's case other than to
17 | show up for a meeting at the City Attorney's Office. He encouraged Plaintiff to accept the plea
18 | bargain, which would have severely damaged Plaintiff's potential to heal from this hellacious
19 | event. He refused to move forward in defending Plaintiff and forced her to search for other
20 | representation. This added pressure at a time while Plaintiff was suffering severe PTSD was
21 | almost more than Plaintiff could bear.

22 | PREVOST. PREVOST, after receiving a large sum in fees from Plaintiff, turned on her
23 | and became hostile. Although she did succeed in helping Plaintiff get the criminal case
24 | dismissed, she did no investigative work to help prove Plaintiff's innocence even though
25 | Plaintiff supplied her with some very important details. Plaintiff was severely prejudiced due to

26

27 | **SECOND AMENDED COMPLAINT ("SAC")**

28 |                              10/10/12

1  PREVOST's failure to investigate. If PREVOST had properly performed her duties as an

2  attorney, many of the felonies that were done in this case could have been exposed and

3  investigated prior to her criminal trial, thus supplying Plaintiff with resolved cases and proven

4  facts to use in this federal case. Plaintiff is desirous of healing from the symptoms of PTSD and

5  the closure she could have obtained with the truth being told could have helped accomplish this.

6  Instead, Plaintiff has had to do all of the investigative work herself and has been prejudiced by

7  not having the proper claim forms filled out on time and by the statute of limitations for claims

8  to have run out.

9       AMERICAN AIRLINES. Plaintiff had purchased tickets for her flight to Nashville.

10  MASSINGALE subjectively refused to allow Plaintiff to board the plane she was ticketed to be

11  on. MASSINGALE in effect participated with the TSA and airport police agents to have

12  Plaintiff arrested when she had not done anything wrong.

13       AMERICAN AIRLINES had led Plaintiff's daughter to believe that they would get

14  Plaintiff, ALBRECHT, and KULI on board another plane, at no extra charge, once Plaintiff

15  was released from jail. They failed to follow through with this promise and it cost Plaintiff an

16  additional $2606.20 to get them to their destination.

17

18

19                                   **PRAYER FOR RELIEF**

20       **WHEREFORE**, Plaintiff prays for judgment and relief against Defendants, and each of

21  them, as follows:

22                              **AS TO ALL CLAIMS FOR RELIEF**

23       1.  For actual damages in an amount according to proof;

24       2.  For General and Special damages in an amount according to proof;

25       3.  For costs of suit incurred;

26

27                      **SECOND AMENDED COMPLAINT ("SAC")**

28                                        124                              10/10/12

1    4. Prejudgment interest;

2    5. For a statutory civil penalty in the sum of $25,000, pursuant to <u>Civil Code, § 52(b)</u>;

3    6. For exemplary and punitive damages in an amount according to proof;

4    7. For such other relief as the court may deem just and equitable.

5

6                              **DEMAND FOR JURY TRIAL**

7          Plaintiff demands a jury trial as to all issues and claims that might be tried to a jury.

8

9    Respectfully submitted,

10   *Nadine Hays*

11   Nadine Hays

12   In pro se

13

14   Dated: 10/10/2012

15

16

17

18

19

20

21

22

23

24

25

26

27                   **SECOND AMENDED COMPLAINT ("SAC")**

28                                      125                            10/10/12

### PROOF OF SERVICE – CIVIL

1. At the time of service I was over 18 years of age and not a party to this action.  My residence address is: 370 Highland Hills Dr.; Camarillo, CA  93010.

2. On October 10, 2012 I served a copy of the following document:

   Second Amended Complaint; dated 10/10/12

3. Persons served :

        Rodolfo F. Ruiz
        E-mail: rruiz@vrlawyers.com

        Carol A Humiston
        FAX: 818-238-5724

        Mr. Thomas Buck
        E-mail: Tom.Buck@usdoj.gov

Date: October 10, 2012

Signed: _____

        John A. Hays

---

### PROOF OF SERVICE