FILED
CLERK, U.S. DISTRICT COURT

APR 1 0 2015

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF DOCUMENT DISCREPANCIES

To: ☑ U.S. District Judge / ☐ U.S. Magistrate Judge  Dolly M. Gee

From: Isabel Martinez _____, Deputy Clerk     Date Received: March 26, 2015

Case No.: CV 11-3198-DMG(PJW     Case Title: Nadine Hays v. Transportation Security Administration (TSA

Document Entitled: Plaintiff's Clarification of Misunderstood Material Facts; Plaintiff's Request for Clarification from the Court; Proposed Fourth Amended Complaint

Upon the submission of the attached document(s), it was noted that the following discrepancies exist:

- ☐ Local Rule 5-4.1 — Documents must be filed electronically
- ☐ Local Rule 6-1 — Written notice of motion lacking or timeliness of notice incorrect
- ☐ Local Rule 7-19.1 — Notice to other parties of ex parte application lacking
- ☐ Local Rule 7.1-1 — No Certification of Interested Parties and/or no copies
- ☐ Local Rule 11-3.1 — Document not legible
- ☐ Local Rule 11-3.8 — Lacking name, address, phone, facsimile numbers, and e-mail address
- ☐ Local Rule 11-4.1 — No copy provided for judge
- ☐ Local Rule 11-6 — Memorandum/brief exceeds 25 pages
- ☐ Local Rule 11-8 — Memorandum/brief exceeding 10 pages shall contain table of contents
- ☐ Local Rule 15-1 — Proposed amended pleading not under separate cover
- ☐ Local Rule 16-7 — Pretrial conference order not signed by all counsel
- ☐ Local Rule 19-1 — Complaint/Petition includes more than 10 Does or fictitiously named parties
- ☐ Local Rule 56-1 — Statement of uncontroverted facts and/or proposed judgment lacking
- ☐ Local Rule 56-2 — Statement of genuine disputes of material fact lacking
- ☐ Local Rule 83-2.5 — No letters to the judge
- ☐ Fed. R. Civ. P. 5 — No proof of service attached to document(s)
- ☑ Other: Case Closed 12-30-14. The Court has previously ruled on plaintiff's motion on these grounds.

**Please refer to the Court's website at www.cacd.uscourts.gov for Local Rules, General Orders, and applicable forms.**

### ORDER OF THE JUDGE/MAGISTRATE JUDGE

IT IS HEREBY ORDERED:

☐  The document is to be filed and processed. The filing date is ORDERED to be the date the document was stamped "received but not filed" with the Clerk. Counsel* is advised that any further failure to comply with the Local Rules may lead to penalties pursuant to Local Rule 83-7.

_____
Date

_____
U.S. District Judge / U.S. Magistrate Judge

☒  The document is **NOT** to be filed, but instead **REJECTED**, and is ORDERED returned to counsel.* Counsel* shall immediately notify, in writing, all parties previously served with the attached documents that said documents have **not** been filed with the Court.

4/10/15
Date

_Dolly M. Gee_
U.S. District Judge / ~~U.S. Magistrate Judge~~

* The term "counsel" as used herein also includes any pro se party. See Local Rule 1-3.

COPY 1 -ORIGINAL-OFFICE     COPY 2 -JUDGE     COPY 3 -SIGNED & RETURNED TO FILER     COPY 4 -FILER RECEIPT

NADINE HAYS
370 Highland Hills Drive
Camarillo, CA  93010
(805) 484-4452
(818) 474-7676 – Fax
NadineHays@aol.com
In Pro Se

# UNITED STATES DISTRICT COURT,

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DISTRICT

| | |
|---|---|
| NADINE HAYS, an individual;<br><br>　　　Plaintiff,<br><br>　　　vs.<br><br>UNITED STATES OF AMERICA, et al;<br><br>　　　Defendants | Case No. **CV11-3198 DMG (PJW)**<br>Assigned for all purposes to:<br>Judge:  DMG (PJW)<br>Dept:  Currently Courtroom 23 for PJW<br><br>**PLAINTIFF'S CLARIFICATION OF MIS-UNDERSTOOD MATERIAL FACTS; PLAINTIFF'S REQUEST  REQUEST FOR CLARIFICATION FROM THE COURT; PROPOSED FOURTH AMENDED COMPLAINT**<br><br>Original Complaint Filed:　　4-14-2011<br>Amended Complaint Filed:　　7-25-2011<br>Second Amended Complaint Filed: 10-10-2012<br>Third Amended Complaint Filed: 1-14-13<br>Trial Date:　　　　　　None<br>Discovery Cut Off:　　　　None |

　　　This request for reconsideration is being made per FRCP 60(b)(1), as it was evident in the

Court's denial (Doc 329) of PLAINTIFF'S MOTION FOR STAY OF JUDGMENT AND/OR

**PLAINTIFF'S CLARIFICATION OF MISUNDERSTOOD MATERIAL FACTS; PLAINTIFF'S REQUEST  FOR CLARIFICATION FROM THE COURT; PROPOSED FOURTH AMENDED  COMPLAINT**

3/24/15

RECONSIDERATION OF ORDER DISMISSING ACTION WITH PREJUDICE (Doc 326)

that the Court's ruling has been based on a mistake or misunderstanding of the facts, and therefore excusable neglect.

   On January 16, 2015 Plaintiff submitted her pleading for a "stay of execution of the judgment" and/or reconsideration of the judgment; (Doc 326). On February 9, 2015 Defendants Tonya Aikens, Tessia Tetteh, and Transportation Security Administration filed their Opposition. On February 25, 2015 the Court denied Plaintiff's motion; Doc. 329.

   It became very apparent that the Court still is confused regarding crucial material facts. The Court makes the following statement. "That did not happen here. Plaintiff presented her claim that the TSA agents were imposters and that the federal government had *submitted a doctored surveillance video showing Plaintiff **striking one of the imposters** at the airport*."; Doc 329, 2:21-25. This statement is totally erroneous. Because of the convoluted facts currently accepted as truths by this Court, an unjust judgment has been reached.

   Plaintiff has never stated that the imposters were inserted into the video. The agents in the video *are* the agents Plaintiff had her encounter with. At this time, Plaintiff would like to ask the Court to completely forget about Plaintiffs statements about the video being altered and about the imposters and to focus on the simple facts listed below, which Plaintiff now realizes is precisely what the Court tried to get Plaintiff to do 2 years ago. Unfortunately Plaintiff became so focused on the corruption throughout this case that she failed to focus on the key issues as listed below:

   1. Plaintiff was arrested on a falsified police report; **this was the fraud Plaintiff meant to reference in her pleading.**

---

**PLAINTIFF'S CLARIFICATION OF MISUNDERSTOOD MATERIAL FACTS;
PLAINTIFF'S REQUEST FOR CLARIFICATION FROM THE COURT;
PROPOSED FOURTH AMENDED COMPLAINT**

3/24/15

2. The material fact here lies in the fact that the government is claiming that the thinner agent was the supervisor, which she was not. Plaintiff should be allowed to do Discovery regarding this issue.

3. The government has named the two key TSA agents Tonya Aikens and Tessia Tetteh. Plaintiff has seen both of these individuals and has repeatedly told the Court that these individuals were NOT involved in the airport incident. Plaintiff has presented multiple documents to the Court and has presented them once again in this pleading; these documents show that the agents at the airport were Tanya Atkins/Atkens (see **Exhibit 1, *1** and **Exhibit 2**, page 1, *2) and Testad Tetteh (see **Exhibit** 1, *2 and **Exhibit 2,** page 1, *1. This case should not be dismissed until the true identification of the agents at the airport, and in the surveillance video, has been authenticated per Federal Rules of Evidence Rule 901.

4. The heavy-set supervisor violated CPC § 148.5 when she stated that she did the tug-of-war over the cooler with Plaintiff when it was clearly done with the thinner screener. Plaintiff has a 6th Amendment right to face her accuser, which was the heavy-set supervisor. This never occurred during her criminal case, during her civil administrative case, nor in this case.

5. The citizen's arrest was not properly performed and was thereby unlawful. Plaintiff was extremely prejudiced by this negligent and unlawful act.

6. Plaintiff's right to do a citizen's arrest on the individual that had her arrested was violated when officers GREEN and ALBARO refused to do it, a violation of CPC § 142. Plaintiff was extremely prejudiced by this negligent and unlawful act.

---

**PLAINTIFF'S CLARIFICATION OF MISUNDERSTOOD MATERIAL FACTS;**
**PLAINTIFF'S REQUEST FOR CLARIFICATION FROM THE COURT;**
**PROPOSED FOURTH AMENDED COMPLAINT**

1

## ISSUES OF MATERIAL FACT THAT ARE IN DISPUTE

2      It is Plaintiff's understanding that when a case is presented, if there are issues of material

3 fact that are in dispute it should be up to the jury and not the Court to decide which side will

4 prevail based on 1.) the facts of the case and 2.) the law. Plaintiff has outlined the material facts

5 that she has consistently stated and yet the Court consistently chose to overlook. These have

6 been listed below.

7

8 ## THE PLAINTIFF STATES THAT THE SUPERVISOR IS THE HEAVY SET AGENT

9 ## AND THE DEFENDANTS CLAIM THAT SHE IS THE THINNER AGENT.

10      If Plaintiff is allowed to prove that she is right, and she knows that she can if she is

11 allowed to have limited Discovery, then she will be able to prove an issue that she has been

12 arguing from the time of her arrest, namely that, she was arrested on a falsified police report and

13 the supervisor is the one guilty of the criminal offense of providing false information to the

14 officers.

15      As things currently stand in the Court, because Discovery has not been allowed and the

16 identity of the agents have not been authenticated, the Court has basically become a co-

17 conspirator with Defendants and has violated its own Federal Rules of Evidence in not allowing

18 evidence that has been presented to the Court to be authenticated.

