1

2                    UNITED STATES DISTRICT COURT

3                   CENTRAL DISTRICT OF CALIFORNIA
                           WESTERN DIVISION
4

5
    NADINE HAYS,                      )
6                                     )
                                      )
7          PLAINTIFF,                 )
                                      )
8          V.                         )
                                      )
9                                     )
    TRANSPORTATION SECURITY           )
10  ADMINISTRATION, ET AL.,           )   CV 11-3198-DMG(PJWX)
                                      )
11         DEFENDANTS.                )
                                      )   APRIL 5, 2013
12                                    )   (11:09 A.M. TO 12:10 P.M.)

13
                              HEARING
14          BEFORE THE HONORABLE PATRICK J. WALSH
                UNITED STATES MAGISTRATE JUDGE
15

16

17
    APPEARANCES:              SEE NEXT PAGE
18
    COURT REPORTER:           RECORDED; COURT SMART
19
    COURTROOM DEPUTY:         CELIA ANGLON-REED
20
    TRANSCRIBER:              DOROTHY BABYKIN
21                            COURTHOUSE SERVICES
                              1218 VALEBROOK PLACE
22                            GLENDORA, CALIFORNIA  91740
                              (626) 963-0566
23

24

25  PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
    TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

2

```
 1   APPEARANCES:  (CONTINUED)
     FOR THE PLAINTIFF NADINE HAYS:
 2
          NADINE HAYS
 3        PRO PER

 4
     FOR TRANSPORTATION SECURITY ADMINISTRATION, ET AL.:
 5
          STEPHANIE YONEKURA, ACTING
 6        UNITED STATES ATTORNEY
          LEON WEIDMAN
 7        CHIEF, CIVIL DIVISION
          ASSISTANT UNITED STATES ATTORNEY
 8        BY:  THOMAS BUCK
          ASSISTANT UNITED STATES ATTORNEY
 9        312 NORTH SPRING STREET
          LOS ANGELES, CALIFORNIA  90012
10
     FOR BURBANK AIRPORT POLICE DEPARTMENT, ET AL.:
11
          VANDERFORD & RUIZ LLP
12        BY:  RODOLFO F. RUIZ
                SEAN FRANCIS DALEY
13              ATTORNEYS AT LAW
          221 EAST WALNUT STREET
14        SUITE 106
          PASADENA, CALIFORNIA  91101
15
     FOR BURBANK POLICE DEPARTMENT:
16
          BURBANK CITY ATTORNEY'S OFFICE
17        BY:  CAROL ANN HUMISTON
                DEPUTY CITY ATTORNEY
18        275 EAST OLIVE AVENUE
          BURBANK, CALIFORNIA  91510
19

20

21

22

23

24

25
```

3

1                             I N D E X

2   CASE NO. CV 11-3198-DMG(PJWX)              APRIL 5, 2013

3   PROCEEDINGS:   HEARING ON DEFENDANTS' MOTIONS AND PLAINTIFF'S
                   MOTION
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1    LOS ANGELES, CALIFORNIA; FRIDAY, APRIL 5, 2013; 11:09 A.M.

2              THE CLERK:  PLEASE COME TO ORDER.

3              THIS UNITED STATES DISTRICT COURT IS NOW IN

4    SESSION.  THE HONORABLE PATRICK J. WALSH, UNITED STATES

5    MAGISTRATE JUDGE, PRESIDING.

6              CALLING CASE NUMBER CV 11-3198-DMG(PJW), NADINE

7    HAYS VERSUS TRANSPORTATION SECURITY ADMINISTRATION, ET AL.

8              COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE

9    RECORD.

10             THE COURT:  MS. HAYS, YOU CAN STATE YOUR NAME FOR

11   ME, PLEASE.

12             MS. HAYS:  NADINE HAYS, PLAINTIFF.

13             THE COURT:  THANKS.

14             HI, MR. BUCK.

15             MR. BUCK:  GOOD MORNING, YOUR HONOR.

16             YOUR HONOR, TOM BUCK, UNITED STATES ATTORNEY'S

17   OFFICE ON BEHALF OF TESIA TETTEH AND ALSO ON BEHALF OF THREE

18   FEDERAL ENTITIES -- THE UNITED STATES, THE DEPARTMENT OF

19   HOMELAND SECURITY AND TRANSPORTATION SECURITY ADMINISTRATION.

20             THE COURT:  THANK YOU, MR. BUCK.

21             HI.

22             MR. DALEY:  GOOD MORNING, YOUR HONOR.

23             SEAN DALEY ON BEHALF OF BURBANK-GLENDALE-PASADENA

24   AIRPORT AUTHORITY AND OFFICERS ALBARO, NEAL, AND GREEN.

25             THE COURT:  THANK YOU.

```
 1              MR. RUIZ:  GOOD MORNING, YOUR HONOR.

 2              RODOLFO RUIZ ON BEHALF OF THE SAME DEFENDANTS MR.

 3   DALEY JUST STATED.

 4              THE COURT:  MR. RUIZ.

 5              MS. HUMISTON:  GOOD MORNING, YOUR HONOR.

 6              CAROL HUMISTON ON BEHALF OF THE BURBANK CITY

 7   DEFENDANTS.

 8              THE COURT:  THANK YOU.

 9              WHO ELSE IS HERE WITH US TODAY?

10              HI.

11              MR. BUCK:  YOUR HONOR, I HAVE INVITED -- EXCUSE ME.

12   I HAVE INVITED MS. --

13              THE COURT:  HAVE A SEAT, GUYS.

14              MR. BUCK:  -- MS. TETTEH HAS BEEN --

15              THE COURT:  MS. TETTEH, THANKS FOR COMING.

16              MR. BUCK:  WHO IS A NAMED DEFENDANT.

17              THE COURT:  YOU'RE A CELEBRITY HERE.  I'VE BEEN

18   HEARING ABOUT YOU FOR YEARS.  NICE TO SEE YOU.

19              AND WHO'S WITH HER?

20              MR. BUCK:  AND ALSO WITH -- WITH MS. TETTEH IS

21   MR. DERRICK FORD, AN ATTORNEY WITH TRANSPORTATION SECURITY.

22              THE COURT:  THANKS FOR COMING, MR. FORD.

23              ALL RIGHT.  SO, I'M WORKING MY WAY THROUGH THESE

24   MYRIAD OF MOTIONS I HAVE AND JUST PLOWING AWAY.  AND, THEN,

25   MS. HAYS FILES A MOTION THAT SHE WANTS DISCOVERY.  AND, SO, I
```

6

1    KIND OF SLOWED DOWN.

2           BUT LET'S -- MAYBE YOU FOLKS HAVEN'T EVEN SEEN IT

3    YET.  SHE FILED IT TWO DAYS AGO I THINK.  LET ME SEE WHAT'S

4    GOING ON HERE.

5           DAVID, YOU DON'T BY ANY CHANCE HAVE THAT WITH YOU,

6    DO YOU?

7           I PROBABLY HAVE IT HERE.

8           (PAUSE IN PROCEEDINGS.)

9           THE COURT:  OKAY.  SORRY.  I HAVE MAYBE 30 OR 40

10   PLEADINGS IN HERE, WHICH I HAD IN ORDER ON MY DESK.  AND WHEN

11   I PUT THEM IN A STACK HERE I --

12          MS. HAYS:  YOUR HONOR?

13          THE COURT:  YEP.

14          MS. HAYS:  WAS IT THE ONE DATED 3/28 WHERE I WAS

15   ASKING FOR PROPER EXHIBITS FROM CAROL HUMISTON --

16          THE COURT:  FROM BURBANK.  YES.

17          MS. HAYS:  YEAH.  SHE HAD SUBMITTED A PLEADING.

18   AND IT -- SOME OF THE DVDS OR CDS IN IT WERE BLANK.

19          (THE COURT CONFERRING WITH CLERK.)

20          THE COURT:  ALL RIGHT.  YEAH, IT WAS -- ACTUALLY IT

21   GOT FILED -- MAYBE YOU MAILED IT ON THE 28TH.  IT WAS FILED

22   ON APRIL 1ST, "PLAINTIFF'S REQUEST FOR A COURT ORDER FOR THE

23   CITY OF BURBANK TO COMPLY WITH PLAINTIFF'S REQUEST FOR PROPER

24   EXHIBITS," ET CETERA -- AND WHICH I'VE INTERPRETED AS A

25   MOTION UNDER RULE 56(D) FOR ADDITIONAL DISCOVERY PRIOR TO MY

1   SUMMARY JUDGMENT MOTION.

2            LET ME TELL YOU WHERE WE ARE HERE.

3            THE BARBANK CITY DEFENDANTS HAVE FILED A MOTION FOR

4   SUMMARY JUDGMENT.  AND THEY SUPPLIED ADMISSIBLE EVIDENCE TO

5   SUPPORT THEIR MOTION, INCLUDING DECLARATIONS FROM THE

6   OFFICERS AND THE OTHER FOLKS THERE.

7            AND UNDER CELOTEX YOU HAD AN OBLIGATION TO SUBMIT

8   ADMISSIBLE EVIDENCE TO COUNTER THOSE, AND YOU HAVEN'T.  SO,

9   THEY'RE GOING TO BE ENTITLED TO SUMMARY JUDGMENT BECAUSE YOU

10  HAVE NOT GIVEN ME EVIDENCE TO COUNTER THOSE.

11           NOW, WHAT YOU'RE ASKING FOR HERE PRIMARILY ARE

12  THINGS THAT WOULD NOT AFFECT MY RULING.  OKAY.  YOU'RE

13  ASKING, FOR EXAMPLE, FOR THE VIDEO AND THINGS LIKE THAT.

14           WE HAVE THE VIDEO.  IN FACT, MR. BUCK HAS SUBMITTED

15  IT IN SUPPORT OF HIS MOTION TO DISMISS.

16           I'M GOING TO GIVE YOU A CHANCE.

17           I'M GOING TO SHOW YOU THE VIDEO NOW.  AND YOU TELL

18  ME WHETHER YOU HAVE A COPY OF IT.  AND IF NOT, HOW WOULD IT

19  CHANGE WHAT THE -- FOR EXAMPLE, SOME OF THE DEFENDANTS WERE

20  LIKE CITY ATTORNEYS.  THEY'RE NOT ON THE VIDEO.  THEY DON'T

21  HAVE ANYTHING TO DO WITH THE VIDEO.

22           WHAT DID YOU WANT TO SAY, MS. HAYS?

23           MS. HAYS:  THAT VIDEO HAS BEEN ALTERED.

24           THE COURT:  OKAY.

25           WHO HAS THE VIDEO?

8

1          MR. BUCK:  (INAUDIBLE.)

2          THE COURT:  MR. BUCK, WILL YOU PLAY THE VIDEO.  CAN

3   YOU DO THAT.

4          MS. HAYS:  NOBODY HAS THE ORIGINAL VIDEO, YOUR

5   HONOR.

6          THE COURT:  THEN -- THEN, WE'RE NOT -- I'M NOT GOD.

7   I CAN'T RECREATE THE ORIGINAL VIDEO.  WE'RE GOING TO GO WITH

8   WHAT WE HAVE.  AND WE HAVE A VIDEO.

9          MS. HAYS:  OKAY.  I CAN TESTIFY THAT THE TUG OF WAR

10  DID OCCUR.  BUT THE TUG OF WAR HAPPENED ABOUT 25 FEET AWAY

11  FROM THE SCREENING AREA.  AND I DO BELIEVE I WILL BE ABLE TO

12  FIND A WITNESS THAT CAN TESTIFY TO THAT FACT.

13         THE COURT:  THE TIME FOR DOING THAT WAS WHEN YOU

14  OPPOSED THE CITY'S MOTION FOR SUMMARY JUDGMENT.

15         MS. HAYS:  WELL, I'VE ALREADY GIVEN MY OWN

16  DECLARATION, YOUR HONOR.  AND THAT'S THE ONLY THING THAT I AT

17  THIS TIME CAN PRESENT BECAUSE I HAVEN'T BEEN ALLOWED TO GO

18  INTO DISCOVERY.

19         THE COURT:  WHERE'S YOUR DECLARATION?

20         MS. HAYS:  OH, THAT WAS -- DO YOU NEED A NEW

21  DECLARATION FOR THE NEW COMPLAINT?

22         THE COURT:  I DID.  YES, I DID.  WHEN YOU OPPOSE

23  THEIR SUMMARY JUDGMENT MOTION YOU FILE A DECLARATION IN

24  OPPOSITION, WHICH YOU DIDN'T DO.  NO, MA'AM.  I DO NOT GO AND

25  LOOK THROUGH THE 250 PLEADINGS THAT HAVE BEEN FILED IN THIS

1   CASE TO FIND OUT IF YOU'VE HAD A DECLARATION FILED.

2           WHAT I DO IS I LOOK AT HER MOTION.  I LOOK AT YOUR

3   OPPOSITION.  AND I LOOK AT HER REPLY.  AND RIGHT NOW THERE'S

4   NOTHING IN THERE UNDER OATH FROM YOU, NO EVIDENCE THAT'S

5   ADMISSIBLE IN THERE FROM YOU, TO COUNTER THEIR EVIDENCE.

6   OKAY.

7           MS. HAYS:  CAN I MAKE A MOTION FOR A CONTINUANCE OF

8   THIS?

9           THE COURT:  YOU KNOW --

10          MS. HAYS:  SO THAT I CAN -- BECAUSE AS A PRO SE

11  LITIGANT SUFFERING FROM PTSD --

12          THE COURT:  BUT WE GAVE YOU A ROWLAND NOTICE,

13  DIDN'T WE?

14          DAVID, GO TAKE -- GO TAKE A LOOK.

15          MS. HUMISTON, DID YOU PROVIDE A ROWLAND NOTICE?  DO

16  YOU KNOW WHAT THAT IS?  I KNOW YOU DON'T DO THIS A LOT.

17          MS. HUMISTON:  NO, I DON'T -- YOUR HONOR.  I DON'T

18  KNOW WHAT IT IS.

19          THE COURT:  WELL, WE'RE GOING TO SEE IF WE FILED

20  ONE.  A ROWLAND NOTICE IS WHEN THERE'S A PRO SE WE SEND THEM

21  A MINUTE ORDER THAT SAYS, THERE'S BEEN A MOTION FOR SUMMARY

22  JUDGMENT FILED AGAINST YOU.  YOU HAVE TO SUPPLY ADMISSIBLE

23  EVIDENCE TO COUNTER IT, OR YOU'RE GOING TO GET KICKED OUT OF

24  COURT.

25          I'M GOING TO SEE IF WE FILED ONE.  THAT'S USUALLY

1    OUR PRACTICE.

2              BUT YOU CAN HAVE A SEAT.  IT'S OKAY.

3              MS. HAYS:  THANK YOU.

4              THE COURT:  WHILE WE'RE WAITING FOR MY LAW CLERK TO

5    FIND THAT, MR. BUCK, WHENEVER YOU'RE READY -- AND IF YOU NEED

6    MORE TIME, YOU TAKE MORE TIME.

7              MR. BUCK:  YOUR HONOR, FORGIVE ME.  I THOUGHT I WAS

8    READY, AND IT SEEMS I DIDN'T -- I DIDN'T HAVE POWER, WHICH I

9    THOUGHT I DID.  SO, I NOW HAVE POWER AND --

10             THE COURT:  YOU CAN GO AHEAD WHENEVER YOU'RE READY.

11   YOU HAVE THE FLOOR.  I WANT YOU TO SHOW US THIS VIDEO.

12             AND, MS. HAYS, YOU'RE GOING TO TAKE A LOOK AT IT.

13             (PAUSE IN PROCEEDINGS.)