19

20 ## THE COURT HAS MADE AN ERRONEOUS RULING OF PROBABLE CAUSE AS

21 ## THE VIDEO CLEARLY SHOWS THAT PLAINTIFF DID NOT STRIKE THE HEAVY-

22 ## SET TSA SUPERVISOR WHO WAS A BYSTANDER WHEN THE TUG-OF-WAR

23 ## OVER THE COOLER OCCURRED.

24

25

26 **PLAINTIFF'S CLARIFICATION OF MISUNDERSTOOD MATERIAL FACTS;**
**PLAINTIFF'S REQUEST FOR CLARIFICATION FROM THE COURT;**
27 **PROPOSED FOURTH AMENDED COMPLAINT**

28                                          4                              3/24/15

1    Once again Discovery should be done in order to authenticate who was the supervisor

2  and who was the screener.  Once it is proven that the supervisor was the heavy-set agent, the

3  video will clearly show that Plaintiff did not hit her as she was not the one involved in the tug-of-

4  war over the cooler.

5

6  **THE CITIZEN'S ARREST WAS NOT  DONE PROPERLY AND THEREFORE THE**

7  **CUSTODIAL ARREST OF PLAINTIFF WAS UNLAWFUL.**

8    Plaintiff has been struggling to learn the law as she progresses through her two cases in

9  the Los Angeles Federal Courthouse.  One very important issue that Plaintiff has discussed in

10  previous pleadings is that the citizen's arrest was not performed properly.

11    CPC § § 837 and 841 describe in detail how a citizen's arrest must be done:

12

13    CPC § 837.  A private person may arrest another:

14        1. For a public offense committed or attempted in his presence.
        2. When the person arrested has committed a felony, although not in his presence.
15        3. When a felony has been in fact committed, and he has reasonable cause for
         believing the person arrested to have committed it.

16

17    CPC § 841.  The person making the arrest must inform the person to be arrested of the
      intention to arrest him, of the cause of the arrest, and the authority to make it, except
18      when the person making the arrest has reasonable cause to believe that the person to be
      arrested is actually engaged in the commission of or an attempt to commit an offense, or
19      the person to be arrested is pursued immediately after its commission, or after an escape.
      The person making the arrest must, on request of the person he is arresting, inform the
20      latter of the offense for which he is being arrested.

21    Plaintiff has consistently stated that the supervisor never confronted Plaintiff, never

22  informed Plaintiff of her intention to have her arrested, and never told her why she was going to

23  have Plaintiff arrested.  This was in violation of  CPC § 841 and made Plaintiff's arrest unlawful.

24

25

26    **PLAINTIFF'S CLARIFICATION OF MISUNDERSTOOD MATERIAL FACTS;**
      **PLAINTIFF'S REQUEST  FOR CLARIFICATION FROM THE COURT;**
27      **PROPOSED FOURTH AMENDED  COMPLAINT**

28                                                5                          3/24/15

1   Consequently her seizure and incarceration violated her rights protected by the Fourth

2   Amendment of the U.S. Constitution.

3       Plaintiff wishes to cite *Dubner v. City and County of San Francisco* 1367, No. 99-17319,

4   United States Court of Appeals, Ninth Circuit for the fact that if a citizen's arrest is not properly

5   performed it can be considered to be unlawful.

6       In Dubner the following was stated:

7       *Although the plaintiff bears the burden of proof on the issue of unlawful arrest, she*

8       *can make a prima facie case simply by showing that the arrest was conducted without*

9       *a valid warrant.  At that point, the burden shifts to the defendant to provide some*

10      *evidence that the arresting officers had probable cause for a warrantless arrest.*

11      *The plaintiff still has the ultimate burden of proof, but the burden of production falls*

12      *on the defendant.   See Gilker v. Baker, 576 F.2d 245, 246 (9th Cir.1978) ("Once a*

13      *warrantless arrest is established, the burden of going forward with the evidence*

14      *passes to the defendant.").   See also, Martin v. Duffie, 463 F.2d 464, 467 (10th*

15      *Cir.1972) (plaintiff who has been arrested without a warrant "need only present a*

16      *prima facie case of illegal arrest in order to sustain his burden"); Patzig v. O'Neil,*

17      *577 F.2d 841, 849 n. 9 (3d Cir.1978);  Dellums v. Powell, 566 F.2d 167, 175-76*

18      *(D.C.Cir.1977).   If the defendant is unable or refuses to come forward with any*

19      *evidence that the arresting officers had probable cause and the plaintiff's own*

20      *testimony does not establish it, the court should presume the arrest was unlawful.*

21      If the Court were to consider the statements made by Plaintiff as true, as it is supposed to

22   do, the video clearly shows that Plaintiff did *not* hit the supervisor, who was the heavier TSA

23   agent looking at the altercation and not participating in it.

24

25   _____

26   **PLAINTIFF'S CLARIFICATION OF MISUNDERSTOOD MATERIAL FACTS;**
     **PLAINTIFF'S REQUEST  FOR CLARIFICATION FROM THE COURT;**
27   **PROPOSED FOURTH AMENDED  COMPLAINT**

28                                    6                           3/24/15

## THE ISSUE OF PROBABLE CAUSE SHOULD HAVE BEEN LEFT UP TO A JURY TO DECIDE.

Plaintiff never asked for a probable cause determination in this case. However, the Court made a decision that there was probable cause without having any substantial evidence. In fact, the Court is assuming that Tonya Aikens was the TSA supervisor that placed a citizen's arrest on Plaintiff. Plaintiff has declared that Tonya Aikens was not at the airport on April 16, 2009.

Contrary to this, Plaintiff had evidence to support her testimony that she had not hit anyone. These facts included:

1. The video does not show Plaintiff hitting anyone. The portion of the video that Defendants claim shows Plaintiff striking the TSA agent has the heavy-set agent blocking the view of where Plaintiff's raised hand lands.

2. If Plaintiff had struck the agent, the other agents would have immediately interceded to break up the "fight". This did not happen.

3. There was no evidence of a hit by the thinner agent's facial expression and physical activity after Plaintiff left the screening area.

4. Plaintiff will eventually prove that the supervisor was the heavy-set agent, that the video clearly shows the supervisor was not involved in the tug-of-war over the cooler, and that the Court erred when it stated there was probable cause for Plaintiff's arrest because it was assuming that the thinner agent was the supervisor which is incorrect.

5. Plaintiff testified that she never hit anyone. Knowledge is admissible evidence, whereas belief is not.

6. Plaintiff's criminal case was dismissed.

---

**PLAINTIFF'S CLARIFICATION OF MISUNDERSTOOD MATERIAL FACTS;
PLAINTIFF'S REQUEST FOR CLARIFICATION FROM THE COURT;
PROPOSED FOURTH AMENDED COMPLAINT**

3/24/15

7. Plaintiff presented a third party witness declaration that stated Plaintiff never hit anyone.

8. There was no evidence of injury...in fact there were documents of NO INJURY.  Yet the Court claims that Plaintiff hit the agent, a decision which greatly prejudiced Plaintiff.

9. If Plaintiff had really assaulted a federal agent in an airport, the other agents would not have simply observed what was going on.  They would have immediately taken action to stop Plaintiff from moving out of the screening area.  This did not happen.

This is indeed an issue of material fact that should have gone before a trier of fact. Plaintiff was highly prejudiced by the Court's decision that battery had occurred and would like to ask the Court to reconsider its decision regarding probable cause once the totality of the circumstances is considered.

## GREEN AND ALBARO VIOLATED CPC § 142 WHEN THEY FAILED TO PERFORM PLAINTIFF'S CITIZEN'S ARREST ON THE INDIVIDUAL THAT PLACED HER UNDER ARREST.[1]

If GREEN and ALBARO had obeyed the law and followed through with Plaintiff's citizen's arrest, many of the issues could have been immediately resolved and prevented much of the PTSD damages.  Because of this, Plaintiff was extremely prejudiced, as the real criminals walked away free while Plaintiff, an innocent person, was incarcerated and maliciously prosecuted several times for crimes she never committed.

---

[1] See *Wang* v. *Hartunian* (2003) 111 Cal.App.4th 744, 750 ["[T]he police were in fact obligated to take custody of Wang merely at the direction of Hartunian, that is, when Hartunian informed the police that he had arrested Wang."]; *Kesmodel* v. *Rand* (2004) 119 Cal.App.4th 1128, 1137 ["Because the Rands effected the citizen arrest the officers were obligated to accept custody of Kesmodel"].

---

**PLAINTIFF'S CLARIFICATION OF MISUNDERSTOOD MATERIAL FACTS;**
**PLAINTIFF'S REQUEST  FOR CLARIFICATION FROM THE COURT;**
**PROPOSED FOURTH AMENDED  COMPLAINT**

## ACCORDING TO FRCP Rule 56(e) THE EVIDENCE PRESENTED BY THE PARTIES MUST BE ADMISSIBLE.

Plaintiff was present and was directly involved in the incidents at the airport.  Plaintiff has submitted multiple declarations to the Court regarding its findings that are erroneous.  The Court has never allowed Plaintiff to authenticate and confirm the identity of the individuals that the government claims were involved in the airport incident.  Plaintiff has seen both Tonya Aikens and Tessia Tetteh (who was present in this Court on April 5, 2013).  Plaintiff has testified that these two individuals were not the individuals at the airport.  Authentication of their identity and employment with TSA should be made before they can be accepted as the agents they have claimed to be.

Fraudulent deceit by the Federal government has managed to manipulate the Court to believe its erroneous statements over the truthful statements of Plaintiff.  This not only prejudices Plaintiff and prevents justice from occurring in the Court, but it is also a violation of Federal Rule of Evidence 901.