14             MR. BUCK:  HERE WE GO.

15             THE COURT:  OKAY.  HERE'S THE VIDEO.

16             MS. HAYS, YOU TELL ME --

17             OH, TOM, IT STOPPED.

18             YOU TELL ME WHEN WE GET TO THE PART WHERE YOU

19   BELIEVE IT'S BEEN ALTERED, PLEASE.

20             MS. HAYS:  WELL, LET ME POINT OUT THE FACT THAT I'M

21   OBVIOUSLY INVOLVED IN MY PERSONAL ACTIVITY.  SO, WHAT'S

22   ACTUALLY HAPPENING BEHIND ME, I'M -- I CAN'T TESTIFY IT'S

23   REAL OR IT'S NOT REAL.  BUT FROM --

24             THE COURT:  IT'S ALSO NOT RELEVANT.  WHAT'S REALLY

25   RELEVANT IS WHAT'S HAPPENING WITH YOU.

1        MS. HAYS:  OKAY.

2        THE COURT:  AND YOU WERE THERE.  AND YOU TELL US

3  WHICH PART --

4        MS. HAYS:  OKAY.

5        THE COURT:  -- THE UNITED STATES GOVERNMENT HAS

6  ALTERED IN AN EFFORT TO PREVAIL IN THIS ACTION.

7        MS. HAYS:  OKAY.

8        THE COURT:  ALL RIGHT.

9        MS. HAYS:  I WILL BE HAPPY TO.

10        (VIDEO PLAYING.)

11        MS. HAYS:  SO, THIS IS ME COMING THROUGH -- NOW,

12  LET ME ALSO POINT OUT THE FACT THAT IT IS TSA PROTOCOL THAT

13  THE ELDERLY DO NOT NEED TO REMOVE --

14        THE COURT:  I WANT TO STOP YOU.  I'M ASKING YOU, AT

15  THIS POINT YOU'RE GOING TO TELL US WHERE THE FEDERAL

16  GOVERNMENT HAS ALTERED THIS VIDEO --

17        MS. HAYS:  OH, OKAY.

18        THE COURT:  -- IN ORDER TO PREVAIL IN THIS ACTION.

19  ALL RIGHT.

20        MS. HAYS:  OKAY.

21        (VIDEO PLAYING.)

22        THE COURT:  DO YOU HAVE A COPY OF THIS VIDEO?

23        MS. HAYS:  I DO.

24        (VIDEO PLAYING.)

25        MS. HAYS:  ONE THING THAT WAS INTERESTING ABOUT

12

1   THIS IS THAT THIS VIDEO ACTUALLY HAD THE CAPABILITY OF BEING

2   WATER MARKED, WHICH WOULD HAVE -- I'M NOT GOING TO SAY

3   PREVENTED BUT MINIMIZED THE PROBABILITY OF IT BEING TAMPERED

4   WITH.  AND, YET, THE WATER MARK FEATURE WAS NOT USED.

5            THE COURT:  WE HAVE NOT REACHED ANY PART YET THAT'S

6   BEEN ALTERED IN YOUR VIEW; AM I RIGHT?

7            MS. HAYS:  I BELIEVE ALL OF THIS IS ACCURATE.

8            THE COURT:  OKAY.

9            (VIDEO PLAYING.)

10           MS. HAYS:  IT'S WHEN THE SCREENER --

11           THE COURT:  YOU'RE NOT ON THE SCREEN ANYMORE.

12           MS. HAYS:  NO, I'M OVER -- TRYING TO CALM MY MOTHER

13  DOWN.

14           (VIDEO PLAYING.)

15           MS. HAYS:  NOW, I HAD CHECKED WITH TSA BEFORE GOING

16  ON THIS TRIP, AND THEY SAID I NEEDED TO --

17           THE COURT:  I'M REALLY JUST TRYING TO ESTABLISH --

18           MS. HAYS:  OKAY.

19           THE COURT:  -- YOUR BASIS FOR SAYING THERE'S FRAUD

20  BEEN COMMITTED BY THE FEDERAL GOVERNMENT AND WHETHER THAT'S

21  ENOUGH TO DEFEAT A MOTION AT THIS POINT.

22           (VIDEO PLAYING.)

23           MS. HAYS:  IT'S INTERESTING TO NOTE AT THIS POINT

24  THAT YOU CAN'T SEE THE FACE OF WHO I'M DOING ALL OF THIS

25  WITH.

1           IT'S ALSO INTERESTING TO NOTE THAT THERE'S ONLY ONE

2    CAMERA ANGLE THAT'S BEEN PROVIDED.  THERE ARE ABOUT 12

3    DOUBLES IN THE CEILING.

4           (VIDEO PLAYING.)

5           MS. HAYS:  THAT GENTLEMAN I WOULD LIKE TO TALK TO.

6           RIGHT IN HERE FOR ABOUT A MINUTE.  SO, WE'RE AT 59.

7    SO, ABOUT FROM 59 TO ONE O'CLOCK IS THE PART THAT I BELIEVE

8    HAS BEEN EDITED AND BECAUSE --

9           THE COURT:  ALL RIGHT.  THIS DIDN'T HAPPEN IS WHAT

10   YOU'RE TELLING ME.

11          MS. HAYS:  THIS PART DID NOT HAPPEN THIS WAY.  NOW,

12   WHETHER SOME -- THIS CONVERSATION WITH THIS GENTLEMAN I NEVER

13   DID.

14          THE COURT:  THIS DIDN'T OCCUR?

15          MS. HAYS:  NO.  WHAT HAPPENED WAS I LEFT.  THE

16   AGENTS CLOSED UP THE COOLER.  AND THEY STARTED WALKING AWAY

17   TO THE LEFT WITH IT.

18          THE COURT:  DID YOU JUST STRIKE THE TSA AGENT?

19          MS. HAYS:  NO, I DIDN'T.  THIS IS -- THIS IS --

20          THE COURT:  THAT WAS -- THAT WAS CREATED BY THE

21   GOVERNMENT?

22          MS. HAYS:  YES.

23          THE COURT:  YOU SAW THAT IN THE VIDEO YOU WERE

24   STRIKING HER.  BUT WHAT YOU'RE ARGUING TO ME IS -- WHAT

25   YOU'RE CLAIMING --

14

1        MS. HAYS:  I NEVER STRUCK --

2        THE COURT:  THEY JUST --

3        MS. HAYS:  -- ANYBODY.

4        THE COURT:  -- COMPUTER GENERATED THAT LIKE THEY DO

5    IN HOLLYWOOD FOR A MOVIE.  THEY JUST MADE THAT --

6        MS. HAYS:  YOU'VE GOT IT, YOUR HONOR.

7        (VIDEO PLAYING.)

8        MS. HAYS:  AND THIS PART IS PROBABLY BACK TO --

9    WE'RE ABOUT AT THE MINUTE.  AND WHAT I DID WAS I --

10        THE COURT:  BUT THIS DIDN'T HAPPEN?

11        MS. HAYS:  NO.  NOW WE'RE BACK TO REALITY.  I THINK

12    THAT THIS IS THAT.  BECAUSE I DID DUMP THE CONTENTS INTO THE

13    TRASH.  I'M NOT SO SURE WHETHER THAT'S WHERE THE TRASH CAN

14    WAS.  I WAS THINKING THAT THE TRASH CAN WAS ACTUALLY ON THE

15    OTHER SIDE OF THE SCREENING AREA I DUMPED IT.  AND THEN I

16    CAME BACK TO THE SCREENING AREA AND GOT MY STUFF.  SO, THIS

17    PART COULD EVEN BE --

18        (VIDEO PLAYING.)

19        MS. HAYS:  NOW I'M LEAVING.  AND THAT DID HAPPEN.

20        THE COURT:  ALL RIGHT.

21        AND, MR. BUCK, IS THAT THE WHOLE THING?

22        MR. BUCK:  THAT'S ALL THAT HAS MS. HAYS IN IT.

23        THE COURT:  OKAY.

24        MR. BUCK:  YOU SEE THE PEOPLE COMING BACK IN TO THE

25    CHECKPOINT AREA.

15

1            THE COURT:  OKAY.  YOU CAN STOP IT.

2            MS. HAYS:  NOW, YOU MIGHT WANT TO ALSO KEEP GOING

3    BECAUSE IT'S KIND OF RELATED TO IT.

4            MR. BUCK:  OKAY.

5            MS. HAYS:  IS THAT ACCORDING TO THE REPORT, THE

6    POLICE REPORT, KAKUMU, WHO IS THE DETAINING OFFICER -- THERE

7    WERE THREE OFFICERS FROM THE AIRPORT.  KAKUMU IN THE REPORT

8    ALLEGEDLY -- I CAN'T REMEMBER THE EXACT WORDS, BUT IT WAS

9    LIKE SEPARATED THE INDIVIDUALS -- ME FROM THE PERSON I

10   ALLEGEDLY HIT.  IT WAS THE SCREENER THAT I WAS DOING THE TUG

11   OF WAR WITH.  AND NOBODY SEPARATED US.  WE SEPARATED

12   NATURALLY WHEN I WON POSSESSION.

13           (VIDEO PLAYING.)