## THE FOLLOWING FINDINGS OF THE COURT NEED TO BE AMENDED WHICH IN TURN WILL ALTER THE FINAL JUDGMENT ACCORDINGLY.

Plaintiff did cite to Rule 52(b) and has challenged the following findings:

1. The Court believes that the supervisor is the thinner agent.  Plaintiff, who was involved in the incident, knows (which is evidence, whereas belief is not) that the thinner agent was the screener.

2. The Court believes that the tug-of-war over the cooler occurred between Plaintiff and the supervisor Tonya Aikens.  Plaintiff knows that Tonya Aikens was not involved in the airport incident.

**PLAINTIFF'S CLARIFICATION OF MISUNDERSTOOD MATERIAL FACTS;
PLAINTIFF'S REQUEST  FOR CLARIFICATION FROM THE COURT;
PROPOSED FOURTH AMENDED  COMPLAINT**

3/24/15

3. The Court believes that Plaintiff's referencing of fraud was related to her allegations that Tonya Aikens and Tessia Tetteh were imposters and that the federal government had submitted a doctored surveillance video. This is not correct. **The fraud Plaintiff was referencing was the fact that she was arrested on a falsified police report.**

4. The Court believes that Plaintiff was saying that the TSA agents in the video were imposters. This is not true. The Plaintiff has always testified that the agents in the videos were the real agents. However, the police report said that the supervisor, who was the heavy-set agent, was the one involved in the tug-of war yet the video clearly shows that the tug-of-war was with the thinner agent, who was the screener.

5. Because the supervisor told GREEN and ALBARO that she did the tug-of-war over the cooler with Plaintiff, when she didn't, she is guilty of placing a falsified police report, a violation of CPC § 148.5.

6. The arrest of Plaintiff was unlawful. The citizen's arrest was not properly done. Only an arrest by citation should have been done, rather than a custodial arrest.

7. GREEN and ALBARO were guilty of violating multiple laws: CPC § 841 (for not telling Plaintiff why she was being arrested), CPC § 142 (for not arresting the individual that had Plaintiff arrested, as Plaintiff asked to place a citizen's arrest on her), CPC § 853.5 AND 853.6 (for not simply citing and releasing Plaintiff for the alleged misdemeanor crime for which there was no evidence), and CPC § 841 (for not executing a lawful citizen's arrest).

8. Plaintiff's due process rights protected under the 14th Amendment of the U.S. Constitution were violated when the TSA supervisor told Plaintiff that she was going to confiscate the cooler and the food within it, when the supervisor had no authorization to

---

**PLAINTIFF'S CLARIFICATION OF MISUNDERSTOOD MATERIAL FACTS; PLAINTIFF'S REQUEST FOR CLARIFICATION FROM THE COURT; PROPOSED FOURTH AMENDED COMPLAINT**

3/24/15

1   do so.  The supervisor was therefore guilty of trespass to chattels when she took custody

2   of Plaintiff's property without her permission.

3

4

5   **PLAINTIFF HAS ASKED TO REOPEN CASE CV12-8585 AS IT WAS DISMISSED**

6   **WITHOUT PREJUDICE (see Exhibit 4) PENDING EXHAUSTION OF**

7   **ADMINISTRATIVE REMEDIES, WHICH HAVE NOW BEEN EXHAUSTED (see**

8   **Exhibit 5).**

9   It is Plaintiff's understanding that under certain circumstances a civil case can be

10   reopened; see **Exhibit 6**, which states the following: "Every civil case may be reopened if the

11   prevailing party committed a fraud upon the court."  This is precisely what has happened in

12   Plaintiff's case and, if allowed proper discovery, she will be able to prove that the Court has

13   erred due to the deceit of the Defendants.  Plaintiff will prepare a separate motion for this to

14   occur.

15

16   **NOW THAT PLAINTIFF HAS EXHAUSTED HER ADMINISTRATIVE REMEDIES,**

17   **SHE WOULD LIKE TO PREPARE A VERY SIMPLE FTCA COMPLAINT WHICH**

18   **HAS A DUE PROCESS COMPLAINT AGAINST THE UNITED STATES FOR NOT**

19   **MAINTAINING ACCURATE RECORDS WHICH IS A VIOLATION OF THE**

20   **PRIVACY ACT.**

21   Since the United States generally is immune from suit, it cannot be held responsible for

22   tort claims unless it has specifically made allowances for this to occur.  Since there is not statute

23   of limitations when fraud has occurred, Plaintiff wishes to first move forward with reopening

24   case CV 12-8585 DMG(PJW).

25

26   **PLAINTIFF'S CLARIFICATION OF MISUNDERSTOOD MATERIAL FACTS;**
    **PLAINTIFF'S REQUEST  FOR CLARIFICATION FROM THE COURT;**
27   **PROPOSED FOURTH AMENDED  COMPLAINT**

28                                             11                              3/24/15

1       Plaintiff knows that she will be able to prove fraud  upon the Court if she is allowed

2 Discovery in case CV 12-8585 DMG(PJW), namely that Tonya Aikens was not an agent at the

3 airport on April 16, 2009.  This will then open the "can of worms" and clearly show that Emily

4 Daum, the TSA investigator, orchestrated the conspiracy to make Plaintiff look guilty of a crime

5 she never committed.  Her report, which is filled with defamatory remarks, maliciously written

6 with the intention of putting the blame on an innocent person rather than for the blame where it

7 really belonged, which was on the heavy-set TSA supervisor that placed a falsified police report

8 and ordered the arrest of Plaintiff when she had not committed the alleged crime.

9       The United States had knowledge of the deceitful acts that occurred and failed to take

10 proper action.  In fact, with the U.S. Attorney's certification, submitted by Andre Birotte (see

11 **Exhibit 7)**, erroneous statements were made.  There were several facts, however, that would

12 protect Andre Birotte from being prosecuted for participation in the fraud.  First of all, his

13 statement was based on Plaintiff's First Amended Complaint, which was not accurate because

14 Plaintiff was not totally aware of the deceit that had been done.  Secondly, even though Andre

15 Birotte  signed the certification, he did not sign the certification under penalty of perjury.

16       The United States can be held liable for it's failure to maintain accurate records and

17 failure to take corrective action per 5 U.S.C. § 552a (g)(1)(C).  This is the issue Plaintiff will

18 address in her FTCA Complaint.

19

20

21                         **CONCLUSION**

22       Plaintiff was never allowed the opportunity to enter Discovery in this case, which

23 severely prejudiced her.  The decisions that have been made in this case have been based on a

24 pack of lies, a situation upon which justice can never occur.

25

26       **PLAINTIFF'S CLARIFICATION OF MISUNDERSTOOD MATERIAL FACTS;**
       **PLAINTIFF'S REQUEST  FOR CLARIFICATION FROM THE COURT;**

27            **PROPOSED FOURTH AMENDED  COMPLAINT**

28                                     3/24/15

1    At this time Plaintiff simply wishes to confirm with the Court that her understanding of

2    the law is accurate, that she will be allowed to reopen case CV 12-8585 DMG (PJW) now that

3    her administrative remedies have been exhausted, and that she will be allowed to file her FTCA

4    Complaint at any time because there is no statute of limitations when fraud on the Court has been

5    committed.  Since fraud on the Court has not yet been proven, the Court may want to

6    recommend to Plaintiff that her FTCA Complaint be filed immediately.

7    Plaintiff will once again request that this Court stay the execution of any judgment in this

8    case until all related cases have been properly disposed.

9    Plaintiff is also asking for permission to file the attached Fourth Amended Complaint

10   (**Exhibit 3**) which accurately reflects what has happened in this case.  The video will not be

11   challenged.  The imposters will not be mentioned.  Under Rule 15 of the FRCP the Court is

12   required to "freely give leave when justice so requires," as the purpose underlying Rule 15 is to

13   facilitate decision on the merits.  FRCP Rule 15; *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.

14   200).  Leave to amend is generally granted more liberally to *pro se* litigants.  *Nunez v. Ramirez*,

15   No. 9-413-WQH (BGS, 2011 WL 768292, at *1 (S.D. Cal Feb. 1, 2011).

16

17   Respectfully submitted,

18

19   *Nadine Hays*

20   Nadine Hays
     Plaintiff, In Pro Se

21   Dated: 3/24/2015

22

23

24

25

26   **PLAINTIFF'S CLARIFICATION OF MISUNDERSTOOD MATERIAL FACTS;**
     **PLAINTIFF'S REQUEST  FOR CLARIFICATION FROM THE COURT;**
27   **PROPOSED FOURTH AMENDED  COMPLAINT**

28                                    13                          3/24/15

## Burbank-Glendale-Pasadena Airport Authority Police Department
### Automated Law Enforcement Incident Report

Date Printed: 4/16/2009   Time Printed: 10:14:50PM
Pa     of 2                                            Complaint Number:

**ORIGINAL**
**ROUTING**
**COPY**

### INCIDENT DATA

| | |
|---|---|
| Incident Type: | 242 PC Battery |
| Address of Occurence: | 0 CHECK POINT B |
| | Burbank, California |
| How Received: | RADIO |

Arrival Time: 1300 HRS
Time of Call: 1257

| | | | | | | |
|---|---|---|---|---|---|---|
| Copies To: | TSA | | | Processed by: NGREEN | | |
| Occurred From | 04/16/2009 | 1257 HRS | | To: | 04/16/2009 | 1300 HRS |
| Date Reported: | 04/16/2009 | | | Domestic: | No | |
| Time Reported: | 1257 HRS | | | Complaint Status: CLEARED BY ARREST | | |
| Officer Assaulted or Killed:No | | | | Arson Related: | No | |
| | | | | Officer Injured: | NO | |

Reporting Officer:   **Officer Norman Green**

DR Number:   09-03631

### VICTIM

| | |
|---|---|
| Name: | ATKINS , TANYA   #1 |
| Race: | BLACK |

Sex: FEMALE

| | |
|---|---|
| Occupation: | TSA SUPERVISOR |
| | Address: 2627 HOLLYWOOD WAY  Phone: 846-6320 (818) |
| | BURBANK, CA 91505 |
| Identification Type:TSA ID | ID Number:   64247 |