14           MS. HAYS:  NOW, AS YOU CAN SEE, I'VE ALREADY GONE.

15   THIS IS KAKUMU COMING THROUGH RIGHT NOW.  SO, HE DID NOT

16   SEPARATE US.  HE DID NOT PREVENT ME FROM HITTING ANYBODY ANY

17   FURTHER.

18           AND IF YOU'LL NOTICE, SHE'S LAUGHING.  NOW THAT

19   PERSON THAT WAS LAUGHING I BELIEVE TO BE THIS WOMAN OVER HERE

20   WHO'S SAYING SHE'S TETTEH.

21           THE COURT:  YOU DON'T NEED TO POINT AT HER.  I KNOW

22   WHO YOU'RE TALKING ABOUT.

23           MS. HAYS:  OKAY.

24           THE COURT:  THIS IS NOT AT THE TIME TO CONFRONT

25   HER.  OKAY.

1           MS. HAYS:  I'M SORRY.

2           THE COURT:  ALL RIGHT.

3           SO, YOU THINK THAT WOMAN WAS TETTEH?

4           MS. HAYS:  NO.  THAT WOMAN -- THIS WOMAN THAT IS IN

5    THIS ROOM IS THE HEAVY SET SUPERVISOR WHO HAS LOST WEIGHT.

6           THE COURT:  OKAY.  ALL RIGHT.

7           MS. HAYS:  TETTEH IS NOT HERE; NOR IS AIKENS.

8           THE COURT:  SO, WHEN YOU'RE -- SO, WHAT THEY DID

9    WAS THEY PUT ANOTHER PERSON IN UNIFORM AND BROUGHT HER DOWN

10   HERE.  AND SHE REPRESENTED TO THE COURT --

11          MS. HAYS:  NO, THIS ONE LOOKS SIMILAR.

12          THE COURT:  SHE JUST TOLD ME HER NAME WAS TETTEH.

13   IS IT --

14          MS. HAYS:  BUT I -- I WILL CHALLENGE THAT, YOUR

15   HONOR.

16          THE COURT:  OKAY.  YOU BELIEVE SHE'S BEING

17   DECEPTIVE?

18          MS. HAYS:  YES, I DO.

19          THE COURT:  IS THERE ANYTHING ELSE YOU WANT ME TO

20   VIEW ON THE VIDEO BEFORE --

21          MS. HAYS:  I KNOW IT SOUNDS OUTRAGEOUS, YOUR HONOR.

22   BUT I KNOW THAT WE'VE GOT SOPHISTICATION THESE DAYS WITH

23   FACIAL RECOGNITION --

24          THE COURT:  I'M NOT SAYING THAT THE GOVERNMENT AND

25   HOLLYWOOD DOESN'T HAVE THE CAPABILITY OF ALTERING A VIDEO.

1          MS. HAYS:  THANK YOU.

2          THE COURT:  OKAY.  I'M NOT SAYING THAT CAN'T

3    HAPPEN.  I'M NOT -- I HAVE SOME PROBLEMS WITH ACCEPTING YOUR

4    VERSION.

5          AND I WANT TO TELL YOU SOMETHING ELSE.  FROM WHAT I

6    UNDERSTAND YOU RECEIVED THIS IN THE CONTEXT OF YOUR CRIMINAL

7    CASE.

8          MS. HAYS:  YOU GOT TO REMEMBER THAT FOR THE FIRST

9    YEAR I WAS HEAVILY MEDICATED.

10         THE COURT:  BUT I WANT TO TELL YOU THE POINT I'M

11   TRYING TO MAKE.  YOU HADN'T SUED THEM.  SO, THEY WERE

12   ALTERING THIS TAPE IN ANTICIPATION OF YOU LOSING YOUR

13   CRIMINAL CASE AND FILING A FEDERAL CIVIL RIGHTS ACTION.

14         MS. HAYS:  NO, YOUR HONOR.

15         THE COURT:  WHY NOT?

16         MS. HAYS:  NO.  THE ALTERATION -- OKAY.  THIS IS A

17   DIGITAL FILE.  IT CAN BE COPIED AND PASTED IN FIVE MINUTES.

18   MY FIRST CRIMINAL DEFENSE ATTORNEY ASKED FOR THE VIDEO LIKE A

19   COUPLE OF WEEKS AFTER THE INCIDENT.

20         THE COURT:  AND HE DIDN'T GET IT.

21         MS. HAYS:  HE DIDN'T GET IT FOR A COUPLE OF MONTHS.

22         THE COURT:  AND LATER WHEN YOU HAD ANOTHER LAWYER

23   AND YOU AND YOUR NEPHEW, I THINK, WENT DOWN TO THE STATION

24   AND YOU GOT A COPY OF IT.

25         MS. HAYS:  I DIDN'T GO DOWN.  JUST MY NEPHEW.

18

1          THE COURT:  OKAY.

2          MS. HAYS:  NOT MY NEPHEW, MY SON-IN-LAW.

3          THE COURT:  I'M SORRY, YOUR SON-IN-LAW.  HE WENT

4    DOWN AND GOT A COPY.  HE GOT THIS COPY.

5          MS. HAYS:  HE GOT THIS COPY.

6          THE COURT:  ALL RIGHT.  SO, LET'S JUST FOCUS ON THE

7    MATERIAL FACTS WE'RE TRYING TO DISCUSS RIGHT NOW.  AT THAT

8    TIME YOU WERE BEING PROSECUTED IN THE STATE COURT, CORRECT?

9          MS. HAYS:  CORRECT.

10          THE COURT:  YOU HAD NOT SUED THE FEDERAL

11    GOVERNMENT, CORRECT?

12          MS. HAYS:  CORRECT.

13          THE COURT:  SO, THE FEDERAL GOVERNMENT HAD TO ALTER

14    THIS TAPE FOR YOUR STATE COURT PROCEEDINGS.

15          MS. HAYS:  THEY DID.

16          THE COURT:  OKAY.  I GUESS ONE MOTIVE THEY WOULD

17    HAVE HAD WAS THEY KNEW YOU WERE GOING TO WIN YOUR STATE COURT

18    CASE AND SUE THEM.

19          MS. HAYS:  NO, THEY KNEW THAT IF I WERE FOUND NOT

20    GUILTY IN MY STATE SUIT CASE, THAT THEY WOULD HAVE A CIVIL

21    LAWSUIT FOR ALL OF THEIR VIOLATIONS.

22          THE COURT:  ALL RIGHT.  AND THEY WERE ANTICIPATING

23    THAT WHEN THEY ALTERED THE TAPE.

24          MS. HAYS:  ABSOLUTELY.

25          THE COURT:  OKAY.  HANG ON ONE SECOND.

1          (THE COURT CONFERRING WITH CLERK.)