### WITNESS

| | |
|---|---|
| Name: | TETTEH , TESTAD   #2 |
| Race: | BLACK |

Sex: FEMALE

| | |
|---|---|
| Occupation: | TSA SCREENER |
| | Address: 2627 HOLLYWOOD WAY  Phone: 846-6320 (818) |
| | BURBANK, CA 91505 |
| Identification Type:TSA ID | ID Number:   64328 |

### KNOWN SUSPECT

| | | | |
|---|---|---|---|
| Name: | HAYS , NADINE  KAY | | |
| Suspect Status: | ADULT ARREST | | |
| Race: | WHITE | Sex: FEMALE  SSN: | Place of Birth: CA |
| Date of Birth: | | | Marital Status:   MARRIED |
| Identification Type:DRIVERS LICENSE | | Identification Number: | |
| Home Address: | 370  HIGHLAND HILLS DR  Phone: 484-4452 (805) | | |
| | CAMARILLO , CA 93010 | | |
| Occupation: | SELF EMPLOYED | | |

Physical Description: (Age): 57 - 0  (Height) 510 - 0  (Weight) 155  - 0

| | | | |
|---|---|---|---|
| Build: | MED | Hair Color: | BLN |
| Complexion: | FAR | Hair Length: | MEDIUM |
| Eye Color: | BLU | Hair Style: | WAVY/CURLY   AR #:   090092 |
| Inj. | NO | | |

## EXHIBIT 1 --- PAGE 1 OF 1

36

*Page 18*

*A R. 09-0072*

AIRPORT ARREST 242 PC
(CITIZEN'S ARREST)
DR 09-03631
4/16/2009

COPY

On 4/16/2009 at approx. 1255 hrs. I answered a radio call at the Terminal B
check point. The call was dispatched as a 415 fight between TSA and a
female passenger. I was requested to expedite as soon as possible the call
was now a physical fight.

At my arrival Ofcr. Kakumu 319 was on scene. Ofcr. Kakumu had separated
Suspect HAYS, NADINE KAY and the TSA screener. Suspect HAYS, was
seated in the waiting area of the terminal.

*#1*

Ofcr. Albaro and I conducted interviews of the TSA personnel involved.
TSA screener TETTEH, TESTAD #64328 said, S/HAYS entered the
screening area with several items of carry on. Because of the carry on items
S/HAYS was selected for additional screening. One of the items selected for
further screening was an ice chest S/HAYS wanted to take on the aircraft.

TSA screener TETTEH explained to S/HAYS the items in the ice chest were
not allowed on board the aircraft, that she could surrender the items and they
would be disposed of, or she could place them inside her check in luggage.
TSA screener TETTEH said that S/HAYS wanted to drink one of the sodas
in the ice chest. TSA screening protocol does not allow passengers to reach
into luggage that is being searched, nor can passengers open and drink from
containers brought into the screening area. S/HAYS had become
uncooperative and was yelling at the TSA screener. TSA screener TETTEH
called for her supervisor.

*#2*

TSA supervisor ATKENS, TANYA #64247 went through the TSA protocol
concerning carry on items with S/HAYS. S/HAYS wanted to drink one of
the sodas reached into the ice chest and said I'm going to drink the soda
now.  S/HAYS was advised by TSA supervisor ATKENS to stop. As per
TSA protocol supervisor ATKENS picks up the ice chest to escort S/HAYS
out of the screening area. S/HAYS grabs supervisor ATKENS left arm and

**EXHIBIT 2 --- PAGE 1 OF 2**

*40*

COPY

tries to take the ice chest from her. Both S/HAYS and supervisor ATKENS
are pulling back and forth on the ice chest.

S/HAYS make's a fist and strikes TSA supervisor on the left hand, while
grabbing her arm. After my investigation I asked TSA supervisor ATKENS
if she was desirous of prosecution on S/HAYS for battery?  Supervisor
ATKENS said yes. I explained this would be a citizen's arrest and what
would be required of her during the proceedings. Victim ATKENS requested
a citizen's arrest form which is attached with this report.

I explained to S/HAYS that she was being placed under citizen's arrest for
242 P.C.  Battery on a person. At which time she was taken into custody.
S/HAYS was advised of her rights under MIRANDA. Ofcr. ALBARO  309
asked S/HAYS if she wished to talk about the incident. S/HAYS said yes
that she wanted to talk about it. S/HAYS said that she did not know what
really happened. That she was travelling with her invalid mother to
Nashville, Tenn. That she did not understand what was going on. I did not
ask any further questions from S/HAYS other than what was required during
the booking process at Burbank City Jail.  The signed Admonition of Rights
Card is attached with this report.

The screening area is under video surveillance. I requested our dispatch to
replay and copy the incident on a DVD disk. That DVD disk has been placed
into evidence in the Burbank Police property room under DR # 09-03631
with BAR CODE #  100201987

**EXHIBIT 2 --- PAGE 2 OF 2**

**EXHIBIT 3 --- FOURTH AMENDED COMPLAINT**

1  NADINE HAYS
   370 Highland Hills Drive
2  Camarillo, CA 93010
   (805) 484-4452
3  (818) 474-7676 – Fax
   NadineHays@aol.com
4  In Pro Se

5

6

7                  UNITED STATES DISTRICT COURT,

8      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DISTRICT

9

10 | NADINE HAYS, an individual;          | Case No. **CV11-3198 DMG (PJW)**
   |                                      | Assigned for all purposes to:
11 |          Plaintiff,                  | Judge:  DMG (PJW)
   |                                      | Dept:  Currently Courtroom 23 for PJW
12 | vs.                                  |
   |                                      | **FOURTH AMENDED COMPLAINT**
13 |                                      |
   |                                      | **DEMAND FOR JURY TRIAL**
14 | UNITED STATES OF AMERICA,            |
   | DEPARTMENT OF HOMELAND SECURITY,     |
15 | TRANSPORTATION SECURITY              |
   | ADMINISTRATION ("TSA"),              |
16 | STEPHEN WALKER ("WALKER")            | Original Complaint Filed:
   | KELLY BERG ("BERG"),                 | 4/14/11
17 | BURBANK-GLENDALE-PASADENA            | Second Amended Complaint Filed:
   | AIRPORT AUTHORITY ("BGPAA"),         | 10/10/12
18 | BURBANK-GLENDALE-PASADENA            | Third Amended Complaint Filed:
   | AIRPORT AUTHORITY POLICE,            | 1/14/2013
19 | DEPARTMENT ("BGPAAPD"),              |
   | OFFICER GREEN ("GREEN"),             | Trial Date:
20 | OFFICER ALBARO ("ALBARO"),           | None
   | DOE 1: the heavy-set TSA supervisor; | Discovery Cut Off:
21 | DOE 2: the thinner TSA screener;     | None
   | DOES 3-10                            |
22 |                                      |
23 |                                      |
24 |          Defendants                  |
25

26

27

                     **FOURTH AMENDED COMPLAINT**
28

**JURISICTION AND VENUE**

1. This is a civil action brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).* The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 2201. This Court also has supplemental jurisdiction over the pendent state law claims because the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C., Section 1367.

2. This action arises under the Civil Rights Act of 1871, the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States  Constitution, 42 USC §§ 1983, 1985, and 1986,  Bivens, California Government Code, California Civil Code, California Penal Code, and under California common law.

3. As far as Plaintiff is aware, the unlawful conduct and illegal practices alleged in this Complaint were committed in the Central District of California. Venue therefore lies in this district, pursuant to 28 U.S.C., Sections 1391(b).

**INTRODUCTION**

4. Plaintiff has the following questions of public concern and to which, through this lawsuit, will hopefully find the answers.

    1. Is it acceptable for Federal agents to lie and for their actions to harm another person?

    2. Is it acceptable for law enforcement officers to violate the law and not be appropriately disciplined for their illegal acts?

5. Plaintiff filed her Original Complaint in the Los Angeles Federal District Court on April 14, 2011. Because of the complexity and size of this case, there were a large number of defendants and a large number of Claims For Relief.

**FOURTH AMENDED COMPLAINT**

2                                                3/24/15

6.  Defense counsels tried desperately to have Plaintiff's case dismissed.  When Plaintiff tried to condense her case (First Amended Complaint), she was told there were no facts and she was making "bald assertations".  When she tried to furnish details to illustrate that there were facts to substantiate her claims (Second Amended Complaint), the result was a very large complaint.

7.  Defense counsels made a Motion For A More Definite Statement.

8.  On December 12, 2012 Magistrate Judge Patrick Walsh granted Defendants motions for a more definite statement, which became moot as Plaintiff was granted leave to amend her complaint and to submit a Third Amended Complaint.  Judge Walsh was very adamant that Plaintiff only address her Bivens and 42 U.S.C. § 1983 claims in her Third Amended Complaint.  At the time Plaintiff was suffering severely from PTSD and it was difficult, in fact it was impossible, for her to focus on these simple claims when she knew about corruption that was far worse than her custodial arrest and incarceration.  Consequently Plaintiff's Third Amended Complaint expanded on issues beyond the day of her arrest.

9.  On March 24, 2015 Plaintiff asked the Court for leave to amend her Third Amended Complaint so that she could focus on the material facts of this case and not confuse the Court.  This is Plaintiff's proposed Fourth Amended Complaint.

10.  Although Plaintiff's case had been dismissed with prejudice by Judge Dolly M. Gee on December 30, 2014, Plaintiff has made numerous requests for reconsideration and clarification to the Court in order to avoid doing an appeal, which would only stretch out this case even longer.  There is no doubt in Plaintiff's mind that with all of the facts known, this case would be remanded.