2          THE COURT:  ALL RIGHT.  IF THERE'S ANYTHING ELSE

3    THAT YOU WANT ME TO SEE ON THIS, I'LL TAKE A LOOK AT IT.  BUT

4    WHAT YOU WANT IS THE TAPE THAT'S BEEN UNALTERED, CORRECT? --

5    THE ONE BEFORE THE FEDERAL GOVERNMENT ALTERED THE TAPE.

6          ALL RIGHT.  I HAVE A SENSE THAT THEY'RE GOING TO

7    TELL ME THAT THERE'S NO SUCH TAPE.  AND I CAN'T HAVE THEM

8    CREATE SOMETHING THAT DOESN'T EXIST.  ALL RIGHT.

9          BUT ANYWAY -- SO, EVEN IF YOUR THEORY WAS RIGHT

10   THAT THEY HAD ANOTHER TAPE, THEY ALTERED IT AND THEY GAVE YOU

11   THIS TAPE, THEY DON'T -- THEY'RE TELLING ME THEY DON'T HAVE

12   THAT OTHER TAPE.  THIS IS ALL THEY HAVE.

13         MS. HAYS:  OKAY.  WOULD IT NOT BE A PROPER PROTOCOL

14   THAT WHEN THERE IS AN ARREST, THAT ALL EVIDENCE BE PRESERVED?

15         THE COURT:  YOU KNOW, IS THIS LIKE POLICE PRACTICES

16   101.  ARE YOU ASKING ME WHAT I THINK THE WORLD SHOULD BE?  IT

17   SHOULD BE DIFFERENT THAN THE WORLD WE LIVE IN.

18         LET'S START WITH THE THINGS I CAN GET RID OF.  THE

19   JUDGES ARE ENTITLED TO ABSOLUTELY IMMUNITY.  THEY'RE

20   DISMISSED FROM THE LAWSUIT.  YOU MAY NOT SUE THE JUDGES.

21         IF YOU WANT TO SUE THE JUDGES YOU HAVE TO GO UP TO

22   THE NINTH CIRCUIT COURT OF APPEALS OR THE U.S. SUPREME COURT

23   AND HAVE THEM OVERTURN ABOUT 150 YEARS OF PRECEDENT.

24         BUT WHAT'S CONTROLLING ON ME IS JUDGES ARE

25   ABSOLUTELY IMMUNE FROM SUIT FOR ACTIONS TAKEN IN THEIR ROLES

20

1  AS A JUDGE.

2          MS. HAYS:  EVEN WHEN THEY'RE PROTECTING CRIMINALS.

3          THE COURT:  EXACTLY.  PRECISELY FOR THAT REASON.

4          MS. HAYS:  I CITED CASE LAW THAT SAID THAT WASN'T

5  TRUE.

6          THE COURT:  I UNDERSTAND WHAT YOU'RE SAYING.  AND I

7  DISAGREE WITH YOU.  AND MY ADVICE TO YOU IS YOU TAKE IT UP TO

8  THE NINTH CIRCUIT.  OKAY.

9          MS. HAYS:  OKAY.

10          THE COURT:  ALL RIGHT.  OR IF THE NINTH CIRCUIT

11  DISAGREES --

12          MS. HAYS:  WELL, THE JUDGES AREN'T MY PRIMARY

13  CONCERN.  I MEAN, I'M NOT IN --

14          THE COURT:  SO, LET'S GET RID OF THEM.

15          MS. HAYS:  OKAY.  FINE.

16          THE COURT:  WHY ARE WE SPENDING --

17          MS. HAYS:  JUDGES DISMISSED.

18          THE COURT:  THEY HAD NOTHING TO DO WITH THIS.  I

19  MEAN, FOR GOODNESS SAKES.

20          THE SAME WITH THE OFFICERS WHO ARE DOING THE

21  INTERNAL AFFAIRS INVESTIGATION AND THINGS LIKE THAT.  THEY

22  DIDN'T HAVE ANYTHING TO DO WITH YOUR VIOLATIONS.  AND EVEN

23  THOUGH PEOPLE YOU CLAIM RATIFIED WHAT THEY -- IT WAS ALREADY

24  OVER.  OKAY.

25          FOR YOU TO HAVE A CONSTITUTIONAL CLAIM AGAINST

21

1  SOMEBODY, YOU HAVE TO SUE THE PEOPLE WHO WERE INVOLVED IN IT

2  OR WHO WERE STANDING THERE AND COULD HAVE INTERCEDED ON YOUR

3  BEHALF, AND THEY DIDN'T.  THOSE ARE THE PEOPLE YOU CAN SUE.

4          BUT WE'RE GOING -- I'M GOING TO TRY AND GET A

5  LITTLE MORE ORGANIZED AND GO THROUGH THIS ONE AT A TIME.

6          ALL RIGHT.  THE JUDGES, I'M TELLING YOU NOW, I WAS

7  SCREENING IT.  I TOLD YOU YOU HAD TO PROVIDE ME AUTHORITY FOR

8  THE PROPOSITION THAT JUDGES CAN BE SUED, AND THEY'RE NOT

9  ENTITLED TO ABSOLUTE IMMUNITY.  I LOOKED AT THE CASES YOU

10 PROVIDED.  I DISAGREE WITH YOU.  THE JUDGES ARE OUT.  OKAY.

11         AND THIS IS THE WAY IT'S GOING TO GO.  THERE ARE

12 TWO JUDGES HERE.  JUDGE GEE, WHO I DON'T THINK YOU'VE SEEN

13 YET, AND ME.  I'M GOING TO RECOMMEND TO JUDGE GEE THAT SHE

14 DISMISS THE JUDGES WITH PREJUDICE, AND THAT THEY'RE OUT.

15 OKAY.

16         THE EXCESSIVE FORCE YOU'RE ALLEGING AGAINST THE

17 CITY ATTORNEYS, I'M NOT QUITE SURE I UNDERSTAND THAT.  I KNOW

18 THAT YOU SAID THAT THEY THREATENED YOU WITH IMPRISONMENT IF

19 FOUND GUILTY.  THAT ACTUALLY IS NOT A VIOLATION OF THE

20 CONSTITUTION.  THAT ACTUALLY IS THEIR DUTY.  WHEN THEY

21 PROSECUTE SOMEBODY WHO ASSAULTS SOMEBODY, AND THEY'RE

22 CONVICTED, THEY SEND THEM TO PRISON.  ALL RIGHT.  SO, THAT

23 CAN'T BE A CONSTITUTIONAL VIOLATION.

24         BUT ARE YOU SAYING THEY PUT THEIR HANDS ON YOU OR

25 ACCOSTED YOU AT SOME TIME IN THE HALLWAY?

1          MS. HAYS:  WELL, EXCESSIVE FORCE -- AS FAR AS THE

2    PROSECUTION IS CONCERNED IS OFFERING ME A PLEA BARGAIN WHEN

3    THEY KNOW THAT I AM INNOCENT.

4          THE COURT:  ALL RIGHT.  I'M GOING TO KICK OUT THE

5    CITY ATTORNEYS TOO.  THEY'RE GOING TO BE DISMISSED WITH

6    PREJUDICE.  OKAY.  YOU CAN'T SUE THE CITY ATTORNEYS FOR THEIR

7    ROLE AS CITY ATTORNEYS.

8          YOU HAVE JUST WATCHED A VIDEO THAT WAS PRESENTED TO

9    THE CITY ATTORNEYS IN WHICH THEIR -- IF THAT VIDEO WERE TRUE,

10   AND YOU REALLY HIT THE AGENT, THAT'S ASSAULT.  YOU CAN'T HIT

11   SOMEBODY EVEN WHEN THEY TAKE YOUR COOLER.  OKAY.

12         ANYWAY, WE'RE -- SO, THEY SAW THAT VIDEO.  THEY

13   READ THE ARREST REPORTS.  THEY THOUGHT YOU WERE WRONG, AND

14   THEY PROSECUTED YOU.  AND DURING THAT PROCESS THEY THREATENED

15   THAT IF YOU WERE FOUND GUILTY, YOU WERE GOING TO GO TO JAIL.

16         THE FEDERAL CONSTITUTION DOES NOT PROHIBIT ANY OF

17   THAT CONDUCT.

18         MS. HAYS:  BUT THEY'RE DEFENDING A FELON.

19         THE COURT:  OKAY.  I UNDERSTAND THAT'S YOUR

20   POSITION THEY'RE DEFENDING A FELON.  THEY THINK THEY WERE

21   PROSECUTING A FELON.  YOU.  AND THEY ARE ENTITLED TO

22   IMMUNITY.  I'M GOING TO LET THE CITY -- THE PROSECUTORS GO.

23         MS. HAYS:  WILL THAT DECISION CHANGE IF I AM

24   ALLOWED DISCOVERY AND I FIND SOMETHING TO THE CONTRARY?  ARE

25   THESE STATEMENTS THAT YOU'RE MAKING ABSOLUTE, OR ARE THEY

23

1    SUBJECT TO CHANGE IF WHAT I AM CLAIMING CAN BE SUBSTANTIATED?

2            THE COURT:  THEY'RE GOING TO BE DISMISSED WITH

3    PREJUDICE AT THIS STAGE.  IF AT A LATER POINT YOU WANTED TO

4    ASK JUDGE GEE OR ME TO RECONSIDER THAT, WE WOULD DO THAT.

5    BUT I'M NOT GOING TO ALLOW YOU TO HAVE DISCOVERY ON THE

6    JUDGES OR THE PROSECUTORS.  SO, IF YOU -- YOU KNOW --

7            MS. HAYS:  NO, I'M SAYING IF OTHER INFORMATION --

8            THE COURT:  RIGHT.

9            MS. HAYS: -- BECOMES AVAILABLE --

10           THE COURT:  THEN YOU CAN COME BACK AND SEE US, AND

11   WE'LL SEE --

12           MS. HAYS:  AND THERE'S NOT A TIME LIMIT LIKE 30

13   DAYS?

14           THE COURT:  NO, THERE'S NOT A TIME LIMIT.

15           MS. HAYS:  FOR RECONSIDERATION.

16           THE COURT:  NO, THERE'S NOT -- THERE'S NOT A TIME

17   LIMIT BECAUSE WHEN I DISMISS THE JUDGES AND THE PROSECUTORS

18   WITH PREJUDICE, I'M NOT ISSUING A JUDGMENT IN THEIR FAVOR.

19   I'M JUST ENTERING AN ORDER.  SO, THE JUDGMENT WON'T BE FINAL

20   UNTIL EVERYBODY IS OUT OF THIS CASE, AND THAT'S NOT GOING TO

21   OCCUR FOR SOME TIME.

22           ALL RIGHT.  LET'S GO WITH THE NEXT, WHICH -- THE

23   ONES ARE A LITTLE BIT EASIER.  THE FEDERAL GOVERNMENT HAS

24   MOVED TO DISMISS THE FEDERAL ENTITIES -- THE UNITED STATES,

25   THE DEPARTMENT OF HOMELAND SECURITY, AND TSA.  THEY ARE

24

1    SUBJECT TO SOVEREIGN IMMUNITY.  BIVENS DID NOT WAIVE

2    SOVEREIGN IMMUNITY.  IN FACT, BIVENS WAS NOT EVEN THE

3    GOVERNMENT WAIVING ANYTHING.  IT WAS THE U.S. SUPREME COURT

4    DETERMINING THAT OFFICERS COULD BE SUED FOR THEIR ROLES IN

5    THEIR -- WHEN THEY'RE ACTING IN THE COURSE AND SCOPE OF THEIR

6    EMPLOYMENT.  ALL RIGHT.

7              I AM GOING TO --

8              MS. HAYS:  YOUR HONOR.

9              THE COURT:  YEP?

10             MS. HAYS:  ON THAT -- AND I HAVE STATED THIS IN MY

11   PLEADINGS -- THAT I BASICALLY HAVE LAID EVERYTHING OUT ON THE

12   TABLE -- ON MY STRATEGY AND EVERYTHING ELSE.  AND I WASN'T

13   GOING TO USE BIVENS.  I DON'T LIKE BIVENS ANYWAY BECAUSE HE

14   REALLY WAS GUILTY.  HE REALLY WAS A DRUG DEALER, YOU KNOW.

15   SO, I JUST -- FOR PRINCIPLE EVEN I DON'T WANT TO USE BIVENS.

16   BUT I AM CLAIMING CIVIL CONSPIRACY IN THIS CASE.  OKAY.

17             THE COURT:  YEP.

18             MS. HAYS:  WHEN I DO THAT, I CAN SAY THAT THE

19   FEDERAL AGENTS CONSPIRED --

20             THE COURT:  YOU CAN.  I'M NOT SAYING THE FEDERAL

21   AGENTS ARE OUT.

22             MS. HAYS:  -- WITH STATE AGENTS.  AND I CITED CASE

23   LAW WHERE THE FEDERAL AGENTS THEN CAN BE HELD RESPONSIBLE.

24             THE COURT:  UNDER 1983?

25             MS. HAYS:  YES.

25

1          THE COURT:  YOU KNOW, WE'RE GOING TO TAKE -- I'LL

2    TAKE A CLOSER LOOK AT THAT.  MY INITIAL INCLINATION IS TO SAY

3    NO.  BUT I'M TALKING ABOUT THE AGENCIES RIGHT NOW.

4          MS. HAYS:  OKAY.

5          THE COURT:  THE AGENCIES, THE BODIES OF THE

6    GOVERNMENT THEY ARE NOT SUBJECT TO SUIT.  I'M DISMISSING

7    THEM.  OKAY.

8          MS. HAYS:  BUT, YOUR HONOR, I ALSO CITED CASE LAW

9    WHERE IF YOU'RE GOING THE DIRECTION OF 1983 FOR THE AGENTS,

10   AND JUST AS WITH A MONELL CLAIM, THE AGENCY, IF WITH PROPER

11   DISCOVERY YOU SHOW THAT INDIVIDUALS WITHIN THE AGENCY

12   RATIFIED THE ACTIONS OF THEIR AGENTS, THEN, THE AGENCY CAN BE

13   HELD RESPONSIBLE.  AND THAT SAME --

14         THE COURT:  YOU AND I ARE JUST GOING TO HAVE TO

15   DISAGREE ON THAT ONE.  OKAY.

16         MS. HAYS:  YEAH.

17         THE COURT:  YEAH.

18         MS. HAYS:  OKAY.  I TRIED.

19         THE COURT:  ALL RIGHT.  WE'VE HAD SOVEREIGN

20   IMMUNITY SINCE 1776.  AND WHEN YOU SAY THAT THE AGENTS

21   CONSPIRED IT DOESN'T WAIVE -- IT DOESN'T WIPE OUT 235 YEARS

22   OF LAW.  200- -- OKAY.  YOU CAN APPEAL MY RULINGS IF YOU

23   DISAGREE WITH ME.

24         ALL RIGHT.  MR. BUCK, YOU ALSO MOVED TO DISMISS.

25         YOU DON'T HAVE TO GET UP.

1          YOU ALSO MOVED TO DISMISS ON BEHALF OF AGENT

2     TETTEH.  AND YOU BASE IT IN PART ON THE VIDEO THAT I'VE NOW

3     WATCHED.  I DON'T KNOW IF YOU REMEMBER.  I THINK WE WATCHED

4     IT EARLIER ON.  I'VE SEEN IT SEVERAL TIMES NOW.  I WANT TO

5     TELL YOU WHAT MY PROBLEM IS.

6          I BELIEVE THAT I'M -- WHEN I REVIEW THIS VIDEO AND

7     MAKE FACTUAL DETERMINATIONS IT CONVERTS YOUR MOTION TO

8     DISMISS INTO A SUMMARY JUDGMENT MOTION.  WE DIDN'T GIVE HER

9     NOTICE.  AND I CAN'T DO THAT.

10          MR. BUCK:  YOUR HONOR, IF I MAY.

11          THE COURT:  OF COURSE.

12          MR. BUCK:  THE VIDEO -- AND I'M SURE THE COURT

13     NOTICED THIS.  THE VIDEO IS REFERENCED IN THE COMPLAINT.

14          THE COURT:  IT'S REFERENCED, BUT IT'S NOT RELIED

15     ON.  I LOOKED AT THAT SPECIFIC ISSUE.

16          MR. BUCK:  YES.

17          THE COURT:  AND THERE IS CASE LAW IN THE NINTH

18     CIRCUIT THAT SAYS WHEN THEY ATTACH DOCUMENTS AND/OR EVIDENCE

19     TO THE COMPLAINT AND RELY ON IT IN SUPPORT OF THEIR

20     COMPLAINT, THAT I CAN CONSIDER THAT IN RULING ON A MOTION TO

21     DISMISS.  I DON'T FEEL THAT REFERENCING IT WAS ENOUGH TO

22     INCORPORATE IT INTO THE COMPLAINT.

23          IF YOU DISAGREE WITH ME -- I'M GOING TO TAKE

24     ANOTHER LOOK AT THAT.

25          MR. BUCK:  OKAY.

1          THE COURT:  ALL RIGHT.  AND I UNDERSTAND THE POINT

2   YOU'RE MAKING.

3          MR. BUCK;  IF I MAY, YOUR HONOR, I BELIEVE --

4          THE COURT:  GO AHEAD.

5          MR. BUCK: -- THAT THE LAW IS CLEAR THAT YOU DON'T

6   NEED TO ATTACH.  THERE ARE CASES THAT HAVE SO HELD.

7          THE COURT:  NOT NECESSARILY ATTACH BUT RELY ON.

8   AND I THINK -- I LOOKED FOR THAT THROUGH THE COMPLAINT --

9          MR. BUCK:  YES.

10         THE COURT: -- FOR THAT SPECIFIC THING.  IF SHE HAD

11  RELIED ON IT --

12         MR. BUCK:  YES.

13         THE COURT: -- AND THIS IS WHAT HAPPENED AND

14  THINGS.  BUT ACTUALLY WHAT SHE'S TELLING US, AND WHAT SHE

15  SAID BEFORE, IS SHE'S NOT RELYING ON IT BECAUSE SHE THINKS

16  IT'S FAKE, AT LEAST THE PARTS THAT ARE CRITICAL.

17         SO, NOW I HAVE TWO PROBLEMS.  ONE IS IS I DON'T

18  KNOW THAT -- SINCE SHE DIDN'T ATTACH IT AND DIDN'T

19  NECESSARILY RELY ON IT.  SHE ONLY REFERRED TO IT.  IT'S KIND

20  OF SQUASHY OR SQUISHY.  SINCE SHE'S NOW ARGUING THAT IT'S

21  FRAUDULENT, THEN, I REALLY HAVE A PROBLEM RELYING ON IT.

22         MR. BUCK:  YOUR HONOR, MY RECOLLECTION IS THAT SHE

23  STATED THAT -- IN HER COMPLAINT THAT IF CERTAIN OFFICERS HAD

24  ONLY LOOKED AT THE VIDEO, THEY WOULD HAVE KNOWN NOT TO TAKE

25  CERTAIN ACTIONS.  AND I DON'T RECALL PRECISELY WHAT THAT

1    ACTION WAS.  IT MAY HAVE BEEN THE ARREST.  IT MAY HAVE BEEN

2    SOMETHING ELSE.  BUT IT DID SEEM TO ME THAT THERE WAS MORE

3    THAN JUST REFERENCE.

4              THE COURT:  OKAY.

5              MR. BUCK:  THAT THERE WAS RELIANCE.  AND AT THIS