**FOURTH AMENDED COMPLAINT**

3                                3/24/15

# FACTS COMMON TO ALL CLAIMS FOR RELIEF

11. Plaintiff, Nadine Hays, entered Bob Hope/Burbank Airport in Burbank, California on Thursday, April 16, 2009 at approximately 12:15 pm with her 93-year old mother, Eleanor Albrecht ("ALBRECHT") and her mother's caregiver Mele Kuli ("KULI").

12. Plaintiff had a cooler with food (salami, cheese, grapes, cottage cheese, yogurt and applesauce) and beverages (milk, diet soda) for her elderly mother.

13. When Plaintiff entered the screening area, DOE 2, the thinner TSA screener, told Plaintiff she could not take the foods and liquids in the cooler on the plane even though Plaintiff explained to her that they were medically necessary items for her 93-year old mother.

14. Plaintiff explained to DOE 2 that she had called TSA about the food and liquids and that they had told her it was alright for a person with medical needs and that the screeners were trained on how to handle the situation. DOE 2 still refused to allow the food to pass through the screening area. Plaintiff asked for a supervisor.

15. When the heavy-set supervisor, currently known as DOE 1, inspected the cooler, she concurred with DOE 2 that the food and beverage items could not go on the plane. DOE 1 closed up the cooler, and, without Plaintiff's permission, walked away from Plaintiff with the cooler. Neither DOE 1 nor DOE 2 informed Plaintiff what they intended to do with the cooler and food.

16. Plaintiff left the screening area and was able to stop the two agents.

17. Plaintiff pleaded with the agents to put the cooler with her mother's wheelchair in the cargo section of the plane.

18. DOE 1 refused and said, "We're going to confiscate everything."

---

**FOURTH AMENDED COMPLAINT**

4                                              3/24/15

19. Plaintiff reached for the cooler as DOE 1 passed it to DOE 2; DOE 2 used excessive force as she refused to relinquish possession of the cooler back to its legal owner, namely the Plaintiff.

20. At approximately 12:59 p.m. a tug-of-war proceeded to occur over the cooler between DOE 2 and Plaintiff. This was a painful activity for Plaintiff, as she had severe arthritis in her hands. Plaintiff was acting in behalf of her disabled mother as she tried to gain back the cooler and food.

21. DOE 2 looked up at DOE 1 and smiled, as though she was having fun playing this game with Plaintiff.

22. Plaintiff then gave the cooler a strong tug, won possession of the cooler, and proceeded to dump the contents of the cooler into the nearest trash can. While doing this she announced to those in the area: "I want everyone here to witness the fact that if anything happens to my mother because these agents are not allowing the food to go on board, I will hold them personally responsible."

23. The TSA officials could see that Plaintiff was not going to "hold her tongue" regarding the acts of the agents. This was indeed a liability to them and Plaintiff's removal to deescalate the situation was eminent.

24. Plaintiff gathered her belongings, all of which had cleared the screening process. She then proceeded to the American Airlines boarding gate.

25. American Airlines agent MASSINGALE refused to allow Plaintiff to board the plane.

26. KAKUMU, the retention officer from the BGPAAPD, approached Plaintiff at approximately 1:02 pm and asked her to have a seat, to which she complied.

27. Plaintiff asked KAKUMU if she was going to be arrested and he told her no.

28. Shortly thereafter GREEN and ALBARO, the two arresting officers from the BGPAAPD, arrived.

**FOURTH AMENDED COMPLAINT**

3/24/15

29. DOE 1 gave a false police report claiming to have been the one involved in the tug-of-war over the cooler of snacks when in actuality it had been with DOE 2. She falsely claimed that Plaintiff had hit her in the struggle and that she wanted to have Plaintiff arrested.

30. Officers GREEN and ALBARO advised DOE 1 that it would have to be a citizen's arrest. GREEN and ALBARO, knowing the law, should have properly orchestrated the citizen's arrest, which they failed to do. By law, when a citizen's arrest is done it is the one placing the arrest on the individual that must inform the individual of their intention to have them arrested, what they did to deserved being arrested and under what authority or law the arrest is being made. Since none of this happened, the citizen's arrest was not properly executed per CPC § 841 and it was thereby unlawful.

31. DOE 1, knowing that the citizen's arrest would result in the confinement of Plaintiff, acted with great malice toward Plaintiff. By placing the citizen's arrest on Plaintiff, DOE 1 instigated the confinement of Plaintiff. DOE 1's actions were ratified by TSA. It was also ratified by agents DOE 2, WALKER, BERG, and other TSA DOE Defendants that witnessed the event in the airport and can be seen on the surveillance video.

32. GREEN and ALBARO, the two arresting officers, approached Plaintiff, had her stand up and put her hands behind her back. GREEN and ALBARO were acting under color of law as part of the BGPAAPD.

33. Both ALBARO and GREEN proceeded with an unlawful citizen's arrest.

34. Not only was the citizen's arrest improperly conducted, thus making it unlawful, but GREEN and ALBARO also acted unlawfully when they performed a custodial arrest on Plaintiff when they were only authorized by state statue to cite and release her (CPC § 853.6).

---

**FOURTH AMENDED COMPLAINT**

35. GREEN and ALBARRO used excessive force as they unlawfully[1] and without probable cause, cuffed Plaintiff, against her will.

36. GREEN and ALBARRO then walked Plaintiff from the terminal to the police car without telling her why they were doing this to her; this was unlawful[2]. Plaintiff broke down in tears. Since Plaintiff had not committed a crime, her 4th Amendment Constitutional right, to be free from unreasonable seizure, was violated.

37. After being in the patrol car for approximately 15 minutes, Plaintiff was finally told that one of the TSA agents (they did not specify which one) had placed a citizen's arrest on her for battery.

38. Plaintiff repeatedly told GREEN and ALBARO that she did not hit anyone.

39. If the tug-of-war was being considered "battery", then Plaintiff told the officers that she wanted to place a citizen's arrest on the agent that had her arrested.

40. GREEN and ALBARO unlawfully did not follow through with the Plaintiff's citizen's arrest.[3]

41. Plaintiff believes MORALES was a TSA supervisor that came into the terminal after Plaintiff had left the terminal. MORALES found out what had actually happened from

---

[1] CPC 853.6 states that if a misdemeanor crime occurs, an officer can "arrest" the individual by having them sign a citation where they agree to appear in court. This is sometimes called an RFC or release from custody. It also states: "Only if the arrestee refuses to sign a written promise, has no satisfactory identification, or refuses to provide a thumbprint or fingerprint may the arrestee be taken into custody."

[2] CPC § 841 states: "The person making the arrest must, on request of the person he is arresting, inform the latter of the offense for which he is being arrested."

[3] CPC § 142 states: "(a) Any peace officer who has the authority to receive or arrest a person charged with a criminal offense and willfully refuses to receive or arrest that person shall be punished by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both that fine and imprisonment."

---

**FOURTH AMENDED COMPLAINT**

DOE 1, namely that Plaintiff had argued with them over the cooler and that DOE 1, wanting to remove Plaintiff from the area, placed a citizen's arrest on her. The mere fact that MORALES made no disciplinary move illustrated her support of DOE 1's actions.

42. GREEN and ALBARO then used excessive force as they incarcerated Plaintiff at the Burbank jail against her will.

43. As soon as they arrived at the Burbank police station and jail, ALBARO left and Plaintiff was escorted solely by GREEN. When GREEN and Plaintiff entered the jail, there was one prisoner at the booking window, 1 prisoner cuffed to the handrail, and then Plaintiff.

44. Plaintiff had been having painful episodes prior to this trip with her knee. She knew that she would have to have a knee replacement sometime soon. In the meantime, when her knee throbbed with pain, the only way she could ease the pain would be to take her weight off of it.

45. While waiting to be booked, Plaintiff's knee started to hurt. Plaintiff politely asked GREEN if she could have a chair to sit down on. GREEN said that would not be possible. Consequently Plaintiff lowered her body to the ground in order to relieve the weight on her knee. All of this was done while her hands were still cuffed behind her. Both the pain and the embarrassment caused Plaintiff to cry uncontrollably.

46. Plaintiff finally asked GREEN if he could put one of the cuffs on the handrail like the prisoner in front of her.

47. GREEN finally obliged so Plaintiff could have one hand free to wipe her nose and eyes. Plaintiff faced constant humiliation for the next 5 hours, as she was moved from the booking window, to the holding cell, and finally to the dormitory.

48. Plaintiff panicked when she saw what appeared to be a holding cell. Multiple women were being placed in a room where one wall was completely transparent (either glass or plexiglass); this wall faced the central room for the police employees, so that everything

---

**FOURTH AMENDED COMPLAINT**

3/24/15

1    that went on in the cell was in clear view, including when the prisoner needed to use the

2    bathroom facility.  This was highly demoralizing and embarrassing to the Plaintiff, who

3    had never been in a jail before in her life.

4    49. Plaintiff was fearful of the type of women she was to share space with.

5    50. The booking process was a nightmare for Plaintiff.  Plaintiff was ordered to remove her bra

6    and shoelaces.  She then had a mug-shot photo taken followed by digital fingerprinting..

7    Finally she had thick black ink rolled onto her hands so that ink fingerprints could be done.

8    There was no soap and water furnished to clean up her hands after this horrific ordeal.  She

9    was only given a paper towel.  All of this was done without against Plaintiff's will and

10   without her permission.

11   51. Plaintiff attempted to use the phone in the dorm, but it was not functioning well.  She felt

12   totally isolated and heart-broken.

13   52. Plaintiff was finally released on her own recognizance around 9 PM that night.  No bail

14   was paid at the time of her release. When Plaintiff was released, her purse was returned

15   with all of the items having been removed, inventoried, and placed in a sealed plastic bag.

16   All of this was done without Plaintiff's permission.

17   53. Plaintiff's shoe laces and bra were also given back to her.  Plaintiff was not provided a

18   facility where she could go to get properly dressed before the Burbank police released her

19   to the street.  This was an extremely humiliating event considering the modesty standards

20   of Plaintiff.GREEN unlawfully wrote a falsified police report which demonized the

21   Plaintiff and made her appear as a violent individual.[4]  GREEN turned in a copy of the

22   video from the airport incident to the Burbank Police Department.