6    STAGE, OF COURSE, SHE'S NOW TELLING US THAT SHE THINKS THAT

7    IT'S ALTERED.  BUT I DON'T THINK THERE WAS AN ALLEGATION IN

8    THE COMPLAINT THAT THE VIDEO WAS ALTERED.

9              THE COURT:  LET ME --

10             WHAT DID YOU WANT TO SAY?

11             MS. HAYS:  I JUST WANTED TO SAY THAT WHEN I MADE

12   THAT STATEMENT, I WAS REFERRING TO THE ACTUAL REAL VIDEO OF

13   WHICH I AM SURE THERE WERE --

14             THE COURT:  NOT THE FAKE VIDEO THAT THEY'RE GIVING

15   US.

16             MS. HAYS:  EXACTLY.

17             THE COURT:  ALL RIGHT.

18             MR. BUCK, PLEASE GO AHEAD.

19             ALL RIGHT.  I WANT TO TELL YOU.  HERE'S WHAT I

20   THINK -- AND NOW WE HAVE THIS ROWLAND PROBLEM, BUT I THINK

21   THIS CASE IS MORE APT FOR SUMMARY JUDGMENT.  OKAY.

22             AND MS. HAYS -- WE HAVE THE WHOLE THING ON A VIDEO.

23   SHE GETS TO ARGUE THAT IT WAS FRAUDULENT.  AND GIVE ME THE

24   BASIS FOR THAT.  OBVIOUSLY THERE ARE COMPUTER PEOPLE THAT CAN

25   JUST LOOK AT IT AND SAY THIS WAS SPLICED, THAT WAS SPLICED.

29

1    I THINK THAT CAN HAPPEN.

2            OR SHE CAN JUST COME IN AND TESTIFY TO THAT -- THE

3    FACT THAT IT WAS SPLICED.  AND I CAN JUST MAKE A RULING ON

4    THAT.

5            BUT AT THIS POINT I'M GOING TO DENY YOUR MOTION FOR

6    TETTEH.  I'M NOT -- THIS IS MY INCLINATION.  I'VE GOT TO GO

7    BACK AND START OVER BECAUSE -- BECAUSE OF SOME OF THE THINGS

8    THAT I HEARD TODAY.  BUT THAT'S WHAT I'M PROBABLY GOING TO

9    DO.  AND I'M GOING TO INVITE A MOTION FOR SUMMARY JUDGMENT ON

10   TETTEH HERSELF.

11           I DON'T KNOW ABOUT OFFICER AIKENS.  BECAUSE IT

12   APPEARS THAT SHE'S ABANDONING ANY CLAIMS AGAINST OFFICER

13   AIKENS, ALTHOUGH SHE'S SUING DOE.  AND DOE IS AIKENS,

14   ALTHOUGH SHE DOESN'T AGREE.

15           SO, MY PROBLEM IS IS THAT I CAN KICK AIKENS OUT OF

16   THE CASE BECAUSE SHE'S NOT ALLEGING ANY CLAIMS AGAINST

17   AIKENS.  BUT THEN, YOU KNOW, SIX MONTHS FROM NOW WHEN

18   EVERYBODY IS CONVINCED THAT AIKENS IS AIKENS SHE'S GOING TO

19   IDENTIFY DOE AS AIKENS.

20           MR. BUCK:  YOUR HONOR, MY -- MY READING OF THE

21   THIRD AMENDED COMPLAINT, WHICH, OF COURSE IS THE ONLY

22   OPERATIONAL VERSION OF THE COMPLAINT -- THE FACT THAT IN

23   PRIOR COMPLAINTS SHE HAD NAMED MS. AIKENS DOES NOT MEAN THAT

24   MS. AIKENS IS NOW A DEFENDANT.  AND AS I READ THE COMPLAINT,

25   THE THIRD AMENDED COMPLAINT, MS. AIKENS IS CURRENTLY NOT A

 1  DEFENDANT.

 2          THE COURT:  I AGREE WITH YOU.  BUT THERE'S A DOE.

 3  AND YOU AND I KNOW THAT DOE IS AIKENS.  SO, I CAN SAY AIKENS

 4  IS OUT OF THE CASE, BUT AT SOME POINT THERE'S GOING TO BE AN

 5  AGREEMENT I THINK BETWEEN EVERYBODY, WHETHER IT'S THROUGH

 6  DISCOVERY OR SOMETHING, THAT AIKENS IS AIKENS AND THAT'S WHO

 7  DOE IS.

 8          SO, YOU KNOW, YOU DON'T HAVE TO FILE ANYTHING ON

 9  BEHALF OF AIKENS.  I'M GOING TO LEAVE THE RECORD THE WAY IT

10  IS.  SHE'S SUING MS. TETTEH AND DOE ONE.  AND I BELIEVE THAT

11  DOE ONE IS AIKENS BASED ON EVERYTHING -- ACTUALLY, I THINK

12  SHE'S GOT THEM MIXED UP.  I THINK AIKENS IS ACTUALLY THE ONE

13  SHE THINKS IS TETTEH, AND TETTEH IS THE ONE THAT SHE THINKS

14  IS AIKENS.  BUT I'M NOT GOING TO -- I CAN'T UNWIND THAT RIGHT

15  NOW.

16          MR. BUCK:  VERY WELL, YOUR HONOR.

17          THE COURT:  OKAY.

18          ALL RIGHT.  SO, THAT'S WHERE WE ARE WITH THE

19  FEDERAL DEFENDANTS.

20          MS. HUMISTON, IF YOU DON'T MIND, LET ME TELL YOU

21  WHAT'S GOING ON WITH THESE -- WITH YOUR CLIENTS.  I WAS

22  PREPARED TO GRANT SUMMARY JUDGMENT AGAINST YOUR CLIENTS.  AND

23  I HAVE TO ADMIT I DID NOT GO BACK AND ADDRESS -- I JUST

24  ASSUMED THAT THERE HAD BEEN A ROWLAND NOTICE.  AND THAT'S MY

25  FAULT.

1              LET ME TELL YOU WHAT I'M USED TO.  USUALLY IT'S THE

2    LOS ANGELES CITY ATTORNEY'S OFFICE AND THE LOS ANGELES COUNTY

3    THAT APPEAR IN FRONT OF ME IN THESE GOVERNMENT CASES.

4    SOMETIMES THE FEDERAL GOVERNMENT.  AND THEY ROUTINELY WHEN

5    THEY FILE A MOTION FOR SUMMARY JUDGMENT ISSUE WHAT WE CALL A

6    ROWLAND NOTICE, R-O-W-L-A-N-D, UNDER -- IT'S 154 F.3D 952.

7    IT'S A 1998 CASE -- IN WHICH, YOU KNOW -- AND I DISAGREE WITH

8    IT.

9              BUT THE NINTH CIRCUIT HAS SAID THAT WHEN YOU FILE A

10   MOTION IN A CASE, AND THERE IS A PRO SE PLAINTIFF, YOU FILE A

11   SUMMARY JUDGMENT MOTION.  YOU BASICALLY HAVE TO GIVE THE PRO

12   SE PLAINTIFF A NOTICE.  AND YOU HAVE TO TELL THEM THAT --

13   THAT THE NOTICE, WHICH IS PHRASED IN ORDINARY LANGUAGE,

14   UNDERSTANDABLE LANGUAGE, CALCULATED TO APPRISE AN

15   UNSOPHISTICATED PRISONER OF HIS OR HER RIGHTS AND OBLIGATIONS

16   UNDER RULE 56 -- AND I KNOW IT SAYS "PRISONER," BUT THEY'VE

17   EXPANDED IT TO EVERYBODY.  YOU HAVE TO FILE COUNTER

18   AFFIDAVITS OR OTHER RESPONSIVE EVIDENTIARY MATERIALS AND BE

19   ALERTED TO THE FACT THAT THE FAILURE TO DO SO MIGHT RESULT IN

20   THE ENTRY OF SUMMARY JUDGMENT AGAINST THE PLAINTIFF.  AND

21   THAT IF YOU LOSE SUMMARY JUDGMENT, YOU'RE GOING TO LOSE THE

22   CASE.

23              SO, THAT'S WHERE I AM RIGHT NOW.

24              AND WE DIDN'T DO THAT.  I DIDN'T DO IT, AND YOU

25   DIDN'T DO IT.  AND I'M GOING TO TAKE RESPONSIBILITY FOR IT.

32

1    IT WASN'T DONE.

2              SHE'S NOW ASKED CAN I HAVE TIME TO FILE A SUMMARY

3    -- A DECLARATION, AND I HAVE TO GIVE IT TO HER.

4              I COULD GRANT YOUR SUMMARY JUDGMENT MOTION.  AND

5    THERE WOULD BE A FEW DEFENDANTS LEFT.  AND AT THE END OF THE

6    YEAR THIS CASE WOULD GO AWAY ONE WAY OR THE OTHER AS TO

7    EVERYWHERE -- EVERYONE.

8              BUT IF YOU WENT UP TO THE NINTH CIRCUIT -- WHEN SHE

9    GOES UP TO THE NINTH CIRCUIT, THEY'RE GOING TO REVERSE IT AND

10   SEND IT BACK, AND YOU'RE GOING TO BE BACK HERE A YEAR OR TWO

11   FROM NOW UNWINDING THIS WHOLE THING.  AND IT'S JUST NOT WORTH

12   IT.  ALL RIGHT.

13             SO, TO THE EXTENT THAT SHE IS REQUESTING TIME TO

14   FILE AFFIDAVITS, I'M GOING TO ALLOW HER TO DO IT.  I WILL

15   CONSIDER HER EARLIER DECLARATION SO THAT SHE DOESN'T HAVE TO

16   FILE ANYTHING.

17             IF YOU WANT TO FILE A SUPPLEMENTAL DECLARATION, MS.

18   HAYS, YOU CAN.

19             AT THAT TIME, MS. HUMISTON, I'M GOING TO REEVALUATE

20   YOUR SUMMARY JUDGMENT MOTION AND MAKE A RULING.  I DON'T

21   THINK ANYTHING SHE SAYS IN HER DECLARATION IS GOING TO AFFECT

22   SOME OF THE FOLKS WHO WERE REMOVED FROM THE SITUATION.  I

23   THINK THAT YOU'RE GOING TO STILL BE ENTITLED TO SUMMARY

24   JUDGMENT ON THOSE.  BUT I THINK SOME OF THE PEOPLE THAT WERE

25   DIRECTLY INVOLVED IT MAY SURVIVE SUMMARY JUDGMENT.

33

1      I'M GOING TO GIVE HER TWO WEEKS TO FILE HER

2   DECLARATION.

3      IF YOU WANT TO FILE ANYTHING AFTER THAT, I'LL LET

4   YOU KNOW.  YOU CAN HAVE THAT OPPORTUNITY.  AND I'LL MAKE A

5   RULING EITHER IN MAY -- AT THE END OF THIS MONTH OR IN MAY.

6   ALL RIGHT.  IF YOU WANT, I'LL DO IT AS A TENTATIVE, AND YOU

7   CAN ARGUE ON THE PHONE WHETHER OR NOT I MADE THE RIGHT

8   DECISION, AND WE'LL SEND THAT ALONG.

9      MS. HAYS, TODAY IS APRIL -- I'M SORRY.

10     MS. HUMISTON, IF YOU WANT TO TALK ME OUT OF THIS,

11  I'M HAPPY FOR YOU TO TALK ME OUT OF IT.  IF YOU WANT TO TELL

12  ME YOUR NOTICE OF MOTION AND MOTION WAS ENOUGH, I'LL TAKE A

13  LOOK AT IT.  I DON'T THINK IT WAS.

14     BUT PLEASE GO AHEAD.

15     MS. HUMISTON:  WELL, I PERSONALLY THINK, YOUR

16  HONOR, WE'VE GIVEN HER MORE THAN SUFFICIENT TIME AND MORE

17  THAN SUFFICIENT NOTICE.  AND YOU'VE TOLD HER OVER AND OVER

18  SHE NEEDS TO PRODUCE FACTS -- BECAUSE THIS IS MY THIRD

19  SUMMARY JUDGMENT MOTION.  BUT --

20     THE COURT:  I'LL TAKE A LOOK AT THAT.

21     MS. HUMISTON:  -- ARE YOU SAYING THAT NONE OF THESE

22  DEFENDANTS ARE OUT AT THIS POINT?

23     THE COURT:  I'M NOT SAYING THAT.  I THINK SOME OF

24  THEM WILL BE BECAUSE NO MATTER WHAT SHE FILES -- THE

25  DEFENDANTS WHO DIDN'T HAVE ANYTHING TO DO WITH BEING RIGHT

34

1    THERE AT THE SCENE, I THINK THEY'RE GOING TO BE ENTITLED TO

2    SUMMARY JUDGMENT.

3            I COULD LOOK AT THAT.  HAVE WE FILED A ROWLAND IN

4    ANY OF THE OTHERS?  DO YOU KNOW?

5            MS. HUMISTON:  I DON'T KNOW, YOUR HONOR.

6            THE COURT:  I'M GOING TO LOOK.

7            MS. HUMISTON:  QUITE FRANKLY, I'M NOT FAMILIAR WITH

8    IT.  AND I --

9            THE COURT:  I'M GOING TO LOOK.

10           MS. HUMISTON:  -- DON'T DO IT.  SO, I -- I'VE NEVER

11   DONE IT.

12           THE COURT:  OKAY.

13           ALL RIGHT.  I'M GOING TO LOOK AND SEE.  IF WE HAVE

14   GIVEN HER SUFFICIENT NOTICE BEFORE, AND WE'VE GIVEN HER

15   ROWLAND NOTICE BEFORE, IT PROBABLY IS GOING TO BE GOOD

16   ENOUGH.

17           SO, WHAT I'M GOING TO DO IS I'M GOING TO GO BACK

18   AND LOOK THROUGH THE FILE.  YOU KNOW, THIS CASE IS NOW COMING

19   UP -- IT'S OVER TWO YEARS OLD.  WE'VE HAD HUNDREDS OF

20   PLEADINGS, AND I DON'T REMEMBER THEM ALL.  I'M GOING TO GO

21   BACK AND LOOK AT IT.

22           SO, YOU'VE HEARD ME SAY THAT IN HEARINGS BEFORE THE

23   COURT.

24           MS. HUMISTON:  YOU'VE WRITTEN MANY ORDERS TO HER

25   THAT SHE NEEDS TO COME UP WITH SOME EVIDENCE.  SHE NEEDS TO

1  --

2           THE COURT:  OKAY.

3           MS. HUMISTON:  -- RESPOND TO THIS DISCOVERY.

4           I THINK -- I'M FAIRLY CERTAIN THIS IS MY THIRD

5  SUMMARY JUDGMENT MOTION, YOUR HONOR.  I'VE GOT PROSECUTORS

6  AND POLICE OFFICERS WITH IMMUNITY, AND I'M TRYING TO BE

7  PATIENT.  BUT, YOU KNOW, SHE -- SHE SAID IT OVER AND OVER.

8  SHE SAID HER CLAIMS OVER AND OVER.  WE'VE HEARD IT VERBALLY.

9  WE HEAR IT IN LETTERS.  SHE RAMBLES ON IN EVERYTHING SHE

10 FILES.

11          AND I APPRECIATE WHAT YOU'RE DOING.  AND I'M

12 WILLING TO WAIT A LITTLE WHILE.  BUT, YOU KNOW, IT'S REALLY

13 NOT FAIR.  I NOW HAVE A DISTRICT ATTORNEY WHO'S BEING ACCUSED

14 OF THESE THINGS.  AND IT'S NOT FAIR TO THESE PEOPLE TO BE --

15          THE COURT:  I AGREE.

16          MS. HUMISTON:  I'VE BEEN NAMED AS A DEFENDANT IN

17 THIS LAWSUIT.  AND NEED I TELL YOU, I'M REALLY ANNOYED BY

18 THAT.

19          THESE PEOPLE ALL NOW HAVE TO DECLARE THEY'VE BEEN A

20 DEFENDANT IN A FEDERAL CIVIL RIGHTS LAWSUIT, AND IT'S REALLY

21 UNACCEPTABLE THAT THIS WOMAN KEEPS DRAGGING THIS ON.

22          I ACCEPT WHAT YOU'RE SAYING.  I CERTAINLY HOPE I

23 DON'T HAVE TO COME BACK DOWN HERE --

24          THE COURT:  ALL RIGHT.

25          OKAY.  ALL RIGHT.  THANK YOU, COUNSEL.

1           MS. HUMISTON:  I WILL SUBMIT ON WHAT YOU DECIDE.

2           THE COURT:  ALL RIGHT.

3           MS. HAYS.

4           MS. HAYS:  ONCE AGAIN, THE ONLY THING THAT I CAN

5    SAY IS THERE WAS A TOTAL -- I DON'T REMEMBER IF THIS ROWLAND

6    NOTICE SAYS "ROWLAND NOTICE" ON IT OR IF IT WAS IMPREGNATED

7    INTO THE CIVIL MINUTES ORDER.  BUT I DON'T REMEMBER GETTING A

8    SPECIFIC NOTICE ON THIS.

9           BUT HAVING NEVER DONE THIS BEFORE -- LIKE I SAID,

10   WHEN I STARTED, I DIDN'T KNOW THE DIFFERENCE BETWEEN CIVIL

11   AND CRIMINAL ATTORNEYS.  SO, I'VE LEARNED A LOT IN THE LAST

12   TWO YEARS.

13          BUT I WAS NOT OF THE UNDERSTANDING THAT EVERY TIME

14   YOU DO A NEW COMPLAINT THAT ALL OF THE OTHER EVIDENCE THAT

15   YOU'VE PRESENTED THUS FAR IS BASICALLY WIPED OUT.  I THOUGHT

16   THAT ALL OF THAT CONTINUES AND MOVES FORWARD WITH THE CASE.

17          THE COURT:  OKAY.

18          ALL RIGHT.  I'M GOING TO -- I'LL ISSUE A MINUTE

19   ORDER NEXT WEEK AND TELL YOU WHAT WE'RE GOING TO DO.  I DON'T

20   WANT YOU TO DO ANYTHING YET.

21          I'M GOING TO MOVE ON TO THE BURBANK-GLENDALE

22   AIRPORT AUTHORITY.

23          THEY'RE HERE?

24          MR. DALEY:  YES, YOUR HONOR.

25          MR. RUIZ:  YES, YOUR HONOR.

1          THE COURT:  OKAY.  THEY MOVED FOR DISMISSAL BASED

2    ON THE FACT THAT YOU'RE ALLEGING THAT THIS WAS A RESULT OF

3    MAYBE POLICY STATEMENT, ORDINANCE, REGULATION OR SOMETHING,

4    BUT YOU HAVEN'T PROVIDED ANYTHING TO SAY THAT.

5          WHAT YOU FAILED TO DO IS SPECIFY WHICH POLICIES OR

6    CUSTOMS OF THE AIRPORT AUTHORITY WERE THE MOVING FORCE BEHIND

7    THE ALLEGED DEPRIVATION OF YOUR CONSTITUTIONAL RIGHTS.

8          INSTEAD, YOU CHARGED THAT EACH AND EVERY ACT

9    ALLEGED TO HAVE BEEN DONE BY AN EMPLOYEE WAS DONE IN THE

10   EXECUTION AND IMPLEMENTATION OF THE OFFICIAL POLICIES,

11   PRACTICES AND CUSTOMS OF THE RESPECTIVE EMPLOYEES.

12         THAT'S YOUR THIRD AMENDED COMPLAINT AT PARAGRAPH

13   69.