23

24   _____

25   [4] CPC 118.1 states: "118.1. Every peace officer who files any report with the agency which
     employs him or her regarding the commission of any crime or any investigation of any crime, if

26   he or she knowingly and intentionally makes any statement regarding any material matter in the

27                              **FOURTH AMENDED COMPLAINT**

28

54. When Plaintiff returned to Burbank from Nashville she once again had the cooler filled
with snacks for her mother.  When she approached a TSA agent at the Nashville Airport,
she explained what had happened to her at the Burbank airport a week prior.  The agent
appeared amazed that such unprofessional conduct had been tolerated.  The agent then
proceeded to examine the contents of the cooler and personally escorted Plaintiff to a
manned, but not busy, screening area.  The agent informed the screener that the items in
the cooler were OK and Plaintiff only had to do the standard personal procedures (removal
of shoes, etc.) in order to clear the inspection area.  The situation was handled very
professionally.  The food and liquid items were allowed to go on the plane.

55. While on her trip to Tennessee, on or about Monday, April 20, 2009, Plaintiff was formally
charged with the alleged crime of battery, a misdemeanor.  A criminal complaint that was
based upon that allegation was filed in Los Angeles County Superior Court in Burbank,
California.

56. On October 18, 2010 Plaintiff's criminal case was dismissed by the prosecution in
Plaintiff's favor.  TSA, abusing the judicial system and exercising unwarranted and
excessive force, continued to proceed with a civil administrative lawsuit where they wanted
to fine Plaintiff for "interfering with the screening process".  Plaintiff made a motion to
Judge MC KENNA for picture identification of DOE 1.  Plaintiff's motion was denied by
MC KENNA.  This was a denial of Plaintiff's right to due process, as she still had not been
able to identify her accuser.

---

report which the officer knows to be false, whether or not the statement is certified or otherwise
expressly reported as true, is guilty of filing a false report punishable by imprisonment in the
county jail for up to one year, or in the state prison for one, two, or three years. This section shall
not apply to the contents of any statement which the peace officer attributes in the report to any
other person."

---

**FOURTH AMENDED COMPLAINT**

3/24/15

57. DAUM, the TSA inspector, wrote a very inaccurate report that demonized Plaintiff and
made her appear guilty of battery, which she never did; this was a violation of Plaintiff's
due process rights under the 14th Amendment to the U.S. Constitution.  Because of this
report, the civil administrative action was filed against Plaintiff.  Plaintiff was able to have
this case dismissed on  December 3, 2010.

58. Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES
1 through 10, inclusive, and therefore sues such Defendants by said fictitious names.
Plaintiff will seek leave to amend this Complaint to allege their true names and capacities
when the same are ascertained.  Plaintiff is informed and believes, and thereupon alleges
that said DOE Defendants are in some manner intentionally or negligently responsible for
the wrongs and injuries hereinafter alleged and that Plaintiffs' injuries were proximately
caused by said acts.  The DOE Defendants are being sued in their individual and official
capacities.

59. The respective agencies for the above named Defendants, namely the United States, the
Department of Homeland Security, the TSA, the BGPAA, and the BGPAAPD acted
recklessly, intentionally, and with gross negligence and the lack of training was so reckless
or grossly negligent that deprivation of Plaintiff's constitutional rights was substantially
certain to result.

60. Plaintiff alleges that named Defendants' supervisors ratified the behavior of their
subordinates and can also hereby be held accountable under 42 U.S.C. § 1983.  If they had
not ratified the behavior they certainly would have sent Plaintiff a letter of apology for the
offenses committed and explained the disciplinary actions that had been taken on the
employee that violated Plaintiff's constitutional rights

61. Plaintiff is informed and believes, and on that basis alleges, that each and every act alleged
in this Complaint to have been done by the Defendants and/or their agents, officers and

**FOURTH AMENDED COMPLAINT**

employees, as herein alleged, was done by each Defendant, along with the DOE Defendants, in the execution and implementation of the official policies, practices and customs of the respective employers, i.e., the TSA, the BGPAA, and the BGPAAPD.  The mere fact that the agencies did not discipline their employees for their offensive acts substantiates the fact that the agencies did, in fact, ratify, and thereby adopt, the policy of it being acceptable to ignore an individual's constitutional rights, as well as their legal rights.

62. Plaintiff is informed and believes, and on that basis alleges that many of the Defendants were the agent and employee of many of the remaining Defendants and, in doing the things hereinafter alleged, were acting within the course and scope of such agency and employment with the knowledge, consent and ratification of the other Defendants.

63. Many of the Defendants in this case acted as individuals, and they also acted under color of authority and pretense of the laws, statutes, regulations, customs and usage of the United States of America, the State of California, the County of Los Angeles, the City of Burbank and under the authority of their official capacities.

64. Many of the above named Defendants, in doing the things complained of herein, acted with many of the other Defendants in conspiracy and with the knowledge and consent and at the instructions of the other Defendants.   Said acts occurred in the scope of and in furtherance of such conspiracy.  Said Defendants acted so, willfully, knowingly and purposefully, with the specific intent to injure Plaintiff.

65. All Defendants are sued as individuals and in their official capacity.

66. All Defendants that have claims against them under 42 U.S.C. § 1983 and Bivens are guilty of having deprived Plaintiff the rights protected by the federal Constitution.  Such deprivation was proximately caused by the conduct of the Defendant who acted under color of law.  Damages, as listed below, occurred.

**FOURTH AMENDED COMPLAINT**

67. Government entities have tried to be dismissed from this case due to Plaintiff's failure to state a custom or policy that violates her constitutional rights.  Plaintiff has pointed out that the agencies have indeed 1. Failed to train their employees on the law and civil rights of American citizens, 2. Failed to thoroughly investigate a crime, 3. Failed to discipline where illegal or unconstitutional acts have been committed.  Such activities are indeed a violation of Plaintiff's right to due process.

68. These agencies are consistently breaking the laws themselves, which is a violation of an American citizen's right to due process.

69. The mere fact that such unlawful and unconstitutional acts are allowed to be done and are not punished by the government entity are indeed proof that such conduct is acceptable and endorsed by the government entities and are an unwritten custom or policy.


## DAMAGES

70. As an actual and proximate result of the fact that Defendants criminally prosecuted Plaintiff, Plaintiff incurred attorneys' fees in excess of $15,000, incurred substantial personal expenses, suffered humiliation, mental anguish, nervous distress, sleeplessness, and disruption to her relationship with her family and husband, was unable to work due to stress caused by the prosecution and therefore lost income, and incurred medical and other health care expenses.

71. Plaintiff was physically and emotionally harmed by the unlawful acts of the Defendants. Plaintiff to date is still suffering severe psychological distress due to Post Traumatic Stress Disorder.  The symptoms Plaintiff currently suffers  include but are not limited to:

    1.  Short term memory loss,

    2.  Panic attacks when approached by officers of the law, when loud sirens are in the area,  and when traveling and having to go through the TSA screening process,

**FOURTH AMENDED COMPLAINT**

3/24/15

3.  Tangential thought process, and

4.  Depression.

72. Plaintiff has not been able to function as a mother, a grandmother, and a wife due to the stress of being maliciously prosecuted for a crime she did not commit.

73. Plaintiff's income and potential earning power has been greatly compromised due to this incident.

74. Plaintiff's family members were likewise traumatized by all of the events that occurred after the April 16, 2009 arrest.  Plaintiff and her family members are indeed crime victims. They have all suffered emotionally, financially, and socially due to the wrongdoings related to this case.

75. Plaintiff lost the support of both family and friends when they viewed the surveillance video.  Many thought Plaintiff had acted inappropriately in defying the orders of the TSA agents.

76. Plaintiff needed to find a new circle of friends. She became very active politically.

77. Plaintiff's family has had great difficulty adapting to the "new normal" as the psychologists have termed it…a change that needs to be accepted and not expected to ever go back to "the way things used to be."

## CLAIMS FOR RELIEF

### CLAIM FOR RELIEF #1
**Deprivation of Life, Liberty, and Property Without Due Process of Law**
**4th and 14th Amendment to the U.S. Constitution**
**42 U.S.C., Section 1983 – State agents**
**Bivens – Federal agents**
**Defendants:  DOE 1, DOE 2, GREEN, ALBARO, MORALES, DOE TSA agents that observed the incident and did not speak up for the truth**

---

**FOURTH AMENDED COMPLAINT**

78. Plaintiff reiterates paragraphs 1-77 above and incorporates such by reference herein.

79. Plaintiff's cooler was unlawfully seized by DOE 1, against Plaintiff's will and without probable cause.

80. DOE 1 then proceeded to file a falsified police report.  DOE 1 claimed to have been the one that did the struggle with Plaintiff over the cooler when in actuality it was with DOE 2.  DOE 1 made an unlawful citizen's arrest without probable cause, on Plaintiff and charged her with misdemeanor battery, a crime Plaintiff never committed.  DOE 1's acts were the catalyst for Plaintiff being arrested and incarcerated by GREEN and ALBARO, officers with the BGPAAPD.

81. GREEN and ALBARO incarcerated Plaintiff without her permission and without probable cause;  If GREEN and ALBARO had looked at the instant video available at the airport before arresting and incarcerating Plaintiff, they would have easily seen that DOE 1 was placing a falsified police report.  Since the officers did not see Plaintiff commit the crime, they owed Plaintiff the duty to do a thorough investigation.  Investigative work is indeed a part of due process.  They failed to do so, thus denying Plaintiff her right to liberty without due process of law.