14         THE DEFENDANTS HAVE ARGUED THAT THESE BARE

15   CONCLUSORY ALLEGATIONS ARE NOT ENOUGH TO STATE A MONELL

16   CLAIM.  AND I AGREE.  YOU HAD TO DO SOMETHING MORE,

17   PARTICULARLY IN THE FACE OF A MOTION TO DISMISS IN THIS

18   FOURTH ATTEMPT TO RAISE A VALID CLAIM AGAINST THE AIRPORT

19   AUTHORITY.

20         FOR THIS REASON I'M GOING TO DISMISS THE AIRPORT

21   AUTHORITY WITH PREJUDICE.  YOU'RE NOT GOING TO BE ABLE TO SUE

22   THE AIRPORT AUTHORITY.

23         MS. HAYS, YOU'RE GOING TO HAVE AN OPPORTUNITY TO

24   TELL ME WHY YOU THINK I'M WRONG.  GO AHEAD.

25         MS. HAYS:  NOW, THIS MIGHT SEEM REAL FARFETCHED,

1   YOUR HONOR, BUT I JUST GO ON MY INSTINCTS.

2        THERE WAS SOMETHING THAT CAME UP THAT REALLY

3   TROUBLES ME, AND I HAVEN'T BEEN ABLE TO INVESTIGATE IT TO THE

4   EXTENT THAT I WOULD LIKE TO.  BUT THERE WAS ACTUALLY AN

5   INDIVIDUAL THAT WAS A MEMBER OF THE AIRPORT AUTHORITY, A MR.

6   LOMBARDO, WHO WAS, I BELIEVE, AT THE TIME OF THIS INCIDENT

7   THE PRESIDENT OF THE AIRPORT AUTHORITY.  FROM WHAT I CAN READ

8   ABOUT THIS GENTLEMAN, HE WAS A GENTLEMAN OF HIGH MORAL

9   STANDARDS AND ETHICS.  AND HE WORKED REAL HARD TO GET

10   INSULATION FOR THE PEOPLE IN HOMES THAT WERE AROUND THE

11   AIRPORT.

12        AND, SO, I'M WONDERING WHETHER MAYBE HE TRIED TO

13   GET SOME MORE INFORMATION REGARDING WHAT HAD REALLY HAPPENED.

14   THIS MAN IS NOW DEAD.  AND THERE ARE DIFFERENT REPORTS THAT

15   HE EITHER DIED OF PROSTATE CANCER OR HE DIED OF A HEART

16   ATTACK.  AND THIS MAY JUST BE WAY OUT IN OUTFIELD, AND I --

17   IT'S -- BUT WHEN YOU'RE ASKING ABOUT DISMISSING THE AIRPORT

18   AUTHORITY, I WOULD LIKE TO RULE OUT THE FACT THAT THIS

19   INDIVIDUAL HAD MEANT AT LEAST -- AT LEAST GIVE ME THE

20   OPPORTUNITY TO DO DISCOVERY --

21        THE COURT:  DENIED.

22        MS. HAYS:  -- TO FIND OUT IF HE ACTUALLY HAD

23   POSSIBLY DISCOVERED SOMETHING RELATED TO MY CASE.

24        THE COURT:  AND THEN SOMEONE KILLED HIM?

25        MS. HAYS:  YOU KNOW, THOSE TYPE OF THINGS DO

39

1    HAPPEN, YOUR HONOR.

2            THE COURT:  I WANT TO TELL YOU THIS.  I DON'T HAVE

3    ANY REASON TO KNOW ONE WAY OR THE OTHER, BUT YOU'RE NOT GOING

4    TO BE ALLOWED TO CONDUCT THAT DISCOVERY IN THE CONTEXT OF

5    THIS CASE.

6            THE AIRPORT AUTHORITY IS GOING TO BE DISMISSED WITH

7    PREJUDICE.  SO IS OFFICER NEAL, WHO CONDUCTED THE INTERNAL

8    AFFAIRS INVESTIGATION AFTER THE INCIDENT.  HE HAD NOTHING TO

9    DO WITH A VIOLATION OF YOUR CIVIL RIGHTS.  ASSUMING YOU ARGUE

10   AND THAT HE RATIFIED WHAT THEY DID, THAT'S NOT A VIOLATION.

11           I WILL -- UNFORTUNATELY REGARDING OFFICERS ALBARO

12   AND GREEN AT THIS POINT, THERE'S ENOUGH EVIDENCE FOR HER TO

13   GO FORWARD ON THEM.  THEY WERE THE OFFICERS I BELIEVE THAT

14   TOOK CUSTODY OF MS. HAYS IMMEDIATELY AFTER THE INCIDENT.  I

15   CAN'T DO IT ON A MOTION TO DISMISS.  YOU CAN COME BACK ON A

16   SUMMARY JUDGMENT MOTION IF YOU THINK IT'S APPROPRIATE.  I'LL

17   TAKE A LOOK AT IT.

18           YOU'RE NOW AWARE OF ROWLAND.  PLEASE GIVE HER

19   NOTICE ABOUT THAT.

20           AND, NOW, AGAIN, THE BURBANK POLICE OFFICERS AND

21   THE CITY ATTORNEYS AND THINGS LIKE THAT, I'M GOING TO ISSUE A

22   MINUTE ORDER NEXT WEEK AND TELL YOU EXACTLY WHAT -- WHAT'S

23   GOING TO HAPPEN WITH THOSE.

24           FOR MOST OF THEM I DO NOT BELIEVE THAT NO MATTER

25   WHAT HER DECLARATION SAID WOULD HAVE ANY IMPACT ON MY

40

1  DECISION.  AND THAT IS JUST TO GRANT SUMMARY JUDGMENT MOTION

2  TO THEM.

3          ANYBODY WHO WAS DIRECTLY INVOLVED, IT MIGHT BE A

4  LITTLE DIFFERENT IF SHE'S ABLE TO COUNTER THE DECLARATIONS

5  THAT I HAVE IN FRONT OF ME.  BUT WE'LL FIND OUT ABOUT THAT.

6          ALL RIGHT.  DID I GIVE EVERYBODY A CHANCE?

7          FIRST OF ALL, MA'AM, WOULD YOU STAND UP, PLEASE.

8  TELL ME WHAT YOUR NAME IS.

9          MS. TETTEH:  TESIA TETTEH.

10          THE COURT:  TESIA TETTEH.  WERE YOU WORKING AT THE

11  AIRPORT THAT DAY?

12          MS. TETTEH:  YES.

13          THE COURT:  OKAY.  THAT'S ALL I WANT TO TALK TO YOU

14  ABOUT NOW.  ALL RIGHT.

15          IS THAT OKAY WITH YOU, MR. BUCK?  I'M SORRY.  AND

16  COUNSEL IS HERE FOR MS. TETTEH.

17          I DON'T WANT YOU TO HAVE TO COME DOWN HERE AGAIN.

18  ALL RIGHT.

19          IF YOU -- IF FOR ANY REASON THE GOVERNMENT WANTS TO

20  BRING YOU DOWN OR YOU WANT TO COME, YOU'RE WELCOME.  YOU'RE A

21  PARTY TO THIS LAWSUIT.  YOU CAN COME ANY TIME YOU WANT.

22          I APPRECIATE THE FACT THAT YOU CAME DOWN.  THERE

23  WAS SOME CONFUSION, AT LEAST ON MS. HAYS' PART AS TO WHO YOU

24  WERE AND MAYBE YOU CHANGED OR SOMETHING LIKE THIS.  SHE'S NOW

25  HAD AN OPPORTUNITY TO SEE YOU.  YOU'RE IN UNIFORM, YOU KNOW,

1    FLANKED BY THE LAWYERS FROM THE GOVERNMENT.  AND YOU'VE TOLD

2    ME WHAT YOUR NAME IS.  AND I'M SATISFIED THAT THAT'S CLEARED

3    UP ANY CONFUSION THERE MIGHT BE.

4              MS. HAYS.

5              MS. HAYS:  CAN I HAVE PERMISSION TO TAKE A PICTURE

6    OF HER?

7              THE COURT:  ANYBODY HAVE A PROBLEM WITH THAT?

8              MR. BUCK:  I'D LIKE TO SPEAK WITH MS. TETTEH.

9              MS. TETTEH.

10             (PAUSE IN PROCEEDINGS.)

11             THE COURT:  YOU'RE ON ALL THESE COURT -- CAMERA IN

12   THE COURTROOM.

13             RIGHT, MARSHAL?

14             UNITED STATES MARSHAL:  THAT'S RIGHT, YOUR HONOR.

15             MR. BUCK:  YOUR HONOR, THIS -- WE WOULD RATHER NOT.

16             THE COURT:  NO PROBLEM.

17             MR. BUCK:  ON THE OTHER HAND, WE DID -- WE DID ASK

18   MS. TETTEH TO BRING HER IDENTIFICATION.

19             THE COURT:  ALL RIGHT.

20             MR. BUCK:  SHE BROUGHT HER NOT ONLY FEDERAL

21   IDENTIFICATION BUT HER CALIFORNIA DRIVER'S LICENSE.  AND --

22             THE COURT:  THAT WOULD BE GREAT.

23             WOULD YOU MIND -- WOULD YOU MIND ALLOWING HER TO

24   LOOK AT THAT?

25             MR. BUCK:  I THINK THAT WOULD BE FINE.

42

```
 1              THE COURT:  AND IF IT'S OKAY WITH YOU, MS. TETTEH,

 2   YOU'RE NOT REQUIRED TO, BUT IF YOU'D ALLOW HER TO WRITE DOWN

 3   YOUR DRIVER'S LICENSE NUMBER, IT'S GOING TO RESOLVE A LOT OF

 4   THINGS -- AT LEAST IT'S GOING TO ALLEVIATE OTHER THINGS.

 5              MS. TETTEH:  NO.  SHE CAN SEE THE PICTURE --

 6              THE COURT:  THAT'S FINE.

 7              MS. TETTEH:  -- OF WHEN I WAS MORE HEAVIER.

 8              THE COURT:  YOU'RE IN CONTROL.  YOU DO WHATEVER --

 9   WHATEVER YOU WANT IS FINE.

10              I APPRECIATE YOU VOLUNTEERING TO DO THIS.  YOU'RE

11   NOT REQUIRED TO DO IT.  AND THIS IS NOT REALLY THE TIME AND

12   THE PLACE FOR DISCOVERY.

13              ALTHOUGH, MR. BUCK IS GOING TO SHARE THAT WITH YOU.

14              MR. BUCK:  I PROVIDED MS. HAYS FOR HER INSPECTION

15   --

16              MS. TETTEH:  AND I ASK THAT SHE NOT WRITE ANYTHING

17   DOWN --

18              THE COURT:  DON'T WRITE ANYTHING DOWN, MS. HAYS.

19   STOP.

20              MR. BUCK:  YOU WERE ASKED TO LOOK AT THE PICTURE --

21              MS. HAYS:  CAN I --

22              MR. BUCK:  UH-HUM.

23              MS. TETTEH:  OKAY.  I --

24              MR. BUCK:  THANK YOU, MS. TETTEH.

25              MS. TETTEH:  -- WOULD LIKE TO HAVE MY
```