82. GREEN and ALBARO's arrest of Plaintiff was unlawful for the following reasons:

   a. The citizen's arrest was not done properly and violated CPC § 841, which states that "the person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it."  DOE 1 did not tell Plaintiff that she was going to be arrested.  DOE 1 did not tell Plaintiff what caused her to want to arrest Plaintiff.  DOE 1 did not tell Plaintiff what the charge against her was going to be.  Because the citizen's arrest was not properly executed, it was unlawful. **THIS WAS THE MOST SERIOUS BLUNDER IN THIS ENTIRE CASE. IF A PROPER CITIZEN'S ARREST HAD BEEN DONE, THE REAL CRIMINAL, NAMELY DOE 1, THE TSA**

**FOURTH AMENDED COMPLAINT**

**SUPERVISOR, WOULD HAVE BEEN CAUGHT IN THE ACT OF**

**PLACING A FALSIFIED POLICE REPORT.  PLAINTIFF WOULD NOT**

**HAVE BEEN ARRESTED AND PLAINTIFF WOULD NOT HAVE BEEN**

**PLAGUED WITH PTSD FOR THE REST OF HER LIFE.**

    b.  Plaintiff was denied the right to face her accuser (6th Amendment to the U.S. Constitution).

    c.  GREEN and ALBARO were only authorized by state statute to do a "cite and release arrest" per CPC § 853.6. Because GREEN and ALBARO broke the law, they lost the cloak of qualified immunity,   Because GREEN and ALBARO broke the law and did a custodial arrest on Plaintiff, her rights protected by the 4th Amendment were violated.

83. All of the TSA agents that witnessed this incident at the airport knew what the facts were. They knew that the tug of war had been with DOE 2 and not DOE 1.  They knew the heavy-set supervisor was placing a falsified police report, yet they failed to speak up. Their failure to come forward with the truth added to the damages endured by Plaintiff. They allowed Plaintiff's reputation to be damaged and denied Plaintiff her right to liberty without due process of law.  If they had told the truth, the real criminal would have been prosecuted, namely DOE 1, the heavy-set supervisor, for filing a false police report and having Plaintiff arrested for a crime she never did.

84. Plaintiff believes MORALES was a TSA supervisor that talked with DOE 1and found out what had really happened.   MORALES had it in her power to approach Plaintiff in the patrol car, to apologize for DOE 1's illegal conduct, to have DOE 1 withdraw the citizen's arrest, and to get Plaintiff, her mother, and the caregiver out on the next available flight. MORALES, however, did not do this and by keeping the truth a secret she violated

**FOURTH AMENDED COMPLAINT**

3/24/15

Plaintiff's right to due process and acted as a co-conspirator with DOE 1 in enabling an unlawful arrest to be done.

## 'CLAIM FOR RELIEF #2
### Excessive Use of Force
### 4th Amendment to the U.S. Constitution
### 42 U.S.C., Section 1983 – State agents
### Bivens – Federal agents
### Defendants:  DOE 2, GREEN, ALBARO

85. Plaintiff reiterates paragraphs 1-84 above and incorporates such by reference herein.

86. DOE 2 used excessive force when she refused to give Plaintiff back her cooler.  This was a painful experience for Plaintiff, as she has severe arthritis in her hands and the pulling and tugging aggravated the arthritic joints.

87. GREEN and ALBARO used excessive force when they chose to physically detain and incarcerate Plaintiff for a misdemeanor crime.  By law the most extreme action allowed for a misdemeanor offense was a written citation.  GREEN and ALBARO violated this law. They handcuffed Plaintiff against her will, which was excruciatingly painful as Plaintiff has severe arthritis in her hands and wrists and the pressure of the tight handcuffs hurt. Their actions utilized excessive use of force, which traumatized Plaintiff, caused her to suffer an emotional breakdown, and gave her post-traumatic stress disorder (PTSD).

88. All agents were acting under color of state and/or federal law.  Plaintiff's constitutional right not to be subjected to use of excessive force was violated by Defendants.  The Defendants' acts were the proximate cause of the injuries claimed by Plaintiff.

## CLAIM FOR RELIEF #3
### Failure to Prevent Conspiracy of False Arrest and Imprisonment
### 4th Amendment to the U.S. Constitution
### 42 U.S.C., Section 1983 – State agents
### 42 U.S.C. Section 1985 – State agents
### 42 U.S.C. Section 1986 – State agents

**FOURTH AMENDED COMPLAINT**

17                                            3/24/15

**Bivens – Federal agents**
**Defendants:  TSA, DOE 1, DOE 2, GREEN, ALBARO, MORALES, all TSA agents that observed the incident and did not speak up for the truth**

89. Plaintiff reiterates paragraphs 1-88 above and incorporates such by reference herein. Defendants knew that DOE 1 had placed a falsified police report when she stated that she was the individual that had done the tug-of-war with Plaintiff when in actuality it had been with DOE 2.  Defendants knew that Plaintiff had committed no crime, yet they failed to intervene or speak up for Plaintiff.  Said negligence resulted in Plaintiff's incarceration and malicious prosecution, which caused PTSD which has permanent life-altering effects on its victims.

**CLAIM FOR RELIEF #4**
**Violation of Freedom of Speech**
**1st Amendment to the U.S. Constitution**
**Americans With Disabilities Act**
**Bivens – Federal agents**
**Defendants:  DOE 1**

90. Plaintiff reiterates paragraphs 1-89 above and incorporates such by reference herein.

91. Plaintiff believes that the illegal arrest initiated by DOE 1 was partially due to her making the public announcement that she would hold the agents responsible if anything happened to her mother because they were not going to allow the food to go on board for her.  They could easily see that Plaintiff wanted the public to become aware of the wrongdoings that were happening in the airport.   TSA's best way to minimize the public awareness was to remove Plaintiff from the premises.  Such a retaliatory act violated Plaintiff's constitutionally protected right to freedom of speech.

**CLAIM FOR RELIEF #5**
**Conspiracy to Prevent Freedom of Speech**
**1st Amendment to the U.S. Constitution**
**Americans With Disabilities Act**
**Bivens – Federal agents**

**FOURTH AMENDED COMPLAINT**

3/24/15

**Defendants:  DOE 1, DOE 2, WALKER, BERG, all DOE TSA agents that witnessed the
incident at the airport and failed to speak up**

92. Plaintiff reiterates paragraphs 1-91 above and incorporates such by reference herein.

93. Plaintiff was acting in behalf of her 93-year old mother, whose health mandated that she be
   able to keep food and liquids available as needed.  TSA has allegedly trained its employees
   regarding the special needs of the elderly.  The protocol was in place, but DOE 1 refused to
   follow the protocol and made a very vindictive decision when she decided to have Plaintiff
   arrested when Plaintiff had not broken a single law or regulation.

94. Not only was Plaintiff protected by the First Amendment to speak up and openly when her
   rights were being violated, but as an agent acting for her disabled mother she was also
   protected from retaliation by Title V of the Americans With Disabilities Act, which reads as
   follows:

### PROHIBITION AGAINST RETALIATION AND COERCION

SEC. 12203. *[Section 503]*

(a) Retaliation. - No person shall discriminate against any individual because such individual has
opposed any act or practice made unlawful by this chapter or because such individual made a
charge, testified, assisted, or participated in any manner in an investigation, proceeding, or
hearing under this chapter.

(b) Interference, coercion, or intimidation. - It shall be unlawful to coerce, intimidate, threaten, or
interfere with any individual in the exercise or enjoyment of, or on account of his or her having
exercised or enjoyed, or on account of his or her having aided or encouraged any other individual
in the exercise or enjoyment of, any right granted or protected by this chapter.

(c) Remedies and procedures. - The remedies and procedures available under sections 12117,
12133, and 12188 of this title *[sections 107, 203 and 308]* shall be available to aggrieved persons
for violations of subsections (a) and (b) of this section, with respect to subchapter I, subchapter II
and subchapter III, respectively, of this chapter *[title I, title II and title III, respectively]*.

As public servants the TSA employees should have been mindful of the fact that their

duty is to serve the public and not to harass the public.  In this incident all of the TSA agents that

**FOURTH AMENDED COMPLAINT**

3/24/15

1  were within the area saw the incident occur.  Each and every one of them could have intervened

2  and stopped the harassment that DOE 1 inflicted on Plaintiff as Plaintiff tried to protect her

3  mother's right to have her food and as Plaintiff tried to exert her First Amendment right and

4  speak up against the actions of DOE 1 and DOE 2.  Instead of speaking up, all of the TSA agents

5  in the area endorsed the unlawful act of DOE 1 and can therefore be considered to be co-

6  conspirators in the crime. The behavior or DOE 1 was especially despicable as the video clearly

7  shows her laughing at the abuse that was given to Plaintiff.

8  <center>**PRAYER FOR RELIEF**</center>

9  **WHEREFORE**, Plaintiff prays for judgment and relief against Defendants, and each of

10  them, as follows:

11  <center>**AS TO ALL CLAIMS FOR RELIEF**</center>

12  1.  For actual damages in an amount according to proof;

13  2.  For General and Special damages in an amount according to proof;

14  3.  For costs of suit incurred;

15  4.  Prejudgment interest;

16  5.  For a statutory civil penalty in the sum of $25,000, pursuant to <u>Civil Code, § 52(b);</u>

17  6.  For exemplary and punitive damages in an amount according to proof;

18  7.  For such other relief as the court may deem just and equitable.