43

1    IDENTIFICATION BACK.

2              THE COURT:  OKAY.  MS. HAYS.

3              MS. HAYS:  YES.

4              THE COURT:  ALL RIGHT.

5              SHE HAS CERTAIN RIGHTS HERE.  AND ACTUALLY AT SOME

6    POINT, MS. TETTEH, IN THE CONTEXT OF DISCOVERY YOU MAY BE

7    REQUIRED TO SHARE A PICTURE -- THAT PICTURE.  BUT ANYWAY, YOU

8    DON'T HAVE TO DO IT NOW.

9              ALL RIGHT.  SO, YOU DO WHAT YOU WANT TO DO.  AND I

10   WILL ISSUE ORDERS IN THIS CASE NEXT WEEK.

11             IS THERE ANYTHING I OVERLOOKED FROM ANYBODY?

12             MS. HUMISTON:  YOUR HONOR, I JUST WANTED TO STATE

13   FOR THE RECORD IN RESPONSE TO MS. HAYS' SUGGESTION THAT ONE

14   OF OUR EXHIBITS WASN'T READABLE.  WHAT -- THE POINT THAT WE

15   MADE WITH THAT EXHIBIT IS IT WASN'T READABLE TO US, WHICH, OF

16   COURSE, IS SET FORTH IN OUR DECLARATION.  SO, WE GAVE YOU

17   EXACTLY WHAT THE TSA GAVE US.  I GAVE YOU OTHERS THAT OUR

18   PROSECUTOR THEN WAS ABLE TO -- WITH A PROGRAM OUTSIDE THE

19   CITY BREAK DOWN AND USE.

20             THE COURT:  OKAY.

21             AND BASICALLY WHAT SHE WANTS -- AMONG THE OTHER

22   THINGS SHE WANTS IN HER DISCOVERY IS THE ORIGINAL UNALTERED,

23   UNDOCTORED VIDEO.  AND, YOU, ON BEHALF OF THE CITY OF BURBANK

24   HAVE NO UNALTERED -- NO DIFFERENT VIDEO THAN THE ONE WE'VE

25   JUST WATCHED.

1              CORRECT?

2              MS. HUMISTON:  THAT'S CORRECT, YOUR HONOR.

3              AND WHAT I DID WAS I LITERALLY GAVE YOU A COPY OF

4    WHAT THE TSA GAVE US IN A FORMAT THAT WE CAN'T READ.

5              THE COURT:  I UNDERSTAND.

6              MS. HUMISTON:  SO --

7              THE COURT:  I'M JUST TRYING TO MAKE A RECORD HERE.

8    AND THE RECORD IS IS THAT IF I GRANTED HER SIX MONTHS FOR

9    DISCOVERY, SHE WOULDN'T GET FROM YOU OR ANY OF YOUR CLIENTS A

10   DIFFERENT VIDEO?

11             MS. HUMISTON:  NO, YOUR HONOR.

12             THE COURT:  YOU HAVE ONE VIDEO, THE SAME VIDEO THAT

13   MR. BUCK JUST SHOWED US.

14             MS. HUMISTON:  YES.

15             THE COURT:  ALL RIGHT.

16             AND THE AIRPORT AUTHORITY DOESN'T -- THEIR LAWYERS

17   ARE HERE AS WELL.

18             YOU DON'T HAVE ANOTHER VIDEO, RIGHT, GUYS?

19             MR. DALEY:  NO.  NO, YOUR HONOR.

20             MR. RUIZ:  NO.

21             THE COURT:  NO ONE -- HAS ANY OF THE LAWYERS IN THE

22   CASE SEEN A DIFFERENT VIDEO THAN THE ONE WE JUST WATCHED?

23             MS. HUMISTON:  NO, YOUR HONOR.

24             THE COURT:  OKAY.

25             MS. HAYS.

1          MS. HAYS:  SO, YOU'RE STATING THAT --

2          THE COURT:  MS. HAYS, YOU DIRECT ALL YOUR INQUIRIES

3     TO ME.  YOU'RE NOT ALLOWED TO TALK WITH COUNSEL DURING THE

4     HEARING.  OKAY.

5          MS. HAYS:  OKAY.

6          THE COURT:  PLEASE GO AHEAD.

7          MS. HAYS:  IF YOU CAN ASK MS. HUMISTON WHETHER WHAT

8     I GOT AND WHEN I SAW A BLANK SCREEN THAT IT DOES REQUIRE A

9     SPECIAL VIEWER TO WATCH THE VIDEO.  SO, TECHNICALLY WITH THAT

10    VIEWER, IF I USE THE FILE THAT SHE PROVIDED ON THE CD, THEN,

11    I SHOULD BE ABLE TO SEE THE PICTURE?

12         THE COURT:  RIGHT.  I MEAN, SHE HAD THE SAME

13    PROBLEM YOU HAVE.  SHE CAN'T OPEN IT.

14         AM I RIGHT, MS. HUMISTON?

15         MS. HUMISTON:  YES, YOUR HONOR.  I MEAN --

16         THE COURT:  IS IT HU-MIS-TON OR HUME-IS-TON?

17         MS. HUMISTON:  HUMISTON.  O-N.

18         THE COURT:  HUMISTON.  I'M SORRY.  HUMISTON.

19         MS. HUMISTON:  YES, YOUR HONOR.

20         THE COURT:  HUMISTON.  OKAY.

21         SO, SHE GOT THAT THAT, SHE GAVE TO YOU.  SHE'S

22    NEVER OPENED IT.

23         YOU'VE NEVER SEEN IT.

24         AM I RIGHT, MS. HUMISTON?

25         MS. HUMISTON:  I HAVE NEVER BEEN ABLE TO OPEN THAT

1    BECAUSE OUR COMPUTERS WON'T.  BUT OUR OUTSIDE PROSECUTOR WAS

2    -- WHO DOESN'T WORK ON CITY COMPUTERS -- WAS ABLE TO OPEN

3    IT.  LIKE MR. BUCK, HE CAN OPEN IT IN OTHER VIEWERS THAT WE

4    CANNOT DOWNLOAD.  AND I GAVE THAT TO YOU TOO BECAUSE SHE

5    LOOKED AT IT IN THAT FORMAT.  AND THAT WAS GIVEN TO YOU.

6              THE COURT:  MS. HAYS DID?

7              MS. HUMISTON:  NO.  NO, THE PROSECUTOR --

8              THE COURT:  OH, THE PROSECUTOR.

9              MS. HUMISTON:  I GAVE THAT TO YOU SO THAT YOU COULD

10   SEE IN CONNECTION WITH THE PROSECUTOR'S DECLARATION WHAT SHE

11   KNEW AND SHE SAW BECAUSE SHE COULD OPEN IT IN A DIFFERENT

12   FORMAT.

13             THE COURT:  WELL, THE ONE WE JUST SAW IN COURT

14   TODAY WAS ONE MR. BUCK PROVIDED FOR -- TO ME.  AND THAT WAS

15   THE SAME VIDEO, RIGHT?

16             MR. BUCK:  YES.  IT'S THE SAME VIDEO, AND THE SAME

17   PICTURE WAS TAKEN, YOUR HONOR.  HOWEVER, THE FORMAT IN WHICH

18   APPARENTLY THE AIRPORT RECORDS THIS -- I BELIEVE IT WAS

19   INDORA IS THE FORMAT?

20             MS. HAYS:  NO, IT'S -- I THINK IT'S OMNICAST IF I'M

21   NOT -- OR GEMTEX IS THE NAME OF THE COMPANY THAT DID THE

22   INSTALLATION OF THE SECURITY.  I CAN ACTUALLY SHOW YOU ON MY

23   COMPUTER WHAT THEY ACTUALLY GOT AND HOW IT NEEDS TO BE

24   OPENED.

25             THE COURT:  OKAY.  BUT -- GO AHEAD.

47

1          MR. BUCK:  FORGIVE ME, YOUR HONOR.

2          THE COURT:  YOU GO RIGHT AHEAD.

3          MR. BUCK:  WE -- I HAVE THE I.T. PEOPLE IN MY

4    OFFICE -- THE RECORDING INTO WINDOWS MEDIA PLAYER, WHICH IS A

5    COMMONLY USED METHOD OF VIEWING IT SO THAT I CAN VIEW IT ON

6    MY COMPUTER AND THE COURT COULD AND MS. HAYS COULD VIEW IT

7    SIMILARLY ON HERS WITHOUT DIFFICULTY.

8          BUT THE RECORDING IS THE SAME.  IT'S SIMPLY THE

9    MEDIA IN WHICH IT'S --

10         THE COURT:  ALL RIGHT.  OKAY.

11         ANYTHING ANYBODY ELSE WANTS TO SAY?

12         THANKS -- GO AHEAD, COUNSEL.

13         MR. RUIZ:  WELL, YOUR HONOR, JUST WE -- MR. DALEY

14   WOULD LIKE TO BE HEARD ON MS. ALBARO AND MR. GREEN.

15         THE COURT:  PLEASE.

16         MR. RUIZ:  THANK YOU.

17         THE COURT:  THANK YOU.  I'M SORRY.  I HAVE THEM

18   HERE IN MY PROPOSED ORDER --

19         MR. DALEY:  NO PROBLEM, YOUR HONOR.

20         THE COURT:  -- THAT I WAS GOING TO GIVE YOU AND

21   DIDN'T FINISH.

22         BUT GO AHEAD.

23         MR. DALEY:  WELL, SO, I JUST WANTED TO POINT OUT

24   THAT MS. HAYS' THIRD AMENDED COMPLAINT -- THIS IS HER FOURTH

25   ITERATION OF HER COMPLAINT.

1          THE COURT:  RIGHT.

2          MR. DALEY:  AND AS TO ALBARO AND GREEN, IT STILL

3   SUFFERS FROM THE SAME DEFICIENCIES, NAMELY THAT ALL SHE'S

4   STATING IN HER ALLEGATIONS ARE CONCLUSORY STATEMENTS THAT ARE

5   NOT SUPPORTED BY ANY FACTS.

6          AND, SO, I -- BASICALLY I WOULD JUST --

7          THE COURT:  WELL -- GO AHEAD.

8          I WANT TO TELL YOU WHAT -- THE WAY I INTERPRET IT,

9   AND YOU TELL ME WHY YOU THINK I'M WRONG.  THEY SHOWED UP

10  ESSENTIALLY SUMMARIZING HER THIRD AMENDED COMPLAINT.  THEY

11  SHOWED UP AND THEY TOOK HER INTO CUSTODY.  SHE HAD BEEN --

12  THERE HAD BEEN A CITIZEN ARREST BY THE OFFICERS, THE TSA

13  OFFICERS.  AND THEY HELD HER WHILE -- UNTIL SHE WAS TURNED

14  OVER TO BURBANK POLICE.

15         AND WHAT I BELIEVE IS THAT'S ENOUGH TO STATE A

16  CLAIM BECAUSE THE OFFICERS THEMSELVES HAVE TO HAVE PROBABLE

17  CAUSE TO TAKE SOMEONE -- TO TRANSFER SOMEONE IN A CITIZEN'S

18  ARREST SITUATION.  AND -- SO, THAT'S AN ISSUE OF FACT.  NOW

19  -- I THINK.