19

20  <center>**DEMAND FOR JURY TRIAL**</center>

21  Plaintiff demands a jury trial as to all issues and claims that might be tried to a jury.

22  Respectfully submitted,

23  *Nadine Hays*

24  Nadine Hays

25  In pro se
   Dated: 3/24/15

26

27

28  <center>**FOURTH AMENDED COMPLAINT**</center>

UNITED STATES DISTRICT COURT                    JS-6
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 12-08585 DMG (PJWx) | Date | February 14, 2013 |
|---|---|---|---|

| Title | *Nadine Hays v. United States of America* | Page | 4 of 4 |
|---|---|---|---|

the United States' sovereign immunity for claims arising out of torts committed by federal employees."). In order to maintain a claim under the FTCA, a claimant "shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). A claim is deemed presented for purposes of Section 2675(a) when a party files "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Blair v. I.R.S.*, 304 F.3d 861, 864 (9th Cir. 2002) (citing *Warren v. United States Dep't of Interior Bureau of Land Mgmt.*, 724 F.2d 776, 780 (9th Cir. 1984) (*en banc*)). Because this exhaustion requirement is jurisdictional, it "must be strictly adhered to." *See Valadez-Lopez v. Chertoff*, 656 F.3d 851, 855 (9th Cir. 2011) (citing *Brady v. United States*, 211 F.3d 499, 502 (9th Cir. 2000)).

Plaintiff filed an administrative complaint regarding the April 16, 2009 incident on January 22, 2011. (*See* Declaration of Robert Grimes, ¶ 4, Ex. 1 [Doc. # 10-1].) The administrative complaint describes Plaintiff's altercation with TSA agents Tesseh Tetteh and Tonya Aikens and the resulting arrest for battery. (*Id.* at 14.) It claims that Agents Tetteh and Aikens, as well as two TSA screeners, made false statements to police and prosecutors about the nature of Plaintiff's conduct which resulted in Plaintiff's criminal prosecution. (*Id.*) The administrative complaint does not describe the subsequent events that give rise to Plaintiff's present claims, namely, Plaintiff's alleged discovery that Defendant Aikens was not the officer involved in the Burbank incident and fraudulently signed the Citizen's Arrest Form. (*See* Compl. at 3.) Indeed, Plaintiff wrote her administrative complaint prior to discovering Defendant Aikens' allegedly fraudulent actions, and therefore the administrative complaint could not have placed TSA on notice of the specific injuries arising out of that alleged fraudulent misconduct. *See Blair*, 304 F.3d at 864.

Plaintiff has failed to exhaust her administrative remedies with respect to the claims alleged in the Complaint. *See* 28 U.S.C. § 2675(a). Accordingly, the Court lacks subject matter jurisdiction over this action and Defendant's Motion to Dismiss is **GRANTED**. Any amendment of Plaintiff's claims would be futile and therefore the action is **DISMISSED** without prejudice to the filing of a complaint after exhaustion of administrative remedies. The February 22, 2013 hearing is **VACATED**.

**IT IS SO ORDERED.**

---

**EXHIBIT 4 --- PAGE 1 OF 1**

U.S. Department of Homeland Security

Office of Chief Counsel (TSA-2)
601 South 12th Street
Arlington VA 20598-6002



**Transportation
Security
Administration**

March 2, 2015

Nadine Hays
370 Highland Hills Drive
Camarillo, California 93010-1247

>    Re:    **Nadine Hays (TSA Control No. 2015021820686)**

Dear Ms. Hays:

This is in response to your administrative claim dated January 14, 2015, submitted to the
Transportation Security Administration (TSA) under the Federal Tort Claims Act (FTCA).

The subject matter from which the claim arises is the same as that of your previous
administrative claims presented to, and denied by, TSA. Accordingly, we are unable to accept
the claim for presentment and will take no further action on this matter.

Additional information about FTCA can be found in title 28, sections 1346(b), 1402(b), 2401(b),
and 2671-2680 of the United States Code and title 28, part 14 of the Code of Federal
Regulations. Thank you.

Sincerely,

Brett Barber

Brett Barber
Paralegal

# EXHIBIT 5 --- PAGE 1 OF 1

# Can a civil case be reopened if disposed?



Mark Swarthout Law & Legal Issues Supervisor

Under certain circumstances a civil case can be reopened. A party may be relieved from a final judgment in cases of mistake, inadvertence, surprise or excusable neglect. If such relief is granted, that effectively reopens the case for further proceedings.

Also, a case may be reopened if there is newly discovered evidence which would probably have altered the judgment. It would most likely have to be proved that the new evidence could not have been discovered sooner using due diligence.

A case may be reopened if it is dismissed without prejudice for a procedural matter such as failing to provide discovery, failing to file appropriate pleadings or even failing to appear for trial, a motion to reopen or restore the case to the active calendar may be made. Most dismissals for failing to provide discovery are routinely reinstated on motion if the required discovery is provided.

If a case is disposed of by way of summary judgment or on motion to dismiss at the end of a party's case, a motion for reconsideration may be made by the losing party. On rare occasions the trial judge might be persuaded that an error was made and reverse the decision rather than be taken up on appeal and have the appellate court reverse and remand.

Every civil case may be reopened if the prevailing party committed a fraud upon the court or if the judgment is void. A judgment may be void if the court had no jurisdiction to hear the case or if a party was not properly served or for various other reasons.

In general, cases that have been disposed of may never simply be refiled. They are either appealed or reopened. One instance where a case may refiled is where the court that disposed of the case never had jurisdiction to hear it. If it had no jurisdiction to hear it in the first place, it has no jurisdiction to hear it after reopening it.

**EXHIBIT 6 --- PAGE 1 OF 1**

Case 2:11-cv-03198-DMG-PJW   Document 330   Filed 04/10/15   Page 43 of 46   Page ID
#:3828
Case 2:11-cv-03198-DMG -PJW   Document 87-1   Filed 12/05/11   Page 1 of 2   Page ID
#:846

1 ANDRÉ BIROTTE JR.
United States Attorney
2 LEON W. WEIDMAN
Assistant United States Attorney
3 Chief, Civil Division
THOMAS K. BUCK
4 Assistant United States Attorney
California State Bar No. 70307
5      Room 7516, Federal Building
     300 North Los Angeles Street
6      Los Angeles, California 90012
     Telephone: (213) 894-3989 ]
7      Facsimile: (213) 894-7819
     Email: tom.buck@usdoj.gov
8
Attorneys for Defendants
9 Transportation Security Administration and Tesia Tetteh

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13 NADINE HAYS,         )   NO. CV 11-3198 DMG (PJW)

14     Plaintiff ,       )   CERTIFICATION OF THE UNITED
                  )   STATES ATTORNEY RE
15     v.            )   DEFENDANTS TONYA AIKENS,
                  )   TESIA TETTEH, AND STEPHEN
16 TRANSPORTATION   )   WALKER
SECURITY           )
17 ADMINISTRATION (TSA),  )
et al.              )
18     Defendants.     )

19 _____ )

20

21     I, André Birotte Jr., United States Attorney for the Central District of

22 California, pursuant to the provisions of 28 U.S.C. § 2679(d), and by virtue of the

23 authority vested in me by the Attorney General of the United States under 28 C.F.R.

24 § 15.3(a), hereby certify as follows:

25     1.    I have read the First Amended Complaint, filed July 25, 2011, in <u>Nadine</u>

26 <u>Hays v. Transportation Security Administration, et al.</u>, CV11-3198 DMG (PJW).

27     2.    On the basis of the First Amended Complaint, and all information

28 known to me, defendants Tonya Aikens, Tesia Tetteh, and Stephen Walker,

**EXHIBIT 7 --- PAGE 1 OF 2**    3    ATTACHMENT

Case 2:11-cv-03198-DMG-PJW Document 330 Filed 04/10/15 Page 44 of 46 Page ID
#:3829
Case 2:11-cv-03198-DMG -PJW Document 87-1 Filed 12/05/11 Page 2 of 2 Page ID
#:847

1   employees of the Transportation Security Administration, were acting within the

2   course and scope of their employment with the United States at all times material to

3   the events alleged in the First Amended Complaint.

4

5   DATED: 12/2/11

6

7                              ANDRE BIROTTE JR.
                               United States Attorney
8                              Central District of California

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT
**EXHIBIT 7 --- PAGE 2 OF 2**

## PROOF OF SERVICE – CIVIL

1. At the time of service I was over 18 years of age and not a party to this action.  My residence address is: 370 Highland Hills Dr.; Camarillo, CA  93010.

2. On 3/24/2015 I served a copy of the following document:

   **PLAINTIFF'S CLARIFICATION OF MISUNDERSTOOD MATERIAL FACTS;
   PLAINTIFF'S REQUEST FOR CLARIFICATION FROM THE COURT;
   PROPOSED FOURTH AMENDED COMPLAINT**; dated 3/24/2015

3. Persons served :

   Rodolfo F. Ruiz
   E-mail: rruiz@vrlawyers.com
   Representing: BURBANK-GLENDALE-PASADENA AIRPORT
   AUTHORITY, BURBANK-GLENDALE-PASADENA AIRPORT
   AUTHORITY POLICE DEPARTMENT, GREEN, ALBARO, NEAL,
   KAKUMU, FURGIVELE

   Carol A Humiston
   FAX: 818-238-5724
   Representing: BARLOW, BURBANK CITY ATTORNEY'S OFFICE,
   BURBANK POLICE DEPARTMENT, ROSS, WEI, BAKER, LA CHASSE,
   CREMINS, HAWVER, ROSS

   Mr. Thomas Buck
   E-mail: Tom.Buck@usdoj.gov6
   Representing: TETTEH, MORALES, WALKER, BERG, DAUM, SETOUDEH,
   TRANSPORTATION SECURITY ADMINISTRATION, DEPARTMENT OF
   HOMELAND SECURITY, UNITED STATES

   Signed: _____ .

   John A. Hays

   Date: 3/24/2015

---

**PROOF OF SERVICE**

USPS TRACKING NUMBER

9505 5000 1431 5082 0003 14

U.S. POSTAGE
**$5.95**
PM 2-DAY
93010 0006
Date of sale
03/23/15
08 2500
08307445 SSK

RECEIVED
CLERK, U.S. DISTRICT COURT

MAR 26 2015

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Clerk's Office ; Room G-8
Roybal for United States District Court
Central District of California
312 N. Spring Street
Los Angeles, CA 90012-4701