20         MR. DALEY:  SHE CONCEDES IN HER COMPLAINT THAT A

21  TSA AGENT SPOKE WITH ALBARO AND GREEN AND TOLD THE -- THE TSA

22  AGENT TOLD ALBARO AND GREEN THAT THERE WAS A STRUGGLE, THERE

23  WAS SOME ISSUE.  AND THAT MS. HAYS HAD HIT THE TSA AGENT.

24         AND, SO, OUR POSITION IS THAT BASED ON THAT, BASED

25  ON MS. HAYS' ALLEGATIONS, THAT WAS ENOUGH FOR PROBABLE CAUSE

49

1   FOR ALBARO AND GREEN TO DETAIN HER.

2           THE COURT:  I'LL TAKE ANOTHER LOOK AT THAT, AND

3   I'LL TAKE ANOTHER LOOK AT YOUR BRIEF.

4           BUT LET ME TELL YOU THE WAY I INTERPRET IT, THAT

5   IS, IS THAT WHEN ONE SIDE SAYS THIS IS WHAT HAPPENED, THE

6   OFFICER HAS TO DO AN INDEPENDENT INVESTIGATION AND DETERMINE

7   THAT'S MORE LIKELY TRUE THAN THE OTHER SIDE.  AND SHE'S

8   SAYING THAT THAT WASN'T DONE.  THEY DIDN'T, LIKE, SAY, WELL,

9   LET ME HEAR YOUR SIDE OF THE STORY BUT THEN KIND OF WEIGH

10  THOSE TWO STORIES AND SAY, YOU'RE WRONG.  SHE'S RIGHT.

11  YOU'RE GOING TO JAIL.

12          THAT'S WHAT SHE'S CLAIMING.  AND AT THIS POINT IN A

13  MOTION TO DISMISS I THINK THE BARE ALLEGATIONS ARE ENOUGH TO

14  SURVIVE, BUT I WILL TAKE ANOTHER LOOK AT IT IN THE CONTEXT OF

15  YOUR ARGUMENTS.

16          MR. DALEY:  MAY I RESPOND TO --

17          THE COURT:  YES.

18          MR. DALEY:  -- THAT STATEMENT.

19          THE PROBLEM THAT WE SAW WITH THAT IS SHE MAKES THE

20  ALLEGATION THAT ALBARO AND GREEN SHOULD SOMEHOW HAVE, YOU

21  KNOW, JUST TAKEN HER BACK TO THE BURBANK POLICE STATION --

22          THE COURT:  OR LOOKED AT THE VIDEO.

23          MR. DALEY:  -- SAT WITH HER, LOOKED AT THE VIDEO,

24  HAD A DISCUSSION ABOUT WHETHER THERE WAS PROBABLE CAUSE --

25  WHICH I THINK IS BESIDES THE POINT.  THAT'S NOT A

50

1    CONSTITUTIONAL RIGHT FOR A SUSPECT OF A CRIME TO HAVE THAT

2    RIGHT TO, YOU KNOW, GO THROUGH THAT PROCESS WITH ARRESTING

3    OFFICERS.  THEY HAD --

4             THE COURT:  WELL, I AGREE WITH YOU.  THEY DON'T

5    HAVE TO DO A FULL INVESTIGATION.  BUT IN ORDER FOR AN OFFICER

6    TO HAVE PROBABLE CAUSE TO BELIEVE SOMEONE HAS COMMITTED AN

7    OFFENSE HE HAS TO HAVE SOME EVIDENCE.

8             LET ME GIVE YOU A HYPOTHETICAL.  LET'S JUST SAY

9    THAT THIS WASN'T A TSA OFFICER IN UNIFORM SAYING -- IT WAS

10   JUST SOMEBODY WHO SAID SHE JUST FOUGHT ME AND TOOK THE

11   COOLER.  AND THE POLICE TAKE HER AND ARREST HER.  JUST ONE

12   PERSON SAYING YOU COMMITTED A CRIME, IF YOU JUST ACCEPT THAT

13   AT FACE VALUE IS PROBABLY NOT ENOUGH.  THERE HAS TO BE

14   SOMETHING MORE LIKE MAYBE A BRUISE ON THE ARM OR THE COOLER

15   -- YOU KNOW, THE CONTENTS SPILLED ON THE FLOOR OR EVIDENCE

16   OF A TUSSLE OR WHATEVER.  BECAUSE OTHERWISE ALL THE PERSON

17   WOULD HAVE TO DO IS GRAB THE PERSON NEXT TO HIM IN THE

18   AIRPORT AND SAY, OFFICER, YOU JUST HIT ME.  AND THEN THE

19   OFFICER ARRESTS THAT PERSON AND TAKES HER DOWNTOWN AND FINDS

20   OUT LATER, WELL, THAT NEVER HAPPENED.

21            HOW MUCH OF AN INVESTIGATION HAS TO BE DONE IS

22   CLEARLY A MATTER OF DISPUTE.  AND I WOULD GRANT YOU IF THIS

23   WAS A SUMMARY JUDGMENT MOTION OR SOMETHING, MAYBE THERE WOULD

24   BE MORE -- MORE LEEWAY.  BUT JUST BASED ON THE BARE

25   ALLEGATIONS, WHICH I'M ACCEPTING, AND THE INFERENCES TO BE

51

1   DRAWN FROM THEM, I HAVE TO SAY THAT I THINK THERE'S ENOUGH

2   RIGHT NOW.

3           BUT I WILL GO BACK AND LOOK AT YOUR CASES, AND I'LL

4   LOOK AT HER CONCESSIONS.

5           MR. DALEY:  THANK YOU, YOUR HONOR.

6           THE COURT:  ALL RIGHT.

7           THANKS FOR BEING PATIENT WITH ME TODAY, FOLKS.

8   APPRECIATE YOUR TIME.

9           MR. DALEY:  THANK YOU, YOUR HONOR.

10          THE COURT:  GO AHEAD, MS. HAYS.

11          MS. HAYS:  ONE LAST THING.

12          AGAIN, BECAUSE THESE GUYS DO THIS ON A DAILY BASIS

13  AND I DON'T, IF IN THE PROCESS OF DISCOVERY THERE ARE THE

14  WRONGS PROVEN, THEN, I AM ASSUMING THAT ADDITIONAL CAUSES OF

15  ACTION WOULD STEM AFTER YOU HAVE PROVEN --

16          THE COURT:  YOU'RE GOING TO HAVE A REAL HARD TIME

17  ADDING ANY MORE CAUSES OF ACTION.  WE'RE NOW IN THE THIRD

18  AMENDED COMPLAINT.  IT'S THE FOURTH TIME WE'RE KICKING SOME

19  OF THESE FOLKS OUT.

20          I'M GOING TO BE HARD-PRESSED, FOR EXAMPLE, TO BRING

21  THE JUDGES BACK IN.  IN FACT, I DON'T THINK THERE'S ANYTHING

22  YOU COULD DO OR SAY TO DO THAT.

23          WHAT I'D LIKE YOU TO FOCUS ON IS THE PEOPLE WHO ARE

24  DIRECTLY INVOLVED IN WHAT HAPPENED TO YOU AND TRY AND DEVELOP

25  YOUR CASE.  THAT'S WHAT I'M ASKING YOU TO DO.

1          MS. HAYS:  OKAY.  ONE PERSON THAT'S REALLY CRITICAL

2    TO THIS CASE AND WILL GET PULLED INTO IT IS EMILY DAUM.

3          THE COURT:  OKAY.  I DON'T KNOW WHO EMILY DAUM IS.

4          MS. HAYS:  EMILY DAUM IS THAT INVESTIGATOR THAT

5    WROTE THE REPORT.  AND I'VE LISTENED TO THE CD ABOUT A

6    HUNDRED TIMES.  IT'S MY REGULAR PLAY IN MY CAR WHEN I TRAVEL.

7    AND THERE WAS A STATEMENT SAYING THAT WRITING A REPORT --

8          THE COURT:  SHE WROTE -- SHE WROTE THE REPORT

9    AFTER.

10          MS. HAYS: -- WAS NOT A CONSTITUTIONAL RIGHT.

11    BECAUSE I WAS ARGUING DUE PROCESS.  AND I ACTUALLY DID PUT IT

12    IN MY PLEADINGS WITH THIS LAST BATCH, THAT I WASN'T

13    PROSECUTED IN FEDERAL COURT.  I DON'T KNOW WHAT COURT -- WHAT

14    TYPE OF COURT DO YOU CALL IT, MR. BUCK, WHEN YOU GO --

15          THE COURT:  DON'T -- DON'T ADDRESS MR. BUCK.

16          MR. HAYS:  OH.

17          THE COURT:  THAT'S AGAINST THE RULES.  YOU JUST

18    ADDRESS ME.

19          MS. HAYS:  I'M SORRY.

20          THE COURT:  ALL RIGHT.

21          MS. HAYS:  WHEN YOU GO BEFORE A CIVIL ENFORCEMENT

22    JUDGE -- THAT WAS WHAT MR. DERRICK FORD WAS BASICALLY ARGUING

23    AGAINST ME WITH PARLEN MC KENNA.  IT WAS EMILY DAUM'S REPORT

24    THAT BASICALLY WAS THE SPURRING ACTION THAT TOOK ME INTO THAT

25    LAWSUIT.

53

```
 1              THE COURT:  ALL RIGHT.

 2              MS. HAYS:  IN FACT, EMILY DAUM WANTED TO CHARGE ME

 3    $7,500, AND MR. BUCK -- I MEAN, MR. FORD, BLESS HIS SWEET

 4    HEART, SAID, THAT'S A LITTLE EXTREME.  WE'LL START IT AT

 5    2,500.

 6              THE COURT:  OKAY.  PLEASE BE CAREFUL BEFORE YOU ADD

 7    ANYBODY OR ANY MORE CLAIMS.  IN FACT, RIGHT NOW YOU HAVE TO

 8    MOVE THIS COURT FOR LEAVE TO AMEND IF YOU'RE GOING TO FILE A

 9    FOURTH AMENDED COMPLAINT.  AND I HAVE TO PASS ON IT.  OKAY.

10              SO, IF YOU WANT TO SUE THIS EMILY DAUM, WHATEVER

11    HER NAME IS, YOU FILE YOUR MOTION TO AMEND THE THIRD AMENDED

12    COMPLAINT, AND WE'LL -- AND WE'LL DEAL WITH IT.

13              THE ONLY -- THE INDIVIDUAL DEFENDANTS.  MY LAW

14    CLERK TELLS ME THAT I SHOULD ASK MR. BUCK ABOUT THE

15    INDIVIDUAL TSA DEFENDANTS.

16              YOU MOVE TO DISMISS ON THOSE?

17              MR. BUCK:  YOUR HONOR, WE --

18              THE COURT:  ALL THE ONES THAT HAVEN'T BEEN NAMED?

19              MR. BUCK:  THEY HAVE, BUT THEY HAVEN'T BEEN --

20              THE COURT:  OH.  YEAH, THERE ARE SOME THAT HAVE

21    BEEN -- IF THERE ARE SOME THAT HAVE BEEN SERVED AND NOT COME

22    FORWARD YET.

23              MR. BUCK:  YOUR HONOR, I DON'T BELIEVE THAT ANY

24    HAVE BEEN PROPERLY SERVED OTHER THAN THE ONES THAT HAVE BEEN

25    SERVED BEFORE -- NAMELY TETTEH AND AIKENS.
```

1          THE COURT:  ALL RIGHT.

2          MR. BUCK:  AND AIKENS IS OUT BECAUSE SHE'S NOT IN

3   THE COMPLAINT.

4          THE COURT:  OKAY.

5          MR. BUCK:  TETTEH IS THE ONE DEFENDANT ON WHOSE

6   BEHALF WE FILED THE MOTION TO DISMISS BECAUSE THE OTHERS HAVE

7   NOT BEEN SERVED.

8          THE COURT:  ALL RIGHT.  SO, ALL THE OTHER FEDERAL

9   DEFENDANTS IN YOUR VIEW HAVE NOT BEEN PROPERLY SERVED --

10         MR. BUCK:  THAT'S --

11         THE COURT: -- THE INDIVIDUALS?

12         MR. BUCK:  BASED ON THE INFORMATION THAT I

13  RECEIVED, THAT'S CORRECT.

14         THE COURT:  OKAY.

15         MS. HAYS:  CAN I MOVE RIGHT NOW TO AMEND MY

16  COMPLAINT?

17         THE COURT:  NO, YOU CAN'T.

18         MS. HAYS:  OH.  YOU WANT A MOTION.

19         THE COURT:  WHY DON'T YOU FILE A MOTION UNDER RULE

20  4 TO DISMISS THEM BECAUSE THEY HAVEN'T BEEN SERVED WITHIN 120

21  DAYS.  CAN YOU DO THAT FOR ME, PLEASE.

22         MR. BUCK:  I CAN.

23         THE COURT:  AND THAT'S -- THAT'S THE BEST WAY I

24  THINK TO BRING THE ISSUE TO THE FOREFRONT.

25         MR. BUCK:  I THINK THERE WAS AN ATTEMPTED SERVICE

1  BY DROPPING OFF PAPERS BY MS. HAYS AT THE AIRPORT OR

2  SOMEWHERE BUT DIDN'T MEET THE REQUIREMENTS UNDER RULE 4.

3         THE COURT:  HANG ON ONE SECOND.  IS IT NOT WORKING

4  ANYMORE?

5         THE CLERK:  YES, IT'S WORKING, BUT --

6         THE COURT:  OH, MR. BUCK.  OKAY.

7         MR. BUCK:  I'M SORRY.

8         THE COURT:  THAT'S ALL RIGHT.

9         MS. HAYS:  I DID MAKE A REQUEST BECAUSE TRYING TO

10  LOCATE THESE INDIVIDUALS IS VERY, VERY DIFFICULT.

11         THE COURT:  YES.

12         MS. HAYS:  AND HOW CAN I PROPERLY SERVE THEM IF I

13  CAN'T LOCATE THEM.  SO, I MADE THE REQUEST THAT I COULD

14  EITHER HAVE THE PAPERS SERVED THROUGH THEIR REPRESENTATIVES

15  OR THAT I GET THEIR ADDRESSES SO THEY CAN BE PROPERLY SERVED.

16         AND I DON'T THINK A DECISION HAS BEEN MADE ON THAT

17  REQUEST.

18         THE COURT:  I UNDERSTAND, AND I SAW THAT.

19         HERE'S THE DEAL.  YOU'VE GOT TO --

20         MR. BUCK, YOU MAKE YOUR MOTION, IF YOU WOULD,

21  PLEASE.  I'M INVITING A MOTION TO DISMISS THOSE DEFENDANTS

22  BECAUSE THEY HAVEN'T BEEN SERVED.

23         YOU'RE GOING TO HAVE TO TELL ME WHY EACH ONE OF

24  THOSE THERE'S JURISDICTION, MS. HAYS, BEFORE I MAKE THE

25  GOVERNMENT DO ANYTHING ABOUT PROVIDING YOU THEIR ADDRESSES OR

1    FINDING SOME ALTERNATIVE FORM OF SERVICE.  OKAY?

2            MS. HAYS:  YOU MEAN WHY THEY'RE INVOLVED?

3            THE COURT:  YES.  HOW THEY DIRECTLY PLAYED A ROLE.

4    BUT WAIT FOR HIS MOTION.  IN YOUR OPPOSITION YOU SAY I WANT

5    YOU TO GIVE ME TIME OR GIVE ME THE ADDRESSES AND HERE'S WHY.

6    THIS PERSON GRABBED MY ARM.  THIS PERSON PUT HANDCUFFS ON ME.

7    THIS PERSON DID THIS.

8            IF THE OTHER DEFENDANTS ARE -- THEY WERE

9    SUPERVISORS WHO RATIFIED THIS BECAUSE THEY DIDN'T DISCIPLINE

10   THEM AFTER THE EVENT, I'M NOT GOING TO SERVE THOSE FOLKS.

11   WE'RE WAY DOWN THE ROAD HERE.  PEOPLE THAT ARE DIRECTLY

12   INVOLVED.  OKAY.  AND COULD HAVE OR SHOULD HAVE INTERVENED

13   BECAUSE THEY WERE STANDING THERE WATCHING YOU GET ASSAULTED.

14           YEP?

15           MR. RUIZ:  YOUR HONOR, THIS MAY JUST BE AN OLD

16   CAPTION -- RODOLFO RUIZ FOR THE RECORD -- BUT THERE -- I

17   THINK THERE ARE NUMEROUS OTHER OFFICERS THAT ARE JUST TO MY

18   KNOWLEDGE MAY BE A PART OF OUR DEPARTMENT BUT ARE NOT

19   MENTIONED IN THE COMPLAINT.

20           THE COURT:  OKAY.

21           MR. RUIZ:  SO, I DON'T KNOW WHAT THAT'S WORTH.

22           THE COURT:  ALL RIGHT.

23           ANYBODY WHO'S NOT BEEN IDENTIFIED IN THE THIRD

24   AMENDED COMPLAINT -- IF THEY'RE IN THE CAPTION BUT NOT

25   IDENTIFIED IN THE BODY, I'M ASSUMING IT WAS AN OVERSIGHT ON

57

1    HER PART TO INCLUDE THEIR NAMES IN THE CAPTION.  SHE DOESN'T

2    REALLY WANT TO SUE THEM.  AND UNLESS AND UNTIL I HEAR

3    ANYTHING DIFFERENT, I'M JUST DEALING WITH THE PEOPLE WHO SHE

4    CLAIMED DID SOMETHING WRONG IN THE COMPLAINT.

5              MR. RUIZ:  YES, YOUR HONOR.

6              THE COURT:  THANKS FOR POINTING THAT OUT, COUNSEL.

7              MR. RUIZ:  THANK YOU, YOUR HONOR.

8              THE COURT:  OKAY.  I GUESS EVERYBODY IS READY FOR

9    LUNCH.

10             HAVE A GREAT AFTERNOON.  THANKS FOR YOUR TIME.  SEE

11   YOU NEXT TIME.

12             MR. RUIZ:  THANK YOU, YOUR HONOR.

13             MR. DALEY:  THANK YOU, YOUR HONOR.

14             MR. BUCK:  THANK YOU, YOUR HONOR.

15             THE CLERK:  COURT IS ADJOURNED.

16             (PROCEEDINGS CONCLUDE 12:10 P.M.)

17

18

19

20

21

22

23

24

25

58

1

2                          C E R T I F I C A T E

3

4              I CERTIFY THAT THE FOREGOING IS A CORRECT

5    TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE

6    PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

7

8

9

10   /S/ DOROTHY BABYKIN                        1/15/16

11   _____           _____

12   FEDERALLY CERTIFIED TRANSCRIBER            DATED

13   DOROTHY BABYKIN

14

15

16

17

18

19

20

21

22

23

24

25